JUDGE ENGELMAYER



12 CIV 7510

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPACE EXPLORATION TECHNOLOGIES
CORP.,

                             **Plaintiff,**

   v.

**D.T. GRUELLE COMPANY GROUP,**
**L.L.C.,**

                            **Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.: _____

## COMPLAINT

Plaintiff Space Exploration Technologies Corp. ("SpaceX") files the following Complaint against Defendant D.T. Gruelle Company Group, L.L.C. ("DTG").

DTG transports critical materials to allow SpaceX to launch rockets into space. SpaceX entered into a contract with DTG to transport tanks SpaceX owned that were to be used to store Liquid Oxygen that fuels SpaceX's rockets. Knowing that SpaceX was facing a key milestone under a contract with a third party, DTG threatened to withhold delivery of SpaceX's tanks if SpaceX did not pay DTG hundreds of thousands of dollars more than the contract price.

Faced with the possibility of missing a contractual milestone, not receiving a milestone payment worth $10 million, and potentially undermining multiple contracts worth in excess of $50 million, SpaceX had no choice but to pay the unjustified amount DTG demanded. SpaceX now sues for return of its money.

For its Complaint, SpaceX alleges as follows:

## THE PARTIES

1.      Plaintiff SpaceX is a Delaware corporation with its principal place of business at 1 Rocket Road, Hawthorne, California, 90250.

2.      Defendant DTG is a limited liability company existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 301 Moon Clinton Road, Moon Township, Pennsylvania, 15108.  Upon information and belief, all of DTG's members are citizens of Pennsylvania.  DTG is the successor-in-interest to D.T. Gruelle Company.

## JURISDICTION AND VENUE

3.      SpaceX is incorporated in Delaware, with California as its principal place of business.  Upon information and belief, DTG is a citizen of Pennsylvania, the state of citizenship of all of its members.  The amount in controversy exceeds U.S. $75,000.  Accordingly, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 by the agreement of the parties.

5.      The Court has both general and specific personal jurisdiction over DTG.  DTG unconditionally and irrevocably consented to the jurisdiction of, and waived any objection to venue in this Court, under ¶ 21 of the terms and conditions ("T&Cs") associated with the parties' Customs Power of Attorney/Designation of Export Forwarding Agent and Acknowledgment of Terms and Conditions ("POA") executed in November 2011.

6.      The parties agreed in ¶ 21 of the POA T&Cs that SpaceX and DTG "(a) [i]rrevocably consent to the jurisdiction of the United States District Court and the State courts of New York; (b) [a]gree that any action relating to the services performed by [DTG], shall only be

brought in said courts; [and] (c) [c]onsent to the exercise of *in personam* jurisdiction by said courts over it."

### FACTS

7.     SpaceX is a private company that designs, manufactures and launches rockets and spacecraft.

8.     SpaceX has a launch facility at Cape Canaveral, FL, where it has launched its spacecraft, including one that berthed with the International Space Station.  SpaceX is now developing another launch facility at Vandenberg Air Force Base ("AFB"), CA, which it will use for future launches of rockets and spacecraft.

9.     The Vandenberg facility requires large, permanent tanks to store liquid oxygen, which is used as one of the fuels for SpaceX's rockets.  These tanks are a critical requirement at the facility.

10.     SpaceX had the tanks constructed by a company in South Africa.

11.     In February 2012, SpaceX placed an order with DTG for the transportation of liquid oxygen tanks from South Africa to Vandenberg AFB.

12.     DTG agreed to undertake transportation of the tanks at a quoted price, and SpaceX and DTG agreed on the price and the payment arrangements.

13.     After it left South Africa with the tanks on a merchant vessel, DTG demanded that SpaceX agree to an unjustified price increase, and threatened to prevent SpaceX from taking possession of the tanks until SpaceX paid the unjustified price increase.

14.     The tanks were indispensible to SpaceX meeting a key contractual milestone with a third party, for which a $10 million payment was at stake.  In addition, delays getting the Vandenberg facility operational would have undermined multiple contracts worth in excess of

$50 million.  DTG knew this and took advantage of the position SpaceX was in and SpaceX's limited bargaining power relating to delivery of the tanks.

