UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- :

SPACE EXPLORATION TECHNOLOGIES :    No. 1:12-cv-07510-(PAE) (KNF)
CORP., : 
                                   :
        Plaintiff and Counter-defendant, :
                                     :
        -against- :    **ANSWER WITH AFFIRMATIVE**
                                     :    **DEFENSES AND COUNTERCLAIM**
D.T. GRUELLE COMPANY GROUP, L.L.C., :
                                     :
        Defendant and Counterclaimant. :
------------------------------------------------------- :
                                     :

        Defendant D.T. Gruelle Company Group, L.L.C. (hereinafter "D.T. Gruelle", "DTG" or

"Defendant") through its attorneys hereby responds to plaintiff Space Exploration Technologies

Corp.'s (hereinafter "SpaceX" or "Plaintiff") Complaint by this Answer with Affirmative

Defenses and Counterclaim as follows:

**ANSWER**

        1.     <u>Responses to the Unnumbered Two Paragraphs on Page One of the Complaint</u>:

Plaintiff's use of these two unnumbered paragraphs which contain allegations (second and third

full paragraphs on page 1) violates Rule 10(b) of the Federal Rules of Civil Procedure which

provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far

as practicable to a single set of circumstances."

            a.     <u>Response to First Unnumbered Paragraph Containing Allegations</u>:

Defendant admits that it is a Non-Vessel Operating Common Carrier (hereinafter

"NVOCC") under the Shipping Act (46 U.S.C. §§ 40101, *et seq.*), whose operations

consist of arranging for the transport of cargo by land, sea, air or a combination of these

types of transport on behalf of its customers through contracting with carriers having

assets such as ships, trucks or airplanes that can physically carry out the transport needs

of shippers that engage D.T. Gruelle such as SpaceX.  Defendant admits that its operations sometimes include the transport of critical and other materials.  Defendant admits that SpaceX is a corporation engaged in space exploration which has successfully launched rockets into space.   Defendant admits that SpaceX has expertise, knowledge and experience with the operation and handling of equipment and materials necessary to enable it to explore space.  DTG admits that SpaceX entered into a contract with it on November 22, 2011 entitled "**CUSTOMS POWER OF ATTORNEY/DESIGNATION OF EXPORT FORWARDING AGENT And Acknowledgement of Terms and Conditions**" (hereinafter "the Contract"), a copy of which is attached as Exhibit A.  The Contract expressly provides that D.T. Gruelle Company Terms and Conditions govern all transactions between the Parties.  Defendant admits that pursuant to the Contract it transported two cryogenic tanks designed to store liquid oxygen (hereinafter "the Tanks") from GasCon (Pty) Ltd, No. 1 Consani Road, Elsies River, Cape, South Africa to G.P. Terminals 1606 Clinton Drive, Galena Park, Texas 77547, located at or near the Port of Houston.  DTG admits that during its involvement with the transport of the Tanks it believed and relied upon SpaceX's representations that it owned the Tanks and was going to use them store liquid oxygen that fuels SpaceX's rockets.  DTG denies that it knew SpaceX was facing a key milestone under a contract with a third party, but admits that SpaceX made a representation to it that such a key milestone was present.  DTG denies that it threatened to withhold delivery of the Tanks if SpaceX did not pay DTG "hundreds of thousands of dollars more than the contract price."  DTG admits that pursuant to the Contract, and terms and conditions of the Bill of Lading it withheld delivering the original Bill of Lading and related documentation to SpaceX for the Tanks until SpaceX

paid DTG the amount which was due and owing under the Contract for successfully transporting the Tanks from South Africa to Houston (Galena Park), Texas, and for other shipments where amounts were due and owing for other cargo successfully transported. Except to the extent expressly admitted in this paragraph, Defendant denies the allegations contained in the first unnumbered paragraph containing allegations on page 1 of the Complaint.

   b.  <u>Response to Second Unnumbered Paragraph Containing Allegations:</u> Defendant denies that it demanded any unjustified amount from SpaceX.  DTG only demanded payment of the amount DTG was properly due for transporting the Tanks from South Africa to Houston (Galena Park), Texas and for transporting other cargo on other shipments for SpaceX.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this second unnumbered paragraph containing allegations on page 1 of the Complaint, and therefore denies same.

<u>**RESPONSE TO ALLEGATIONS REGARDING "THE PARTIES"**</u>

  2.  Defendant admits the allegations contained in paragraph number 1 of the Complaint based on the Corporate Certification SpaceX executed and delivered as part of the Contract on November 22, 2011 by Gwynne Shotwell, President, and Timothy R. Hughes, Senior Vice President & General Counsel on behalf of and as officers of SpaceX.

  3.  Defendant does business as D.T. Gruelle Company, and therefore denies that it is a successor-in-interest to D.T. Gruelle Company.  Defendant admits the remaining allegations of paragraph number 2 of the Complaint.

