# HUSCH BLACKWELL

Daniel P. Jaffe
Attorney

60 East 42nd Street, Suite 4600
New York, New York 10165
Direct: 212.485.9805
Fax: 314.480.1505
dan.jaffe@huschblackwell.com





PAUL A. ENGELMAYER
UNITED STATES DISTRICT JUDGE

December 5, 2012

**VIA FEDERAL EXPRESS**

The Honorable Paul A. Engelmayer
United States District Judge
Daniel Patrick Moynihan U. S. Courthouse
500 Pearl Street
Room 670, Courtroom 18C
New York, NY 10007

Re:  *Space Exploration Technologies Corp. vs. D.T. Gruelle Company Group, L.L.C.*, Case 1:12-cv-7510-PAE

Dear Judge Engelmayer:

Husch Blackwell LLP, Carlos Rodriguez (*pro hac vice* forthcoming) and the undersigned are counsel for defendant D.T. Gruelle Company Group, L.L.C. ("DTG"). Pursuant to the Court's Individual Rule and Practice 3 G, DTG requests a pre-motion conference regarding a motion for summary judgment it intends to file in the above referenced case. The basis for this anticipated motion is set forth as follows.

The material facts of this case which are dispositive of both the Plaintiff's ("SpaceX") claims and DTG's counterclaims are as follows: 1) On November 22, 2011, SpaceX and DTG entered into a contract with terms and conditions that apply to all transactions between the parties ("Contract"), attached as Exhibit A to the Answer & Counterclaim (Doc. #7-1); 2) subject to the Contract, the parties agreed to have DTG arrange for the transport of two liquid oxygen storage tanks ("Tanks") from its manufacturer in Capetown, South Africa to SpaceX's facility at Vandenberg AFB, California; 3) based on information provided by SpaceX which indicated the Tanks constituted an "abnormal load" for South African permit purposes, DTG submitted to SpaceX a quote on February 22, 2012, in the amount of $364,000 ("Quote") for an April departure; 4) the Quote was subject to ¶ 5 of the Contract which in part provides that such quotes are: not-binding, for informational purposes only, and subject to change without notice; 5) at no time prior to August 15, 2012, did DTG and SpaceX agree in writing to undertake the handling or transportation of the shipment at a specific rate or amount; 5) SpaceX issued Purchase Order #145090 (2/24/2012) in the amount of the Quote, but this Purchase Order was never signed or

# HUSCH BLACKWELL

The Honorable Paul A. Engelmayer
December 5, 2012
Page 2 of 3

otherwise agreed to by both DTG and SpaceX, therefore, the Contract terms and conditions were not modified or amended (¶ 18, Contract); 6) on July 18, 2012, nearly 5 months after the Quote was given and as DTG was preparing the Tanks for transport, SpaceX for the first time notified DTG that the Tanks could only be transported on their saddles (or supports) or the Tanks they would be structurally damaged if handled otherwise; 7) DTG promptly notified SpaceX this new factor would significantly increase the costs of shipment – the Tanks' transport height was significantly increased, making the Tanks a "super abnormal load" for permit purposes under South African law; 8) the Tanks' "super abnormal load" status required: special trailers; more stringent permits, road surveys and escorts; a more specialized sea vessel, and otherwise caused delays and re-scheduling resulting in significant penalties for "dead-freight" and inducement fees; 9) when these problems were confirmed on August 1, 2012, and the days thereafter, SpaceX was again fully informed of the increased costs, was given the option of cancelling the transport with DTG, and bidding out the transport to other carriers, but SpaceX instructed DTG to proceed with transporting the Tanks; 10) on August 15, 2012, DTG sent SpaceX Invoice No. 7001296-001 in the amount of $339,802, the rate (not including taxes and duties) which would be charged for shipping the Tanks from South Africa to Houston, Texas, as a "super abnormal load" [this rate was reasonable and in line with the increased costs for this type of load] – **DTG informed SpaceX, and SpaceX was aware, of additional costs before DTG acted on SpaceX's instructions to proceed**; 11) on August 21, 2012, the Tanks were loaded onto the sea vessel "Sophie" & departed Capetown, South Africa for Houston, Texas (as instructed by SpaceX); 12) SpaceX requested a breakdown of the greater cost rate for transporting the Tanks on the shorter trip to Houston, and on August 27, 2012, promptly received a "Cost Sheet" again explaining the $339,802 Invoiced charges; 13) on August 28, 2012, SpaceX asserted it wouldn't accept the increased rate for transporting the Tanks; 14) the Tanks arrive safe and sound in Houston on September 14, 2012; 15) on and before September 18, 2012, as authorized by the advance payment and general lien provisions of the Contract (¶¶, 10 & 14), and to protect itself against SpaceX's threat it will not pay the costs for shipping the Tanks, DTG demands that SpaceX pay it the full amount SpaceX owes, $468,988.96 (the amount for shipping the Tanks plus the sum of the amounts owed for five other non-related prior shipments) before DTG will deliver the original Bill of lading and other documents that are needed for SpaceX to take possession of the Tanks; 16) on or shortly after September 22, 2012, SpaceX pays DTG the $468,988.96 and DTG delivers the papers needed for SpaceX to take possession of the Tanks; 17) ¶ 11 of the Contract provides that SpaceX will indemnify and hold DTG harmless from any claims or proceedings relating to its transport of SpaceX's goods, or the actions of SpaceX, including costs and attorneys' fees; and 18) DTG is an independent contractor with regard to the subject matter of this case (¶ 2, Contract, General Terms & Conditions of Service), and as issuer of the Bill of Lading DTG is a common carrier in relation to SpaceX as the shipper.

