UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                               :

SPACE EXPLORATION TECHNOLOGIES   :
CORP.,                                     :

                             :

                  Plaintiff,     :

v.                                  :     No.: 1:12-cv-07510-PAE (KNF)

                             :

D.T. GRUELLE COMPANY GROUP,     :
L.L.C.,                                   :

                             :

                  Defendant.   :
------------------------------------------x

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S RULE 12(b)(6) MOTION TO
## <u>DISMISS DEFENDANT'S COUNTERCLAIM</u>

      The Court should dismiss the Counterclaim of Defendant D.T. Gruelle Company Group,

L.L.C. ("DTG").  Plaintiff Space Exploration Technologies Corp. ("SpaceX") filed its Complaint

after DTG, when shipping critical supplies for SpaceX, refused to complete the shipment unless

SpaceX paid an additional premium above the agreed-upon price.  In its Counterclaim, DTG

seeks payment of its attorney's fees for this lawsuit, effectively interpreting an indemnification

provision in its form contract to require SpaceX to reimburse DTG's attorney's fees.

      But that is not at all what the indemnification provision says.  In its brief, DTG

selectively disregards a limiting phrase, by using ellipses to excise it from its block-quote of the

provision.  Reading the entire language as a whole, it is clear that the contract does not shift

attorney's fees.  New York law requires unequivocally certain language to shift fees in a lawsuit,

and no such words exist here.  The Court should therefore dismiss DTG's Counterclaim pursuant

to Federal Rule of Civil Procedure 12(b)(6).

## RELEVANT FACTS

**I.    SPACEX CONTRACTED WITH DTG TO SHIP LIQUID OXYGEN
TANKS FROM SOUTH AFRICA TO THE UNITED STATES**

SpaceX is the nation's leading commercial space transportation company.  SpaceX has

successfully developed and flown both a rocket, called the "Falcon 9," and a spacecraft, called

the "Dragon."  Under contracts with NASA, SpaceX has already launched and berthed two

Dragons with the International Space Station, and has at least ten more such resupply missions

over the next few years.  NASA has also awarded SpaceX a contract to upgrade the Dragon to

carry astronauts into the Earth's orbit.  The press has dubbed the Dragon as the "follow-on" to

the retired Space Shuttle.  *See generally* Complaint ¶ 7.

The Falcon 9, which has had four perfect launches in four attempts, has only launched so

far from Cape Canaveral, Florida.  SpaceX is currently upgrading new launch facilities at

Vandenberg Air Force Base (VAFB) in California.  *Id.* ¶ 8.

For these new facilities, SpaceX had new liquid oxygen tanks manufactured in South

Africa.  *Id.*  ¶¶ 9-10.  SpaceX contracted with DTG to transport the tanks, first by ship, then by

truck, from South Africa through Houston to VAFB.  *Id.* ¶ 11.  SpaceX had a hard deadline to

receive and install the tanks in order to meet contractual milestones on contracts worth in excess

of fifty-million dollars.  *Id.* ¶ 14.

**II.    TWO CONTRACTS RELATE TO DTG'S SHIPMENTS**

To effectuate DTG's shipment of the tanks, the parties executed two documents.

First, DTG sent SpaceX its standard shipping form, entitled the "Customs Power Of

Attorney/Designation Of Export Forwarding Agent And Acknowledgment of Terms and

Conditions" (the "DTG Form").  The parties signed it on November 22, 2011.  *See* Answer ¶ 1a.

The DTG Form contains a limited indemnification provision, which states in full:

> The Customer agrees to indemnify, defend, and hold the Company harmless form [sic] any claims and/or liability arising from the importation or exportation of customers [sic] merchandise and/or any conduct of the customer, ***which violates any Federal, State and/or other laws***, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; ***in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing*** to the Customer by mail at its address on file with the Company.

DTG Form ¶ 11 (emphases added) attached as Exhibit A to DTG's Answer and Counterclaim.

Later, the parties agreed to SpaceX's purchase order, which SpaceX provided to DTG in February 2012 (the "Purchase Order"). *See* Complaint ¶ 11 ("In February 2012, SpaceX placed an order with DTG for the transportation of liquid oxygen tanks . . . .").