15.    SpaceX could not obtain different tanks from another source within a reasonable amount of time.

16.    Although SpaceX did not believe DTG was entitled to the price increase, SpaceX was left with no alternative but to pay it and seek recourse later.  SpaceX notified DTG through a September 20, 2012 email that it did not consider the amount demanded to be justified, but had no choice but to pay the amount:  "At this point and because SpaceX has to meet a critical milestone with the delivery of these tanks in order to receive a payment of $10 million, I have no choice but to pay you an extraordinary amount of money that you never justified."

17.    SpaceX paid the full amount demanded by DTG on September 25, 2012, and DTG provided SpaceX with the Bills of Lading required for SpaceX to obtain the tanks.  SpaceX obtained the tanks on September 27, 2012.

18.    This Complaint is timely filed eight days following the delivery of the tanks.

## CAUSES OF ACTION

### COUNT I
### (BREACH OF CONTRACT – VOIDABLE AMENDMENT – ECONOMIC DURESS)

19.    SpaceX repeats and realleges the allegations made in paragraphs 1 through 18 hereof, as if fully set forth herein.

20.    The parties entered into a fully enforceable contract for the transportation of the liquid oxygen tanks at a specific price.

21.    SpaceX has performed all of its obligations under the contract.

22.    DTG breached the contract by demanding that SpaceX pay a higher price after undertaking transportation of the tanks, which SpaceX was forced to pay under economic duress.

- 4 -

23.     As a direct and proximate result of DTG's breach, SpaceX was injured and has sustained damages, at a minimum, in the amount of the price increase it was forced to pay.

24.     DTG is liable to SpaceX for these damages in an amount to be proven at trial, plus prejudgment interest.

25.     Alternatively, the amendment of the contract to increase the price is voidable by SpaceX because it was procured by DTG under economic duress, and SpaceX hereby has a right to, and does, void the amendment and demand return of the price increase DTG wrongfully obtained from SpaceX.

<u>COUNT II</u>
**(CIVIL EXTORTION (CAL. PENAL CODE § 523))**

26.     SpaceX repeats and realleges the allegations made in paragraphs 1 through 25 hereof, as if fully set forth herein.

27.     DTG has obtained money from SpaceX in violation of California Penal Code § 523.

28.     DTG's tortious conduct caused harm in California.  At all relevant times, SpaceX's headquarters were located in the State of California.

29.     In August and September 2012, DTG contacted SpaceX personnel in California and demanded additional compensation to complete its delivery of the tanks from South Africa to Houston, Texas.  DTG made delivery of the tanks and related documentation contingent upon SpaceX's payment of the additional amount through a cashier's check.

30.     At the time that DTG demanded the additional sum, the tanks were already mid-transport.  DTG was aware that SpaceX's timely receipt of the tanks was critical for SpaceX to

meet a milestone owed to a third party and to avoid undermining SpaceX's ability to satisfy its

contractual obligations to such third party.

31.     Knowing that SpaceX would feel pressured to accept less favorable terms to

secure the timely delivery, DTG demanded the additional payment, with the intent to extort

money from SpaceX.  DTG threatened to withhold the needed tanks from SpaceX indefinitely,

absent the additional payment – thus threatening to do an unlawful injury to SpaceX's property

in violation of California Penal Code § 519.

32.     DTG is liable to SpaceX for these damages in an amount to be proven at trial,

plus prejudgment interest.

33.     Owing to the tortious and malicious nature of DTG's acts, DTG is liable for

punitive damages in an amount to be proven at trial.

**COUNT III**
**(VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200 *et seq.*))**

34.     SpaceX repeats and realleges the allegations made in paragraphs 1 through 33

hereof, as if fully set forth herein.

35.     DTG has engaged in "unfair competition" within the meaning of California

Unfair Competition Laws, California Business & Professions Code § 17200 *et seq.* (the "UCL").

DTG's business acts and practices towards SpaceX were unlawful, unfair, and fraudulent.