**RESPONSE TO ALLEGATIONS REGARDING
"JURISDICTION AND VENUE"**

4.      Defendant admits the allegations of paragraph number 3 of the Complaint.

5.      Defendant admits that venue is proper in this Court by agreement of Plaintiff and Defendant pursuant to ¶ 21 of the Contract terms and conditions.  *See e.g., M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972) (in general, forum selection clauses are *prima facie* valid).  Defendant denies that 28 U.S.C. §1391 on its face provides a basis for venue in this Court for this case.  Defendant further answers that ¶ 21 of the Contract terms and conditions, to which SpaceX admits agreeing, also provides that "[t]hese terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of NEW YORK without giving consideration to principals(sic) of conflict of law."  Except as expressly admitted in this paragraph, Defendant denies the allegations of paragraph number 4 of the Complaint.

6.      Defendant admits the allegations contained in paragraph number 5 of the Complaint.  Defendant further answers that ¶ 21 of the Contract terms and conditions, to which SpaceX admits agreeing, also provides that "[t]hese terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of NEW YORK without giving consideration to principals(sic) of conflict of law."

7.      Defendant admits the allegations contained in paragraph number 6 of the Complaint.  Defendant further answers that ¶ 21 of the Contract terms and conditions, to which SpaceX admits agreeing, also provides that "[t]hese terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of NEW YORK without giving consideration to principals(sic) of conflict of law."

## RESPONSE TO ALLEGATIONS REGARDING "FACTS"

8.      Defendant admits the allegations of paragraph number 7 of the Complaint.

9.      Defendant admits allegations of paragraph number 8 of the Complaint.

10.     Defendant admits that the Vandenberg facility requires large permanent tanks to store liquid oxygen which is used as one of the fuels for SpaceX's rockets.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph number 9 of the Complaint and therefore denies same.

11.     Defendant admits the allegations of paragraph number 10 of the Complaint.

12.     Defendant admits that subject to the terms and conditions of the Contract, SpaceX sent to it Purchase Order Number 145090 dated February 24, 2012 for transport of two liquid oxygen tanks from South Africa to Vandenberg AFB ("the Purchase Order").  Defendant denies that the Purchase Order reflected or pertained to the services actually performed by DTG for SpaceX with respect to transport of the Tanks.  Specifically, at the time the Purchase Order was issued:  a) SpaceX's communications to DTG had material omissions of fact about the stringent requirements for handling and transporting the Tanks, including the requirement that only the saddles (or supports) attached to the Tanks could be used to support the weight of the Tanks (at the time of the Purchase Order SpaceX described an "abnormal load" when in fact what DTG actually shipped was a "super abnormal load"}; b) the Purchase Order statement that the Tanks would be ready for shipment from the manufacturer, GasCon, by April 30, 2012, was erroneous (actual readiness date was on or about August 8, 2012); and c) the Purchase Order specified destination was Vandenberg AFB, California, when in fact the actual destination of the transport performed was Houston (Galena Park), Texas (per SpaceX's directive).  As a consequence, the rate on the Purchase Order, $364,000.00, was materially erroneous and far less than the actual

shipping costs would have been to Vandenberg AFB.  Except to the extent expressly admitted in this paragraph, Defendant denies the allegations of paragraph number 11 of the Complaint.

13.     Defendant denies the allegations of paragraph number 12 of the Complaint.

14.     Defendant denies the allegations of paragraph number 13 of the Complaint.

15.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph number 14 of the Complaint that:  a) "The tanks were indispensable to SpaceX meeting a key contractual milestone with a third party, for which a $10 million payment was at stake."; and b) "delays getting the Vandenberg facility operational would have undermined multiple contracts worth in excess of $50 million."  Defendant, therefore, denies these above-quoted claims.  Defendant denies the remaining allegations of paragraph number 14 of the Complaint.

16.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph number 15 of the Complaint and, therefore, denies same.

17.     Defendant denies the allegation in paragraph 16 of the Complaint that there was a price increase since there was no prior price agreed to by the parties in the first place.  DTG's communications about costs were non-binding quotes provided for informational purposes only pursuant to ¶ 5 of the terms and conditions of the Contract.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph number 16 of the Complaint regarding what SpaceX believed or did not believe, and therefore denies same. Defendant admits that it received an email on September 20, 2012 from Pablo Ucar of SpaceX which includes language similar to that presented in paragraph 16 of the Complaint, but denies the content of the quoted language since the $468,988.96 total charges demanded for DTG's services were justified and in accordance with the Contract.  Except to the extent expressly

admitted in this paragraph, Defendant denies the allegations of paragraph number16 of the Complaint.