The foregoing material facts are evidenced by documents and emails, and cannot be reasonably disputed. The applicable maritime law and laws of New York indicate that DTG is entitled by summary judgment to a dismissal with prejudice of SpaceX's claims against it, and that DTG is entitled to its costs and attorneys' fees on its Counterclaim.

# HUSCH BLACKWELL

The Honorable Paul A. Engelmayer
December 5, 2012
Page 3 of 3

The law is well established that where, as in this case there is "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overwhelming bargaining power [it]. . .should be given full effect." *Carnival Cruise Lines, Inc. v. Shute Et Vir*, 499 U.S. 585, 591 (1991), citing *The Bremen, et al v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972). Here, SpaceX and DTG entered into a freely negotiated private contract for the transport of goods internationally, and there is no basis not to give the Contract full force and effect in accordance this general rule of law. At all times during the performance of the Contract, DTG acted within its rights and authority. Contrary to SpaceX's claims of coercion, the undisputed record shows that SpaceX was fully informed about the increased cost of transporting a "super abnormal load" and between July 18 – August 21, 2012, was given the option of discontinuing with DTG, taking the transport out for other bids, but chose to go forward with DTG before the Tanks were in transit. SpaceX received the invoice for "super abnormal load" charges on or about August 15, 2012, six days prior to the Tanks leaving on the sea vessel, "Sophie."

In addition to the foregoing, which covers all Counts of the Complaint, Counts II and III should also be dismissed with prejudice because they are based on California law and are contrary to the choice of law provision of the Contract (¶21) mandating the application of New York law. *Frankel v. Citicorp Insurance Services, Inc., et al*, 80 A.D.3d 280, 285, 913 N.Y.S.2d 254, 259 (2010)(New York courts will generally enforce a clear and unambiguous choice of law clause contained in an agreement so as to give effect to the parties' intent [citations omitted]. Similarly, Counts IV and V, breach of fiduciary duty and unjust enrichment respectively, also fail as a matter of law because DTG is not a fiduciary or agent of SpaceX, but rather is an independent contractor and common carrier to SpaceX under the Contract. *Norfolk Southern Railway Company v. Kirby*, 543 U.S. 14, 34 (2004)(ruling that there was no agency relationship between the cargo owner and intermediary[like DTG] since there was no fiduciary relationship or control); *see also Georgia Malone & Company, Inc. v Rieder*, 19 N.Y.3d 51, 516-517, 973 N.E.2d 743, 746-747, 950 N.Y.S.2d 333, 336-337 (2012) (there must be a relationship which could have caused reliance and inducement for an unjust enrichment claim).

                Respectfully submitted,

                HUSCH BLACKWELL LLP

                By: *[signature]*
                Daniel P. Jaffe
                Carlos Rodriguez, Of Counsel

                *Attorneys for Defendant & Counterclaimant*
                *D.T. Gruelle Company Group, L.L.C.*

cc: By E-Mail to Plaintiff's &Counter-defendant's Attorneys:
Douglas Paul Lobel, Esq; Jonathon Scott Lawson, Esq.; Jason Mark Koral, Esq.