## III.    DTG FORCED SPACEX TO MAKE ADDITIONAL PAYMENTS, AND INCUR ADDITIONAL COSTS, IN DISREGARD FOR THE AGREED-UPON PRICE

This lawsuit has arisen because DTG, apparently realizing it agreed to a too-low price, demanded that SpaceX pay a higher price or else it threatened to not deliver the tanks.

After DTG took possession of the tanks in South Africa, DTG demanded that SpaceX pay an unjustified price increase for the shipment, above the price agreed to by SpaceX and DTG and stated in the Purchase Order.  Complaint ¶ 13.  DTG knew that SpaceX had a hard deadline to install the tanks – and delay would put SpaceX in breach of large contracts worth significant amounts. *Id.* ¶ 14.  DTG refused to deliver the tanks if SpaceX did not make the additional payment. *Id.* ¶ 13.

SpaceX had no choice but to pay money beyond the contractual price – the tanks were in DTG's sole possession, and SpaceX absolutely had to get the tanks delivered. *Id.* ¶¶ 15-16.  In a September 20, 2012 email, a SpaceX employee said to DTG, "At this point and because SpaceX has to meet a critical milestone with the delivery of these tanks in order to receive a payment of

$10 million, I have no choice but to pay you an extraordinary amount of money that you never justified." *Id.* ¶ 16.  Both in legal terms and in common parlance, DTG's actions are best described by a single word:  Extortion.

SpaceX thus paid DTG money beyond the contractual price, and DTG delivered the tanks to SpaceX's possession.  *Id.* ¶ 17.

## IV.    SPACEX FILED THIS LAWSUIT TO OBTAIN A REFUND OF THE IMPROPER INCREASE IN CONTRACT PRICE, AND DTG COUNTERCLAIMED FOR ATTORNEY'S FEES

On October 5, 2012, SpaceX filed its Complaint, alleging that DTG threatened to withhold delivery of SpaceX's Liquid Oxygen tanks unless SpaceX paid DTG hundreds of thousands of dollars more than the contract price.  The Complaint asserted claims for (1) Breach of Contract – Voidable Amendment – Economic Duress; (2) Civil Extortion; (3) Violation of California Unfair Competition Law; (4) Breach of Fiduciary Duty; and (5) Unjust Enrichment.

On November 29, 2012, DTG filed its Answer With Affirmative Defenses And Counterclaim.  DTG's sole Counterclaim seeks indemnification "for any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which DTG may incur as the result of the above captioned case."  Counterclaim ¶ 18.  DTG alleges that SpaceX's lawsuit against DTG constitutes a claim brought against DTG within the scope of paragraph 11 of the DTG Form.  *Id.*

## STANDARD OF REVIEW

Where, as with DTG's Counterclaim, a claim is based on the language of a contract, the Court can readily resolve the dispute under Rule 12(b)(6).  The Court should determine if the contract has a plain meaning based only on the words of the contract, without reference to extrinsic communications between the parties.  *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).  The Court should reject any proffered interpretation that is

inconsistent with the plain language of the contract or that renders language superfluous or without meaning. *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 263 (2d Cir. 2011). If the contract has one, unambiguous meaning, the Court should enforce that meaning and dismiss any claim based on a contrary interpretation. *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 509-10 (S.D.N.Y. 2012) (dismissal is appropriate where the unambiguous language does not support the claim). A claim for contractual indemnification, therefore, is particularly amenable to resolution under Rule 12(b)(6). *E.g.*, *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 378-79 (S.D.N.Y. 2012) (dismissing claim for contractual indemnification on Rule 12(b)(6) motion).

## ARGUMENT

The Court should dismiss DTG's attempt to read a fee-shifting provision because it rests on an improper reading of the indemnification provision in the DTG Form.

## I.   DTG IGNORES THE PURCHASE ORDER

As an initial matter, DTG's Counterclaim rests solely on the DTG Form and not on the later, agreed-upon Purchase Order. Frankly, DTG ***ignores*** the Purchase Order as if it did not exist.