36.     DTG's acts and practices as alleged herein constitute "unlawful" business acts

and practices within the meaning of Business and Professions Code § 17200, *et seq.*, in that they

were in breach of contract and extortionary.  DTG's breach of its promises regarding the price of

its services constitute unlawful acts prohibited by § 17200.  Further, DTG's threat to harm

SpaceX's property, absent additional compensation, was a form of civil extortion in violation of the California Penal Code.

37.    DTG's acts and practices as alleged herein constitute "unfair" business acts and practices within the meaning of Business and Professions Code § 17200, *et seq.*  These unfair acts included, *inter alia*, (1) obtaining compensation in excess of the amount contractually agreed by the parties by demanding that SpaceX pay a higher price after undertaking transportation of the tanks, when fully aware that SpaceX had an urgent need for the services and would pay under economic duress; and (2) threatening to harm SpaceX's property unless SpaceX paid funds to DTG over and above the amount previously contracted for.  These acts were immoral, unethical, oppressive, unscrupulous, and substantially injurious, and their negative impact on SpaceX far outweighs any benefit allegedly attributable to such conduct.

38.    DTG's acts and practices as alleged herein constitute "fraudulent" business acts and practices within the meaning of Business and Professions Code § 17200, *et seq.*  The fraudulent acts included DTG's affirmative misrepresentation of the amount required to provide the services agreed to.  This affirmative misrepresentation was likely to deceive SpaceX or any other party similarly situated.

39.    DTG's unfair competition occurred and caused harm in California.  At all relevant times, SpaceX's headquarters were located in the State of California.  In addition, in the course of breaching its contract with SpaceX and making threats to SpaceX, DTG's agents and employees dealt directly with SpaceX employees located in California.  DTG agents and employees committed their unlawful, unfair, and fraudulent acts through phone calls with and electronic messages to SpaceX offices in California.

40.     SpaceX is entitled to such relief as may be available under the UCL, including but not limited to restitution of any amount by which SpaceX was required to pay over and above the original contract price, plus prejudgment interest as allowed under the UCL.

## COUNT IV
### (BREACH OF FIDUCIARY DUTY)

41.     SpaceX repeats and realleges the allegations made in paragraphs 1 through 40 hereof, as if fully set forth herein.

42.     DTG owed a fiduciary duty to SpaceX, arising from the relationship between a shipper and a freight forwarder.

43.     DTG breached its fiduciary duty to SpaceX by unilaterally increasing the contract price and by withholding the required documentation for the tanks, absent payment of the additional compensation.

44.     As a direct and proximate result of DTG's breach of fiduciary duty, SpaceX was injured and has sustained damages, at a minimum, in the amount of the price increase it was forced to pay.

45.     DTG is liable to SpaceX for these damages in an amount to be proven at trial.

## COUNT V
### (UNJUST ENRICHMENT)

46.     SpaceX repeats and realleges the allegations made in paragraphs 1 through 45 hereof, as if fully set forth herein.

47.     DTG has been enriched by SpaceX's payment of the price increase.

48.     DTG's enrichment was at SpaceX's expense.

49.     Permitting DTG to retain the amount of the price increase is against equity and good conscience under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SpaceX prays that it is entitled to relief under its causes of action for the reasons set forth herein.  SpaceX respectfully requests that the Court:

a.     Enter judgment for SpaceX and against DTG on all Counts set forth in this Complaint;

b.     Award SpaceX monetary damages in an amount to be proven at trial, along with any interest available or applicable thereto;

c.     Grant SpaceX its attorney's fees and costs to the extent permitted by law and/or by the parties' agreements;

d.     Award SpaceX punitive damages for DTG's tortious conduct; and

e.     Award SpaceX any other relief the Court deems just and proper.

## JURY DEMAND

SpaceX demands a trial by jury on all issues so triable.

Dated:  October 5, 2012

Respectfully submitted,

COOLEY LLP

By: _____
Douglas P. Lobel (DL-2894)
Jonathan Lawson (JL-1118)
11951 Freedom Drive
Reston, Virginia 20190
Telephone:  (703) 456-8000
Facsimile:  (703) 456-8100

and

Jason Koral (JK-1044)
1114 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 479-6000
Facsimile:  (212) 479-6275

*Counsel for Space Exploration Technologies Corp.*

532991 /RE