18.     Defendant admits that shortly after September 22, 2012, SpaceX paid the full amount due and owing to DTG by cashier's check in the amount of $468,988.96, and that upon receiving this payment DTG delivered to SpaceX the original Bill of Lading and other documents required for SpaceX to take possession of the Tanks.  While SpaceX obtained the right to take full possession of the Tanks shortly after September 22, 2012, as of October 11, 2012, SpaceX had still not picked up the Tanks from G.P. Terminals, 1606 Clinton Drive, Galena Park, Texas 77547.  Except to the extent expressly admitted in this paragraph, Defendant denies the allegations of paragraph number 17 of the Complaint.

19.     Based on the stamp of the Court Cashier, Defendant admits the Complaint was received by the Court on October 5, 2012.  Defendant avers that the Tanks were delivered to G.P. Terminals, 1606 Clinton drive, Galena Park, Texas 77547 on September 14, 2012.  Except to the extent expressly admitted in this paragraph, Defendant denies the allegations of paragraph number 18 of the Complaint.

### <u>RESPONSE TO CAUSES OF ACTION - COUNT I</u>
### <u>(Claims of Breach of Contract, Voidable Amendment and Economic Duress)</u>

20.     Defendant repeats, states and re-alleges its responses made in paragraphs 1 through 19 hereof, as if fully set forth herein.

21.     Defendant admits that DTG and SpaceX entered into a fully enforceable contract on November 22, 2011, which sets forth terms and conditions governing all transactions between these parties, including the transaction regarding the transport of the Tanks from GasCon (Pty) Ltd, No. 1 Consani Road, Elsies River, Cape, South Africa to G.P. Terminals, 1606 Clinton Drive, Galena Park Texas 77547.  A copy of this contract is attached hereto as Exhibit A, and has been

referred to herein as "the Contract."  Defendant denies that DTG and SpaceX agreed on a price

for transporting the Tanks, but rather DTG gave non-binding quotes for informational purposes

only in reliance on information DTG received from SpaceX on several occasions, which

information was incomplete, inaccurate and varied.  Except to the extent expressly admitted in

this paragraph, Defendant denies the allegations of paragraph number 20 of the Complaint.

22.     Defendant denies the allegations of paragraph number 21 of the Complaint.

23.     Defendant denies the allegations of paragraph number 22 of the Complaint.

24.     Defendant denies the allegations of paragraph number 23 of the Complaint.

25.     Defendant denies the allegations of paragraph number 24 of the Complaint.

26.     Defendant denies the allegations of paragraph number 25 of the Complaint.

<u>**RESPONSE TO CAUSES OF ACTION - COUNT II**</u>
<u>**(Claims of Civil Extortion (CAL. PENAL CODE § 523))**</u>

27.     Defendant repeats, states and re-alleges its responses made in paragraphs 1

through 26 hereof, as if fully set forth herein.

28.     Defendant denies the allegations of paragraph number 27 of the Complaint.  In

further answer DTG states that Plaintiff's assertion of California law is contrary to ¶ 21 of the

terms and conditions of the Contract which provides that "[t]hese terms and conditions of service

and the relationship of the parties shall be construed according to the laws of the State of NEW

YORK without giving consideration to principals (sic) of conflict of law."

29.     Defendant denies the allegations of paragraph number 28 of the Complaint.

30.     Defendant admits that on and after July 18, 2012, when DTG was for the first

time informed that "…the tanks are not able to be transported in any way other than on their

saddles…" and that the Tanks were structurally very delicate, DTG informed SpaceX that the

cost of transporting the Tanks would be significantly higher than the earlier non-binding quotes

DTG had given for informational purposes pursuant to ¶ 5 of the terms and conditions of the Contract. Defendant further admits that it made delivery of the original Bill of Lading and related documents which were necessary for SpaceX to take possession of the Tanks contingent on SpaceX paying by cahiers check or wire the full $468,988.96 amount DTG was due and owing for transporting the Tanks pursuant to the Contract, and for DTG's handling of other cargo shipments under the Contract for which amounts were also due and owing. Except to the extent expressly admitted in this paragraph, Defendant denies the allegations of paragraph number 29 of the Complaint.

31.     Defendant admits that SpaceX told it that SpaceX needed the Tanks to meet a milestone SpaceX owed to a third party. Defendant denies that this information had any connection with its requirement that SpaceX pay DTG what it was owed for its services under the Contract. Except to the extent expressly admitted in this paragraph, Defendant denies the allegations of paragraph number 30 of the Complaint.

32.     Defendant denies the allegations of paragraph number 31 of the Complaint.

33.     Defendant denies the allegations of paragraph number 32 of the Complaint.

34.     Defendant denies the allegations of paragraph number 33 of the Complaint.

### RESPONSE TO CAUSES OF ACTION - COUNT III
### (Claims of Violation of California Unfair Competition Law)
### (CAL. BUS. & PROF. CODE § 17200, *et seq*)

35.     Defendant repeats, states and re-alleges its responses made in paragraphs 1 through 34 hereof, as if fully set forth herein.