However, the Court need not address, at this time, whether the DTG Form or the Purchase Order governs the parties' relationship. SpaceX will limit its arguments here to just the words of the indemnification provision of the DTG Form, because that is the basis stated in the Counterclaim. SpaceX reserves its right to demonstrate, at a later time, that DTG agreed to a firm fixed price by performing the contract after receiving the Purchase Order, and thus the language of the DTG Form does not solely govern the parties' relationship.

II.     **THE DTG FORM DOES NOT SHIFT FEES**

Looking just at the DTG Form, the Counterclaim cannot survive.  The DTG Form (at

¶ 21) claims to be governed by New York law.  Under New York law, the Court should strictly

construe its indemnification provision.  The plain language does not reverse fees in this lawsuit,

but provides indemnification for unrelated types of costs.  New York courts will not read a fee-

shifting provision into a contract without a clear expression of that intent by the parties.

   A.     <u>**Indemnification Agreements Are Strictly Construed**</u>

In New York, courts strictly construe contractual indemnification provisions:  "When a

claim is made that a duty to indemnify is imposed by an agreement, that agreement must be

strictly construed so as not to read into it any obligations the parties never intended to assume."

*Haynes v. Kleinewefers and Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990) (citing *Levine v.*

*Shell Oil Co.*, 28 N.Y.2d 205, 211, 269 N.E.2d 799, 802 (1971)); *accord Weissman v Sinorm*

*Deli*, 88 N.Y.2d 437, 446-47, 699 N.E.2d 242 (1996).

This is particularly true for an effort to shift attorney's fees.  In its seminal decision in

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 548 N.E.2d 903 (1989), the New

York Court of Appeals explained that shifting attorney's fees "is contrary to the well-understood

rule that parties are responsible for their own attorney's fees." *Id.* at 492.  Thus, "the court

should not infer a party's intention to waive the benefit of the rule unless the intention to do so is

unmistakably clear from the language of the promise." *Id.*

   B.     <u>**The Indemnification Provision Is Inapplicable To This Lawsuit**</u>

Applying the *Hooper* standard here, DTG's claim for indemnification cannot survive

scrutiny.  ***First***, the indemnification provision is a narrow one, which applies only to the

importation of "merchandise" or other "conduct" that "violates the law."  There is no such

allegation here, and thus in no way does this provision constitute an "unmistakably clear" intent

- 6 -

to shift fees in litigation.  ***Second***, the indemnification provision only reaches third-party claims, not a lawsuit between the parties to the contract.

      1.     ***The Indemnification Provision Is Limited To "Merchandise" Or "Conduct" That "Violates The Law"***

DTG is ignoring – and attempting to read out of its own Form – a critical limitation on the indemnification provision.  In the block-quote of the indemnification provision in DTG's brief, DTG uses ellipses to literally cut out the most important words of the provision:  SpaceX's indemnification obligation is limited to "***importation or exportation of customers [sic] merchandise and/or any conduct of the customer, which violates any Federal, State and/or other laws***…."  DTG Form ¶ 11 (emphasis added).

The Counterclaim does not allege, nor could it, that SpaceX did anything that would fit within this limitation.  DTG has not alleged, for instance, that importation of the tanks violates any law.  Similarly, DTG has not alleged that SpaceX engaged in any other "conduct," in the course of the parties' relationship, that violates the law.  The plain language of the indemnification provision does not apply here.

Instead, DTG appears to be contending that the pursuit of a lawsuit, by itself, is "conduct" that "violates the law."  Under *Hooper*, that is nonsensical and does not constitute a fee-shifting provision.  First, it is not "unmistakably clear" language to shift fees.  If it was, DTG would not have excised these words with ellipses.  Second, DTG has demonstrated – by its own conduct – that SpaceX has not "violated the law" in filing the lawsuit.  DTG has not filed a Rule 11 motion for the filing of the lawsuit; and indeed it has not even filed a Rule 12 motion to dismiss.  To the contrary, SpaceX is free to file a lawsuit as long as it is not a sham.  *See Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (court would not use its inherent power to award fees unless claims were "entirely without color and made for reasons of

harassment or delay or for other improper purposes" (quoting *Browning Debenture Holders'*

*Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977))); *Dagen v. CFC Group Holdings,*

*Ltd.*, No. 00 Civ.5682, 2004 WL 856539, at *5 (S.D.N.Y. Apr. 21, 2004) (refusing to sanction

party, even though claims were "dubious at best").  Thus there is no possible basis to conclude

that the filing of the lawsuit is "conduct" that "violates" the law, and so no claim can exist under

the indemnification provision.