36.     Defendant denies the allegations of paragraph number 35 of the Complaint. In further answer DTG states that Plaintiff's assertion of California law is contrary to ¶ 21 of the terms and conditions of the Contract which provides that "[t]hese terms and conditions of service

and the relationship of the parties shall be construed according to the laws of the State of NEW

YORK without giving consideration to principals (sic) of conflict of law."

37.    Defendant denies the allegations of paragraph number 36 of the Complaint.

38.    Defendant denies the allegations of paragraph number 37 of the Complaint.

39.    Defendant denies the allegations of paragraph number 38 of the Complaint.

40.    Defendant admits that SpaceX's headquarters were located in California based on

the Corporate Certificate it executed and delivered as part of the Contract.  Except to the extent

expressly admitted in this paragraph, Defendant denies the allegations of paragraph number 39 of

the Complaint.

41.    Defendant denies the allegations of paragraph number 40 of the Complaint.

## RESPONSE TO CAUSES OF ACTION - COUNT IV
### (Claim of Breach of Fiduciary Duty)

42.    Defendant repeats, states and re-alleges its responses made in paragraphs 1

through 41 hereof, as if fully set forth herein.

43.    Defendant denies the allegations of paragraph number 42 of the Complaint.

44.    Defendant denies the allegations of paragraph number 43 of the Complaint.

45.    Defendant denies the allegations of paragraph number 44 of the Complaint.

46.    Defendant denies the allegations of paragraph number 45 of the Complaint.

## RESPONSE TO CAUSES OF ACTION - COUNT V
### (Claim of Unjust Enrichment)

47.    Defendant repeats, states and re-alleges its responses made in paragraphs 1

through 46 hereof, as if fully set forth herein.

48.    Defendant denies the allegations of paragraph number 47 of the Complaint.

49.    Defendant denies the allegations of paragraph number 48 of the Complaint.

50.     Defendant denies the allegations of paragraph number 49 of the Complaint.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails to state claims upon which relief can be granted on the

following grounds:

a.      Plaintiff fails to plead enough facts to state a claim to relief that is

plausible on its face, i.e., there is insufficient factual content that allows the Court to draw

the reasonable inference that Defendant is liable for the misconduct alleged.  Rather the

Complaint pleads facts that are merely consistent with Defendant's purported liability

which falls short of the plausibility of entitlement to relief requirement.  *Ashcroft v. Iqbal*,

556 U.S. 662, 677-680 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, 570

(2007).  Examples of this inadequate pleading are Plaintiffs conclusory allegations of fact

where it alleges (1) "DTG agreed to undertake transportation of the tanks at a quoted

price, and SpaceX and DTG agreed on the price and the payment arrangements" (¶ 12,

Complaint) without specifying the Contract language and email communications that

would have shown that DTG to the contrary  gave a non-binding quotation based on

SpaceX's communications having material omissions, for an "abnormal load" for

transport from South Africa to Vandenberg AFB, California, as opposed to the actual

transport between South Africa and Houston for a delayed "super abnormal load"

requiring much more expensive specialty handling and equipment, and causing added

delay in sailing due to late permits; and (2) "DTG demanded that SpaceX agree to an

unjustified price increase, and threatened to prevent SpaceX from taking possession of the

tanks until SpaceX paid the unjustified price increase" (¶ 13, Complaint) without

specifying the Contract language and specific facts which demonstrate that there was no

price increase since the parties had no agreement on price, DTG's charges for transporting a "super abnormal load" were for the value of services performed and, therefore, justified since special equipment, trailers and permits were required over and above what would have been required, if the Tanks had actually been as SpaceX originally portrayed them to DTG prior to July 18, 2012.

b.       Plaintiff relies essentially on labels, conclusions, and a formulaic recitation of the elements of a cause of action, and therefore fails to meets its obligation to provide the grounds of its entitlement to relief. *Twombly*, 550 U.S. at 555. A pleading which is no more than conclusions is not entitled to the assumption of truth when considering a motion to dismiss under Rule 12(b)(6) of the Fed. R. Civ. P. *Iqbal*, 556 U.S. at 681. Examples of Plaintiff's conclusory allegations are presented in part "a" above. Examples of SpaceX's use of labels conclusions and a formulaic recitation of the elements of causes of actions are its allegations in COUNTS I through V of the Complaint (¶¶ 19-49, Complaint).

c.       The Complaint fails to meet the requirements of Rule 8(a)(2) of the Fed. R. Civ. P. since it contains no more than an "unadorned, the-defendant –unlawfully-harmed-me accusation". *Iqbal*, 556 U.S. at 677-678. Examples, of this short-coming are found in the examples given in parts "a" and "b" above.

2.       COUNTS II and III of the Complaint should be dismissed with prejudice since these counts, based on California law, violate ¶ 21 of the Contract terms and conditions which provides that "[t]hese terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of NEW YORK without giving consideration to

principals (sic) of conflict of law."  SpaceX admits it agreed to ¶ 21 of the terms and conditions

of the Contract.