The ellipses in DTG's block-quote of the indemnification provision speak volumes.

DTG knows that its claim cannot survive under the plain language of the provision, so it literally

tries to rewrite the provision.  This is similar to DTG's unilateral effort to rewrite the contract

price to which it had agreed with SpaceX.

### 2.   *The Indemnification Provision Is Limited To Third-Party Claims*

An additional basis for dismissal is that the indemnification provision applies only to

claims brought by third parties – not to a lawsuit between the two parties to the DTG Form.

Directly following the indemnification language, the DTG Form requires DTG to notify SpaceX

if a lawsuit is brought against DTG.  DTG Form ¶ 11 ("[I]n the event that any claim, suit or

proceeding is brought against [DTG], it shall give notice in writing to [SpaceX] by mail at its

address on file with [DTG].").  This notice requirement can only logically apply to a third-party

claim; it is nonsensical to posit that the parties intended for the notice provision to also

encompass lawsuits between the parties.

The New York Court of Appeals examined similar circumstances and held that an

indemnification provision was limited to third-party claims.  In *Hooper*, the court found

instructive that:  (1) the subjects for indemnification were not "exclusively or unequivocally

referable to claims between the parties themselves;" and (2) other provisions of the contract,

such as a notice provision, unmistakably related to third-party claims.  *Hooper*, 74 N.Y.2d at 492.

The same bases are equally applicable here.  First, the enumerated subjects for indemnification are not exclusively referable to claims between the parties.  A third-party claim could conceivably be brought against DTG if SpaceX violated a law in connection with the tanks, maintained in DTG's custody.  Second, the indemnification provision specifically requires DTG to give notice of suits to SpaceX.  Under the reasoning of *Hooper*, the notice provision demonstrates that the entire indemnification provision applies exclusively to third-party claims.

The indemnification provision at bar is even clearer than that in *Hooper*.  In *Hooper*, the notice provision was found in a separate sub-paragraph; here, the notice provision is in the very same paragraph as the indemnification provision.  *See also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 200 (2d Cir. 2003) (examining ancillary provisions, including a notice provision, in connection with an indemnification clause and determining that the context showed that indemnification was only intended for third-party claims).

## CONCLUSION

For these reasons, SpaceX respectfully requests that the Court grant SpaceX's Motion and dismiss DTG's Counterclaim with prejudice.

Dated:  December 21, 2012          Respectfully submitted,

COOLEY LLP


/s/ Douglas P. Lobel
Douglas P. Lobel (DL-3894)
11951 Freedom Drive
Reston, Virginia 20190
Telephone:  (703) 456-8000
Facsimile:  (703) 456-8100

and

Jason Koral (JK-1044)
1114 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 479-6000
Facsimile:  (212) 479-6275

*Counsel for Space Exploration Technologies Corp.*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 21st day of December, 2012, **MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 12(b)(6) MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM** was filed through the ECF system and will be sent electronically, via the ECF system, to the following registered participants, as also identified on the Notice of Electronic Filing (NEF).  There are no non-registered participants in this case to my knowledge and belief.

                    Daniel P. Jaffe
                    Husch Blackwell Sanders, LLP
                    190 Carondelet Plaza, Suite 600
                    St. Louis, MO 63105-3441
                    (314) 480-1500
                    Fax: (314)-480-1505
                    Email: dan.jaffe@huschblackwell.com

                    *Counsel for Defendant D.T Gruelle Company Group, L.L.C.*

                    /s/ Douglas P. Lobel_____

540915 /RE