       3.      DTG's communication of cost estimates to SpaceX prior to September 12, 2012,

were non-binding quotations pursuant to ¶5 of the Contract terms and conditions which provides:

> **Quotations Not Binding.**  Quotations as to fees , rates of duty, freight charges, insurance premiums or other charges given by the Company [DTG] to the Customer [SpaceX] are for informational purposes only and are subject to change without notice; no quotations shall be binding upon the Company [DTG] unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company [DTG] and the Customer [SpaceX].

Based on email communications, though not specified in the Complaint, the non-binding

quotation which SpaceX contends is the "agreed price and payment arrangements" is a February

22, 2012 email from Marco Gruelle of DTG to Pablo Ucar of SpaceX where it is stated in

relevant part:

> …Terese has been constantly working on reducing costs with our ocean carriers…we negotiated "full liner terms –hook to hook".  This means the SS line has agreed to include its crane charges for the transfer from the dock to the ship in their ocean freight rate.  shipboard cranes…This represents a $14,000 reduction per tank.
> So, the total amount per tank is reduced to $182,000 per tank @ 83.2' L x 13.9' D x 14.7 H – 97,004 lbs
>
> As discussed yesterday, we have bid this out with many different carriers, and we have explored every transit port possible.  These are the best costs that we have at the moment.  We will continue to research the matter until the time of shipment comes.  If we receive any better rates, we will make sure to inform Spacex.

There is no reference in this email to payment arrangements, or even a solicitation from DTG for

SpaceX to agree to this quotation.  To the contrary, these quotes are described as "the best costs

that we have at the moment."  In addition, as indicated in the Purchase Order dated February 24,

2012, these quotes are for a South Africa to Vandenberg AFB, California shipment to take place

by 4/302012 when in fact the actual transport DTG performed was from South Africa to Houston which took place starting August 21, 2012.  Also significant is that at the time of this quote, SpaceX had not informed DTG that the Tanks could only be transported on the saddles (supports) attached to the Tanks, a critical factor which changed the tanks from an "abnormal load" to a "super abnormal load" – a factor which had a major impact on the costs of shipping the Tanks.

4.     DTG's written demand to SpaceX for payment of all amounts due and owing to it on the shipment of the Tanks and for other prior shipments ($468,988.96) before it would release the Tanks is consistent with, and authorized by:

a.     ¶ 10 of the Contract terms and conditions which requires that "[a]ll charges must be paid by Customer [SpaceX] in advance…"; and

b.     ¶ 14a and b of the Contract terms and conditions which provides "Company [DTG] shall have a general and continuing lien on any and all property of the Customer [SpaceX] coming into Company's [DTG's] actual or constructive possession or control for monies owed to Company [DTG] with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both; Company [DTG] shall provide written notice to customer of its intent to exercise such lien, the exact amount of monies due and owing…"

DTG's demand for payment and assertion of its general lien rights was justified, necessary and appropriate since SpaceX through Pablo Ucar in an email to Tim Gruelle dated August 28, 2012 stated that it couldn't accept the greater cost over the [February 22, 2012] quote, and otherwise gave every indication that SpaceX would not pay the actual costs for transporting the Tanks, even though it was a "super abnormal load."

5.      The amount DTG demanded that SpaceX pay before it would release the Tanks to SpaceX, $468,988.96, was not an unjustified or arbitrary amount, but rather was the total amount due and owing to DTG not only for transporting the Tanks but also for other prior shipments of other cargoes previously invoiced to SpaceX as follows:

**Invoice No. 7001296-001**, dated 8/15/2012 for a Balance of **$339,802.00** due on 8/25/2012 for the transport of the Tanks from GasCon in South Africa to Houston [Note: a breakdown of this balance was sent to SpaceX on 8/27/2012 –"Cost Sheet" sent via email to Pablo Ucar from Tim Gruelle];

**Invoice No. 7001296-002**, dated 9/12/2012 for a Balance of **$886.25** due on 9/22/2012 for the Customs, Duties, Fees and Taxes relating to the import of the 2 Tanks from GasCon in South Africa to Houston;

**Invoice No. 7001103-001**, dated 7/30/2012 for a Balance of **$26,799.01** due on 8/9/2012 for the shipment of MMH – Methylhydrazine 2Pieces from Hanau to Houston [Balance broken down on Invoice];

**Invoice No. 7001185-001**, dated 8/13/2012 for a Balance of **$37,420.96** due on 8/23/2012 for the shipment of Aluminum Plates 250 4CTN Air Freight from France [Balance broken down on Invoice];

**Invoice No. 7001276-001**, dated 8/17/2012 for a Balance of **$30,197.00** due on 8/27/2012 for the shipment of Aluminum Plates 250 3CTN Air Freight from France [Balance broken down on Invoice];

**Invoice No. 7001282-001**, dated 8/30/2012 for a Balance of **$17,830.44** due on 9/9/2012 for the shipment of Aluminum Sheets from France to El Segundo, CA [Balance broken down on Invoice]; and

**Invoice No. 7001304-001**, dated 8/30/2012 for a Balance of **$16,053.30** due on 9/9/2012 for the shipment of Aluminum Sheets 1CTN Air Freight from France [Balance broken down on Invoice].

The sum total of these seven invoice amounts equals $468,988.96, the exact amount DTG demanded on or about September 18, 2012, before it would deliver the original Bill of Lading and related papers to SpaceX.  All of these invoices had been sent to SpaceX prior to this demand and all amounts were due on or prior to September 22, 2012, the date on the cashier's check tendered to DTG just after September 22, 2012.

6.      SpaceX failed to inform DTG until July 18, 2012, that the Tanks could only be supported by their own saddles a critical and material omission which significantly affected costs and caused delays.  SpaceX's material omission justifies and explains the greater rate charged for the actual transport of the Tanks from Cape, South Africa  to Houston, Texas of $340,688.25 [$339,802 +$886.25 (duties, fees and taxes) – see above invoices] when compared to the non-binding quote of $364,000 given on February 22, 2012, for transporting the Tanks from Cape, South Africa to Vandenberg AFB, California.  This is evidenced and supported by the following:

a.      Nearly five months after DTG gave SpaceX a non-binding quote, SpaceX for the first time informs DTG that "…the manufacturer of the tanks has confirmed that the tanks are not able to be supported in any way other than on their saddles….[t]he outer tank is a very thin-walled tank….[t]he load of the inner vessel is transmitted to the saddles by strategically placed supports.  Placing the tank on its side, makes these supports ineffective." [email re GasCon South Africa –Vandenberg Schedule + Timeline from Vincent Werner of SpaceX to Alessandra Gruelle of DTG, Richard Henwood, Pablo Ucar, *et al* dated July 18, 2012]

b.      DTG immediately responded to SpaceX that these details about the Tanks and the need to use only their saddles make a "substantial difference, since the hope was to lower the problematic overheight!" [email re GasCon South Africa –Vandenberg Schedule + Timeline from Alessandra Gruelle to Vincent Werner, Richard Henwood, Pablo Ucar, *et al* dated July 18, 2012]

c.      The requirement that the Tanks could only be shipped on their own saddles, as opposed to saddles on the intended trailer was a key fact known only to SpaceX, a highly sophisticated space exploration enterprise, and/or the manufacturer of

the Tanks, GasCon (Pty) Ltd.  This newly disclosed fact dramatically changed the pricing across the board for rigging, permits, route survey, port charges, handling, forwarding, and ocean freight charges.

    d.  The requirement that the Tanks could only be shipped on their own saddles, as opposed to saddles on the intended trailer completely changed the way which the Tanks could be handled:  Instead of using trailers with their own saddles to support the Tanks , which is the way  big tanks for an "abnormal load" are usually moved , the Tanks required the use of trailers  which can support  not only the Tanks , but also their built-in saddles.  This change resulted in the transport not of an "abnormal load", but rather that of a so-called "super abnormal load" (due to fact height could not be decreased by putting the Tank on a saddle trailer as originally planned).  This late notice caused permit problems, required hiring a new trucker at a much higher price, caused assessment of additional penalties and inducement charges for the shipping line, and delays. [email re GasCon South Africa –Vandenberg Schedule + Timeline from Marco Gruelle to Pablo Ucar, Tim Gruelle, *et al* dated 8/28/2012]

    e.  The significance of this "super abnormal load" problem was confirmed by Simon Hayes, DTG's South Africa agent [GAC Laser] when he inspected the Tanks in-person at GasCon on August 1, 2012 [email re GasCon Tank nozzle location URGENT From Simon Hayes to Time Gruelle dated 8/7/2012].

    7.  Plaintiff's claims for punitive damages are barred because an award of punitive damages would violate the due process clause of the Fourteenth Amendment to the United States Constitution and the due process clause of the New York State Constitution, Article I, § 6, in that:

    A.  The jury will be allowed to consider evidence of DTG's wealth in assessing

punitive damages.

B.  There are no definite standards whereby the judiciary may determine the submissibility of punitive damages or the amount of any such award.

C.  There are no effective procedures whereby the judiciary can review either the submissibility or the magnitude of punitive damages.

D.  The guidelines, standards, procedures, and instructions for the imposition of punitive damages are ambiguous, indefinite, unreasonable, vague, uncertain, conflicting, purely subjective, and fundamentally unfair.

E.  The vague and inconsistent legal standards for the imposition of punitive damages deprives DTG of sufficient notice of the type of conduct and mental state upon which an award of punitive damages could be based.

No objective limitations or standards have been established concerning the amount or severity of any punitive damages award.

8.      DTG denies that it has engaged in any conduct that would support an award of punitive damages.  Moreover, plaintiff's claims for punitive damages are barred because they are essentially criminal in nature and a form of punishment; they seek moreover, to deny defendant rights guaranteed to defendants in criminal proceedings under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution; Article I, §§ 6, 11 and 12 of the Constitution of New York; and the Federal Common Law.  Such rights include, among other things:

A.  A requirement that the basis for the imposition of punitive damages be proven by plaintiff;

B.  The right to a unanimous twelve-person jury verdict in jury trials;

C.   The right to separate trials for compensatory and punitive damages; and

D.   The right to a separate hearing for the determination of the amount of punitive

damages under applicable provisions of state law.

9.      Plaintiff's claims for punitive damages are barred because they seek to impose punishment that is excessive and grossly disproportionate to the misconduct alleged, in violation of Article I, § 5 of the Constitution of the State of New York, which prohibits excessive fines and cruel and unusual punishment.

10.     Plaintiff's claims for punitive damages are barred to the extent they seek the admission of evidence of defendant's net worth or wealth in determining whether punitive damages are to be awarded and/or in what amount, because punitive damages are a form of punishment, and punishment that is grounded in a defendant's status, rather than in specific misconduct, has the effect of treating classes of citizens unequally in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States and Article I, § 11 of the Constitution of the State of New York.

11.     Plaintiff's claims for punitive damages are barred because punitive damages are a form of punishment and any such award under the laws of the State of New York would violate this defendant's procedural and substantive Due Process rights, and Equal Protection rights, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, §§ 6 and 11 of the Constitution of the State of New York where a jury:  (i) is not provided with standards of sufficient clarity, objectivity and uniformity for determining the appropriateness of awarding, or the appropriate size of any punitive damages; (ii) is not instructed on the limits of punitive damages awards imposed by the applicable principles of punishment and deterrence; (iii) is not expressly prohibited from awarding punitive damages, or

determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics; (iv) is permitted to award punitive damages under standards for determining liability for, and amount of, punitive damages that are vague and arbitrary and do not define with sufficient clarity the culpable conduct or mental state that makes an award of punitive damages permissible; and (v) is not subject to judicial review on the basis of objective and uniform standards.

12.     Plaintiff's claims for punitive damages are barred because an award of punitive damages in this action would be an unconstitutional burden on interstate commerce in violation of the Commerce Clause of Article I, Section 9 of the United States Constitution.

13.     The imposition of punitive damages based on unlimited jury discretion or in "grossly excessive" amounts is unconstitutional and in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, as set forth in *BMW of North America, Inc. v. Gore*, 116 S.Ct. 1589 (1996); *Pacific Mutual Life Ins. Co. v. Haslip*, 111 S.Ct. 1032 (1991); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 121 S.Ct. 1678 (2001); *State Farm Mutual Automobile Insurance Co. v. Campbell*, 123 S.Ct. 1513 (2003).

## PRAYER FOR RELIEF

WHEREFORE, on the basis of the foregoing, Defendant D.T. Gruelle respectfully requests that the Court enter a judgment dismissing with prejudice all claims in the Complaint, assessing costs against Plaintiff, and granting  such other relief as the court deems just and proper.

## COUNTERCLAIM

Pursuant to Rule 13(a) of the FED. R. CIV. P. Defendant and Counterclaimant D.T. Gruelle Company Group, L.L.C. ( hereinafter "D.T. Gruelle", "DTG" or "Counterclaimant") files this Counterclaim against Space Exploration Technologies Corp. (hereinafter "SpaceX" or "Counter-defendant") as follows:

## PARTIES

1.      Counterclaimant DTG is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 301 Moon Clinton Road, Moon Township, Pennsylvania 15108.  DTG does business as D.T. Gruelle Company.

2.      Counter-defendant SpaceX is a Delaware corporation with its principal place of business at 1 Rocket Road, Hawthorne, California 90250.

## JURISDICTION AND VENUE

3.      The Court has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1367 since it involves the same transaction making up the subject matter of the Complaint.

4.      Venue is proper in this Court by agreement of DTG and SpaceX pursuant to ¶ 21 of the terms and conditions of the a contract they entered into on November 22, 2011 entitled "**CUSTOMS POWER OF ATTORNEY/DESIGNATION OF EXPORT FORWARDING AGENT And Acknowledgement of Terms and Conditions**" (hereinafter "the Contract"), a copy of which is attached as Exhibit A.  *See e.g., M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972) (in general, forum selection clauses are prima facie valid).

5.     The Court has both general and personal jurisdiction over SpaceX pursuant to its supplemental jurisdiction, and the fact that SpaceX unconditionally and irrevocably agreed to the Contract terms and conditions, including ¶ 21 of the Contract.

### STATEMENT OF FACTS

6.     D. T. Gruelle is a Non-Vessel Operating Common Carrier (hereinafter "NVOCC") under the Shipping Act (46 U.S.C. §§ 40101, *et seq.*).  DTG's operations consist of arranging for the transport of cargo by land, sea, air or a combination of these types of transport on behalf of its customers through contracting with carriers having assets such as ships, trucks or airplanes that can physically carry out the transport needs of shippers that engage D.T. Gruelle, such as SpaceX.

7.     DTG's operations sometimes include the transport of critical and other specialty materials.  DTG relies on its customers to provide accurate and complete details of shipping, handling and transport requirements for such critical specialty equipment and materials.

8.     SpaceX is a corporation engaged in space exploration which has successfully launched rockets into space.  SpaceX has expertise, knowledge and experience with the equipment and materials necessary to enable it to explore space, including the operation and handling of such equipment and materials.

9.     On November 22, 2011, SpaceX and DTG entered into the Contract which provided that DTG would act as an NVOCC on behalf of SpaceX.

10.     As part of the Contract, SpaceX unconditionally and irrevocably agreed to the terms and conditions which were expressly acknowledged by SpaceX's President, Gwynne Shotwell and Timothy R. Hughes, Senior Vice President & General Counsel of SpaceX.

11.     The Contract expressly provides that D.T. Gruelle Company Terms and Conditions govern all transactions between the DTG and SpaceX.

12.     Paragraph 11 of the terms and conditions of the Contract provides in relevant part as follows:

> **Indemnification/Hold Harmless.  ….**The Customer [SpaceX] agrees to indemnify, defend, and hold the Company [DTG] harmless form (sic) any claims and/or liability arising from the importation or exportation of customers (sic) [SpaceX's] merchandise and/or any conduct of the customer [SpaceX]…and further agrees to indemnify and hold the Company [DTG] harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company [DTG] may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding be brought against the Company [DTG], it shall give notice in writing to the Customer [SpaceX] by mail at its address on file with the Company [DTG].

13.     The above captioned action brought by SpaceX against DTG on or about October 5, 2012, and which was served on DTG on October 10, 2012, constitutes a "claim, suit or proceeding" brought against DTG within the scope of ¶ 11 of the terms and conditions of the Contract.

14.     Through this Counterclaim DTG makes its claim against SpaceX for indemnification/hold harmless pursuant to ¶ 11 of the terms and conditions of the Contract for "any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which DTG "may…incur, suffer or be required to pay by reason of such claims."

15.     With the filing of this Counterclaim, DTG is giving notice in writing to SpaceX by mail or Federal Express Courier at SpaceX's address on file with DTG as required by ¶ 11 of the terms and conditions of the Contract.

16.     Pursuant to Rule 10(c) of the FED. R. CIV. P., DTG repeats, states, re-alleges and incorporates by reference in their entirety, as if fully set forth below, its responses and averments contained in DTG's foregoing ANSWER WITH AFFIRMATIVE DEFENSES.

## <u>CLAIM FOR INDEMNIFICATION</u>

17.     DTG repeats, states, re-alleges and incorporates by reference in their entirety, as if fully set forth below, paragraphs 1 through 16 of this Counterclaim.

18.     Based on the plain and inclusive language of ¶ 11 of the terms and conditions of the Contract, and SpaceX's filing of the above caption case against DTG, SpaceX is liable to DTG for contractual indemnification for any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which DTG may incur as the result of the above captioned case.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, on the basis of the foregoing D.T. Gruelle respectfully requests that the Court:

1.     Enter judgment for DTG and against SpaceX holding SpaceX liable in indemnification to DTG, and liable to hold DTG harmless for any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which DTG may incur as the result of the above captioned case SpaceX has filed against DTG; and

2.     Award DTG monetary damages for the full amount of all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which DTG incurs as the result of the above captioned case SpaceX has filed against it.

## <u>JURY DEMAND</u>

D.T. Gruelle demands a trial by jury to the extent there are issues triable to a jury,

Dated:  New York, New York.
        November 29, 2012

Respectfully submitted,

HUSCH BLACKWELL LLP

By:   /s/ Daniel P. Jaffe
        Daniel P. Jaffe
        60 East 42nd Street, Suite 4600
        New York, NY  10165
        Telephone:  (212) 485-9805
        Facsimile:   (314) 480-1505
        Dan.Jaffe@huschblackwell.com

        Carlos Rodriguez (*pro hac vice* forthcoming)
        HUSCH BLACKWELL LLP
        750 17th Street N.W.
        Suite 900
        Washington, D.C. 20006
        Telephone: (202) 378-2300
        Fax: (202) 378-2319
        Carlos.rodriguez@huschblackwell.com

        *Attorneys for Defendant D.T. Gruelle Company Group, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2012, I electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system and that all counsel of record will be served via the Notice of Electronic Filing generated by CM/ECF.

/s/ Daniel P. Jaffe