# EXHIBIT A



**S P E C I A L T Y   L O G I S T I C S**
*D.T. Gruelle Company*
301 Moon Clinton Road, Moon Township (Pittsburgh), PA 15108 U.S.A.
Tel: (412) 262-2755 * Fax: (412) 262-1391
E-Mail: dtg@dtgruelle.com * WEB: www.dtgruelle.com

*United States Customs Broker, Corporate License No: 24016 * International Air Freight Forwarders IATA / CNS License No: 011954
Ocean Freight Forwarders / NVOCC License No: OTI 12187NF * FMSCA Freight Forwarders License No: FF#008440 * Property
Brokers License No: MC#568390 * TSA Certified Indirect Air Carrier* Members of FIATA, TIA, NCBFAA, WWPC
C-TPAT Certified SVI dtgBro03903*

## CUSTOMS POWER OF ATTORNEY/
## DESIGNATION OF EXPORT FORWARDING AGENT
### And
### Acknowledgement of Terms and Conditions

IRS NUMBER:
01-0627671

√ appropriate box:
o Individual
o Partnership
o Corporation
o Sole Proprietorship
o Limited Liability Company

KNOW ALL MEN BY THESE PRESENTS: That, (Grantor's Company Name) √ Space Exploration Technologies Corp.

(Full name of individual, partnership, corporation, sole proprietorship, or limited company (identify)
doing business as √_____ under the laws of the State of √ Delaware
_____ residing or having a principal place of business at √ 1 Rocket
Road, Hawthorne, CA 90250.
_____
_____
_____

, hereby constitutes and appoints √ D.T. GRUELLE COMPANY, its officers employees and/or specifically
authorized agents, to act for and on its (Grantee's Name)

behalf as true and lawful agent and attorney of the grantor named for and in the name, place, and
stead of said grantor from this date, in the United States (the "territory"),either in writing,
electronically, or by other authorized means, to;

Make, endorse, sign, declare, or swear to any entry, withdrawal, declaration, certificate, bill of lading,
carnet or any other documents required by law or regulation in connection with the importation,
transportation, or exportation of any merchandise in or through the Customs territory shipped or
consigned by or to said grantor;

Perform any act or condition, which may be required by law or regulation in connection with such
merchandise deliverable to said grantor, to receive any merchandise;

Make endorsements on bills of lading conferring authority to transfer title; make entry or collect
drawback; and to make, sign, declare, or swear to any statement or certificate required by law or

regulation for drawback purposes, regardless of whether such document is intended for filing with Customs;

Sign, seal, and deliver for and as the act of said grantor any bond required by law or regulation in connection with the entry or withdrawal of imported merchandise or merchandise exported with or without benefit of drawback, or in connection with the entry, clearance, lading, unlading or navigation of any vessel or other means of conveyance owned or operated by said grantor, and any and all bonds which may be voluntarily given and accepted under applicable laws and regulations, consignee's and owner's declarations provided for in section 485, Tariff Act of 1930, as amended, or affidavits in connection with the entry of merchandise;

Sign and swear to any document and to perform any act that may be necessary or required by law or regulation in connection with the entering, clearing, lading, unlading, or operation of any vessel or other means of conveyance owned or operated by said grantor;

Authorize other Customs brokers duly licensed within the territory to act as grantor's agent; to receive, endorse and collect checks issued for Customs duty refunds in grantor's name drawn on the Treasurer of the United States; if the grantor is a nonresident of the United States, to accept service of process on behalf of the grantor;

And generally to transact Customs business, including filing of claims or protests under section 514 of the Tariff Act of 1930, or pursuant to other laws of the territories, in which said grantor is or may be concerned or interested and which may properly be transacted or performed by an agent and attorney;

Giving to said agent and attorney full power and authority to do anything whatever requisite and necessary to be done in the premises as fully as said grantor could do if present and acting, hereby ratifying and confirming all that the said agent and attorney shall lawfully do by virtue of these presents;

This power of attorney to remain full force and effect until revocation in writing is duly given to and received by grantee (if the donor of this power of attorney is a partnership, the said power shall in no case have any force or effect in the United States after the expiration 2 years from the dates of its execution);

Appointment as Forwarding Agent: Grantor authorizes the above grantee to act within the territory as lawful agent and sign or endorse export documents (i.e., commercial invoices, bills of lading, insurance certificates, drafts and any other document) necessary for the completion of an export on grantor's behalf as may be required under law and regulation in the territory and to appoint forwarding agents on grantor's behalf;

**Grantor acknowledges receipt of** ✓ D.T. GRUELLE COMPANY Terms and Conditions of Service governing all transactions between the Parties. If the Grantor is a Limited Liability Company, the signatory certifies that he/she has full authority to execute this power on behalf of the Grantor.

IN WITNESS WHEREOF, the said ✓ _____

Caused these presents to be sealed and signed: (Signature) ✓ _____

(Capacity):: ✓ _President_____ ✓ Date: _11/22/2011_____

Witness (if required):: _____

If you are the importer of record, payment to the broker will not relieve you of liability for U.S. Customs charges (duties, taxes or other debts owed Customs) in the event Customs charges are not paid by the broker. Therefore, if you pay by check, Customs charges may be paid with a separate check payable to the "U.S. Customs Service" which shall be delivered to Customs by the broker. Importers who wish to utilize this procedure must contact our office in advance to arrange timely receipt of duty checks.

**INDIVIDUAL OR PARTNERSHIP CERTIFICATION**

CITY_____
COUNTRY_____ SS:
STATE_____

On this ███████████████████████ personally appeared before me ███████████

residing ███████████████████████ sonally known or sufficiently identified to me, who certifies

that_____ (is) (are) the individual (s) who executed the foregoing instrument and acknowledge

it to be_____ free act and deed.

_____
(Notary Public)

**CORPORATE CERTIFICATION**
(To be made by an officer other than the one who executes the power of attorney)

I, Timothy R. Hughes , certify that I am the Sr. VP & General Counsel

of Space Exploration Technologies Corp. organized under the laws of the State of Delaware

that Gwynne Shotwell who signed this power of attorney on behalf of the donor, is the _____

President of said corporation; and that said power of attorney was duly signed, and

attested for and in behalf of said corporation by authority of its governing body ████████████

████████████████████████

████████████████ further certify that the resolution is in accordance with

the articles of incorporation and bylaws of said corporation.

And was executed in accordance with the laws of the State and Country of Incorporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said corporation, at the
City of Washington this 22 day of Nov , 20 11 - .

NOV 2 2 2011

_____        _____
(Signature)                    (Date)

**D.T. GRUELLE COMPANY**

1. **Definitions.**
    a. "Company" shall mean THE D.T. GRUELLE COMPANY, its subsidiaries, related companies, agents and/or representatives;
    b. "Customer" shall mean the person for which the Company is rendering services, as well as its agents and/or sellers, shipper's agents, insurers and underwriters, break-bulk agents, consignees, etc. **It is the responsibility of the Customer to provide notice and copy(s) of these terms and conditions of service to all such agents or representatives;**
    c. "Documentation" shall mean all information received directly or indirectly from Customer, whether in paper or electronic form;
    d. "Ocean Transportation Intermediaries" ("OTT") shall include an "ocean freight forwarder" and a "nonvessel operating carrier";
    e. "Third parties" shall include, but not be limited to, the following: "carries, truckmen, artmen, lightermen, forwarders, OTIs, customs brokers, agents, warehousemen and others to which the goods are entrusted for transportation, cartage, handling and/or delivery and/or storage or otherwise".

2. **Company as agent.** The Company acts as the "agent" of the Customer for the purpose of performing duties in connection with the entry and release of goods, post entry services, the securing of export licenses, the filing of export documentation on behalf of the Customer and other dealings with Government Agencies: as to all other services, Company acts as an independent contractor.

3. **Limitation of Actions.**
    a. Unless subject to specific statute or international convention, all claims against the Company for a potential or actual loss, must be made in writing and received by the Company, within ninety (90) days of the event giving rise to claim; the failure to give the Company timely notice shall be complete defense to any suit or action commenced by Customer.
    b. All suites against Company must be filed and properly served on Company as follows:
        i. For claims arising out of ocean transportation, within one (1) year from the date of the loss;
        ii. For claims arising out of air transportation, within two (2) years from the date of the loss;
        iii. For claims arising out of the preparation and/or submission of an import entry(s), within seventy five (75) days from the date of liquidation of the entry(s);
        iv. For any and all other claims of any other type, within two (2) years from the date of the loss or damage.

4. **No Liability For The Selection or Services of Third Parties and/or Routes.** Unless services are performed by persons or firms engaged pursuant to express written instructions from the Customer, Company shall use reasonable care in its selection of third parties, or in selecting the means, route and procedure to be followed in the handling, transportation, clearance and delivery of the shipment; advice by the Company that
a particular person or firm has been selected to render services with respect to the goods, shall not be construed to mean that the Company warrants or represents that such person or firm will render such services nor does Company assume responsibility or liability for any actions(s) and/or inaction(s) of such third parties and/or its agents, and shall not be liable for any delay or loss of any kind, which occurs while a shipment is in the custody or control of a third party or the agent of a third party; all claims in the connection with the Act of a third party shall be brought solely against such party and/or its agents; in connection with any such claim, the Company shall reasonably cooperate with the Customer, which shall be liable for any charges or costs incurred by the Company.

5. **Quotations Not Binding.** Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice; no quotation shall be binding up the Company unless the Company in writing agrees to undertake the handling or transportation of the shipment at a specific rate or amount set forth in the quotation and payment arrangements are agreed to between the Company and the Customer.

6. **Reliance On Information Furnished.**
    a. Customer acknowledges that it is required to review all documents and declarations, documentation and/or filed with the Customers Services, other Government Agency and/or

third parties, and will immediately advise the Company of any errors, discrepancies, incorrect statements, or omissions on any declaration filed on Customers behalf;

    b. In preparing and submitting customs entries, export declarations, applications, documentation and/or export data to the United States and/or a third party, the Company relies on the correctness of all documentation, whether in written or electronic format, and all information furnished by Customer; Customer shall use reasonable care to insure the correctness of all such information and shall ndemnify and hold the Company harmless form any and all claims asserted and/or liability or losses suffered by reason of the Customer's failure to disclose information or any incorrect or false statement by the customer upon which the Company reasonably relied. The Customer agrees that the Customer has an affirmative non-delegable duty to disclose any and all information required to import, export or enter the goods.

**7. Declaring Higher Value To Third Parties.** Third parties to whom the goods are entrusted may limit liability for loss or damage; the Company will request excess valuation coverage only upon specific written instructions from the Customer, which must agree to pay any charges therefore; in the absence of written instructions or the refusal of the third party to agree to a higher declared value, at Company's discretion, the goods may be tendered to the third party, subject to the terms of the third party's limitations of liability and/or terms and conditions of service.

**8. Insurance.** Unless requested to do so in writing and confirmed to Customer in writing, Company is under no obligation to procure insurance on the Customer's behalf; in all cases, Customer shall pay all premiums and costs in connection with procuring requested insurance.

**9. Disclaimers; Limitation of Liability.**

    a. Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services;

    b. Subject to "c" below, Customer agrees that in connection with any and all services performed by the Company, the Company shall only be liable for its negligent acts, which are the direct and proximate cause of any injury to Customer, including loss or damage to Customer's goods, and the Company shall in no event be liable for the acts of third parties;

    c. In connection with all services performed by the Company, customer may obtain additional liability coverage, up to the actual or declared value of the shipment or transaction, by requesting such coverage and agreeing to make payment therefore, which request must be confirmed in writing by the Company prior to rendering services for the covered transaction(s).

    d. In the absence of additional coverage under "b" above, the Company's liability shall be limited to the following:

    i. Where the claim arises from activities other than those relating to customs brokerage, $50.00 per shipment or transaction, or

    ii. Where the claim arises from activities relating to "Customs business," $50.00 per entry or the amount of brokerage fees paid to Company for the entry, whichever is less;

    e. In no event shall Company be liable or responsible for consequential, indirect, incidental, statutory or punitive damages even if it has been put on notice of the possibility of such damages.

**10. Advancing Money.** All charges must be paid by Customer in advance unless the Company agrees in writing to extend credit to customer; the granting of credit to a Customer in connection with a particular transaction shall not be considered a waiver of the provision by the Company.

**11. Indemnification/Hold Harmless.** The Customer agrees to indemnify, defend, and hold the Company harmless form any claims and/or liability arising from the importation or exportation of customers merchandise and/or any conduct of the customer, which violates any Federal, State and/or other laws, and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, which the Company may hereafter incur, suffer or be required to pay by reason of such claims; in the event that any claim, suit or proceeding is brought against the Company, it shall give notice in writing to the Customer by mail at its address on file with the Company.

**12. C.O.D. or Cash Collect Shipments.** Company shall use reasonable care regarding written instructions relating to "Cash/Collect" on "Deliver (C.O.D.)" shipments, bank drafts, cashier's and/or certified checks, letter(s) of credit and other similar payment documents and/or instructions regarding collection of monies but shall have not liability if the bank or consignee refuses to pay for the shipment.

13. **Costs of Collection**. In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 15% per annum or the highest rate allowed by law, whichever is less, unless a lower amount is agreed to by Company.

14. **General Lien and Right To Sell Customer's Property**.

> a. Company shall have a general and continuing lien on any and all property of Customer coming into Company's actual or constructive possession or control for monies owed to Company with regard to the shipment on which the lien is claimed, a prior shipment(s) and/or both;
>
> b. Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of
>
> monies due and owing, as well as any on-going storage or other charges; Customer shall notify all parties having an interest in its shipment(s) of Company's rights and/or the exercise of such lien.
>
> c. Unless, within thirty days of receiving notice of lien, Customer posts cash or letter of credit at sight, or if the amount due is in dispute, an acceptable bond equal to 110% of the value of the total amount due, in favor of Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, Company shall have the right to sell such shipment(s) at public or private sale or auction and any net proceeds remaining thereafter shall be refunded to Customer.

15. **No Duty To Maintain Records For Customer**. Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 USC 1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is r Statute(s) and/or Regulations(s), but not act as a "recordkeeper" or "recordkeeping agent" for Customer.

16. **Obtaining Binding Rulings, Filing Protests, etc**. Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no obligation to undertake any pre- or post Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petition(s) and/or protests, etc.

17. **Preparation and Issuance of Bills of Lading**. Where Company prepares and/or issues a bill of lading, company shall be under no obligation to specify thereon the number of pieces, packages and/or cartons etc.; unless specifically requested to do so in writing by Customer or its agent and customer agrees to pay for same, Company shall rely upon and use the cargo weight supplied by Customer.

18. **No Modification or Amendment Unless Written**. These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally modify, alter or amend same shall be null and void.

19. **Compensation or Company**. The compensation of the Company for all its services shall be included with and is in addition to the rates and charges of all carriers and all other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends or other revenue received by the Company from carriers, insurers and others in connection with the shipment. On ocean exports, upon request, the Company shall provide a detailed breakout of the components of all charges assessed and a true copy of each pertinent document relating to these charges. In any referral for collection or action against the Customer for monies due to the Company, upon recovery by the Company,
the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney fee.

20. **Severability**. In the event any Paragraph(s) and/or portions(s) hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect.

21. **Governing Law; Consent to Jurisdiction and avenue**. These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of NEW YORK without giving consideration to principals of conflict of law. Customer and Company

> a. Irrevocably consent to the jurisdiction of the United States District Court and the State courts of NEW YORK   ;
>
> b. Agree that any action relating to the services performed by Company, shall only be brought in said courts;
>
> c. Consent to the exercise of *in personam* jurisdiction by said courts over it.

*Copyrighted by the National Customs Brokers and Forwarders Association of America*

## GENERAL TERMS & CONDITIONS OF SERVICE

All services performed by the legal entity named on the front of this document (hereinafter called the "Company") for the Customer, which term shall include the person or entity for which services are performed, its agents and/or representatives, including, but not limited to, shippers, exporters, importers, senders, receivers, owners, consignors, consignees, carriers, secured parties, warehousemen, insurers and underwriters, transferors or transferee of shipments, will be handled by the Company on the following terms and conditions: 1. Application of Terms and Conditions. Company and Customer agree that these terms and conditions of service constitute a legally binding contract. Customer acknowledges that the terms and conditions of the Company's standard international air waybill, ocean bill of lading, warehouse terms and conditions, master customs power of attorney and its currently effective tariffs are hereby incorporated by reference. The Customer acknowledges and agrees that it is responsible to provide notice and a copy of these terms and conditions to all of its agents or representatives.

2. Standing of Company, The Company acts as an independent contractor, except with respect to the performance of the following services where Company acts as an "agent" of Customer: entry and release of goods; post entry services; the securing of export licenses; export documentation filing for the Customer; other dealings with government agencies in behalf of Customer.

3. Services by Third Parties. Unless the Company carries, stores, or otherwise physically handles the shipment, and loss, damage, expense or delay occurs during such activity, the Company assumes no liability as a carrier and shall not be held responsible for any loss, damage, expense or delay to the goods to be forwarded or imported except as provided in paragraph 10 and subject to the limitations of paragraph 11 below, but undertakes only to use reasonable care in the selection of carriers, truckmen, lightermen, forwarders, customs brokers, agents, warehousemen and others to whom it may entrust the goods for transportation, cartage, handling and/or delivery and/or storage or otherwise. When the Company carries, stores or otherwise physically handles the shipment, it does so subject to the limitation of liability set forth in paragraph 10 below unless a separate bill of lading, air waybill or other contract is issued by the Company, in which event the terms thereof shall govern.

4. Liability Limitations of Third Parties. The Company is authorized to select and engage carriers, truckers, lightermen, forwarders, customs brokers, agents, warehousemen and others, as required, to transport, store, deal with and deliver the goods, all of whom shall be considered as the agents of the Customer, and the goods may be entrusted to such agencies subject to all conditions as to limitation of liability for forwarders, customs brokers, agents, warehousemen and others. The Company shall under no circumstances be liable for any loss, damage, expense or delay to the goods for any reason whatsoever when said goods are in custody, possession or control of third parties selected by the Company to forward, enter and clear, transport or render other services with respect to such goods. In the event that a person or entity hired by Company is determined to be the agent of the Company, the agent's liability is ascertained according to the provisions of these terms and conditions, particularly as set forth in paragraphs 10 and 11 below, as if they were a party hereto.

5. Choosing Routes or Agents. Unless express instructions in writing are received from the Customer and accepted by the Company, the Company has complete freedom in choosing the means, route and procedure to be followed in the handling, transportation and delivery of the goods.

6. Quotations Not Binding. Quotations as to fees, rates of duty, freight charges, insurance fees or other charges given by the Company to the Customer are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon the Company unless the Company in writing specifically undertakes the handling or transportation of the shipment at a specific rate.

7. Duty to Furnish Information (a) On an import shipment at a reasonable time prior to entering of the goods through U.S. Customs, the Customer shall furnish to the Company invoices in proper form and other documents necessary or useful in the preparation of the U.S. Customs entry and also, such further information as may be sufficient to establish inter alia, the dutiable value, the classification, the country of origin, quantity, weight, admissibility and the genuineness of the merchandise and any mark or symbol associated with it, and the Customer's right to import and/or distribute the merchandise, pursuant to U.S. law or regulation. If the Customer fails to furnish in a timely manner such information or documents, in whole or in part, as may be required to complete U.S. Customs entry or comply with U.S. laws or regulations or if the information or documents furnished are

inaccurate, incomplete, or otherwise insufficient, the Company shall be obligated only to use the best judgment in connection with the shipment and in no instance shall be charged with knowledge by the Customer of the true circumstances to which such inaccurate, incomplete, omitted or otherwise insufficient information or document pertains. Where a bond is required by U.S. Customs to be given for the production of any document or the performance of any act, the Customer shall be deemed bound by the term of the bond notwithstanding the fact that the bond has been executed by the Company as principal, it being understood that the Company entered into such understanding at the instance and on behalf of the Customer, and the Customer shall indemnify and hold the Company harmless for the consequences of any breach of the terms of the bond. (b) On an export shipment at a reasonable time prior to exportation of the shipment, the Customer shall furnish to the Company the commercial invoice in proper form and number, a proper consular declaration, weights, measures, values and other information in the language of and as may be required by the laws and regulations of the U.S. and the country of destination of the goods. (c) On an export or import shipment, the Company shall not in any way be responsible or liable for increased duty, penalty, fine or expense unless, caused by the negligence or other fault of the Company, in which event its liability to the Customer shall be governed by the provisions of these terms. The Customer shall be bound by and warrant the accuracy of all invoices, documents and information furnished to the company by the Customer or its agent for export, entry or other purposes and the

Customer agrees to indemnify and hold the Company harmless against any increased duty, penalty, fine or expense including but not limited to attorneys' fees, costs, and expenses resulting from any inaccuracy, incomplete statement, omission or any failure to make timely presentation of required invoices, documents and information, even if not due to any negligence of the Customer.

8. Declaring Higher Valuation. Inasmuch as the truckers, carriers, warehousemen and others to whom the goods are entrusted (collectively, the "Third Parties") usually limit their liability for loss or damage unless a higher value is declared and the charge based on such higher value is agreed to by any such Third Party, unless the Company receives specific written instructions from the Customer to pay such higher charges based on valuation and any such Third Party accepts such higher declared value, any valuation placed by the Customer on the goods shall be considered solely for export or customs purposes and the goods will be delivered to the Third Party subject to the limitations of liability set forth herein in paragraphs 10 and 11 below with respect to any claim against the Company and subject to the provisions of paragraph 4 above.

9. Insurance. The Company will make reasonable efforts to effect marine, fire, theft and other insurance upon the goods only after specific written instructions have been received and accepted by the Company in sufficient time prior to shipment from the point of origin, and the Customer at the same time states specifically the kind and amount of insurance to be placed. The Company does not undertake or warrant that such insurance can or will be placed. Unless the Customer has its own open marine policy and instructs the Company to effect insurance under such policy, insurance is to be effected with one or more insurance companies or other underwriters to be selected by the Company. Any insurance placed shall be governed by the certificate or policy issued and will only be effective when accepted by such insurance companies or underwriters. Should an insurer dispute its liability for any reason, the insured shall have recourse against the insurer only and the Company shall not be under any responsibility of liability in relation thereto, notwithstanding that the premium upon the policy may not be at the same rates as that charged or paid to the Company by the Customer, or that the shipment was insured under a policy in the name of the Company. Customer agrees to pay all insurance fees and any costs of the Company for arranging the same. If for any reason the goods are held in warehouse, or elsewhere, the same will not be covered by any insurance, unless the Company receives and accepts written instructions from the Customer. Unless specifically agreed in writing, the Company assumes no responsibility to effect insurance on any export or import shipment, which it does not handle. Company shall have no obligation to procure insurance in behalf of Customer except as specifically provided for herein.

10. Limitation of Liability for Loss; Warranty Disclaimer. (a) The Customer agrees that the Company shall only be liable for its negligent acts that are the direct and proximate cause of injury to the Customer, including any loss, damage, expense or delay to the goods. Subject to any applicable law, statute, or regulation, such liability shall be limited as follows: i) If the customer declares a value in advance of the transit and pays applicable additional charges, Company's liability shall be the lesser of the amount of any damage actually sustained or the declared value. ii) If the Customer does not declare a value and pay applicable additional charges, the Company's liability shall be the lesser of: A) the amount of any damage actually sustained or; B) $50 or the weight of the actual piece count lost or damaged in pounds multiplied by $.50, whichever is greater, plus the amount of the Company's

transportation charges applicable to that part of the shipment lost or damaged beyond economical repair. Iii) Damages for delay are limited as per Company's currently effective tariffs, available on Company's website. (b) Customer agrees that the
Company shall, in no event, be liable for consequential, indirect, incidental, punitive, statutory or special damages, including, but not limited to, loss of profits, income, utility, interest or loss of market, even if Company has been put on notice of the possibility of such damages. (c) Except as specifically set forth herein, Company makes no express or implied warranties in connection with its services. (d) Other limits of liability may apply to ocean transit, international air transit, warehousing, customs entry and other services. These liability limits can be found in the Company's terms and conditions for these services located on the Company's website or in the Company's tariffs.
11. Limitation of Actions. (a) It is the responsibility of the Customer to note in writing any damage or exception to the freight at the time of delivery. Receipt by the person entitled to delivery of the shipment without complaint is prima facie evidence that the same has been delivered in good condition and in accordance with the contract of carriage. (b) Subject to any applicable law, statute or regulation, the Company shall not be liable under paragraph 10 for any claims for: (i) damage or loss discovered by the Customer after delivery and after a clear receipt has been given to the Company, unless a claim is reported in writing to the Company within 15 days after delivery of the shipment with privilege to the Company to inspect the shipment and its container(s) and packing material within 15 days after receipt of such notice; (ii) damage, loss, or delay in all other circumstances, unless made in writing and received by the Company within 120 days after the date of acceptance of the shipment by the Company. (c) No claims with respect to a shipment, any part of which is received by the Consignee, will be entertained until all transportation charges have been paid. (d) Subject to any applicable law, regulation or treaty, all suits against Company must be filed and properly served on Company as follows: (i) for claims arising out of ocean transportation, within one (1) year
from the date of delivery or the date the goods should have been delivered; (ii) for claims arising out of air transportation, within two (2) years from the date of the loss; (iii) for claims arising out of preparation and/or submission of an import entry, within seventy-five (75) days from the date of liquidation of the entry; (iv) for any and all other claims of any other type, within two (2) years from the date of the loss or damage. (e) Claims for overcharges or duplicate billings must be made in writing and received by Company within 180 days from the acceptance date of the shipment by Company or they are time-barred. Lawsuits for overcharges or duplicate billings
must be filed no later than one year from the acceptance date of the shipment by Company.
12. Advancing Money. The Company shall not be obliged to incur any expense, guarantee payment or advance any money in connection with the importing, entering, forwarding, transporting, insuring, storing or coopering of the goods, unless monies sufficient to satisfy such expense, payment, or advance is previously provided to the Company by the Customer on demand. The Company shall not be under an obligation to advance freight charges, customs duties or taxes, insurance charges, or other charges owed to third parties by the Customer on any shipment, nor shall any advance by the Company be construed as a waiver of the provisions hereof. In the event that the Company should advance any such monies to any person or entity that subsequently refunds all or any portion thereof to the Customer, and the Customer at the time of the refund, has not reimbursed the Company for those monies, then any portion of the refund corresponding to such unpaid, advanced monies, and any interest paid thereon, shall be deemed the exclusive property of the Company to which the Customer shall have no claim, and which the Customer shall return to the Company immediately upon receipt.
13. Indemnification for Freight, Duties, etc. In the event that a carrier, other person or any governmental agency makes a claim or institutes legal action against the Company for freight, duties, fines, penalties, liquidated damages or other money due arising from a shipment of goods of the Customer, the Customer agrees to indemnify and hold the Company harmless for any amount the Company may be required to pay such carrier, other person or governmental agency together with reasonable expenses, including but not limited to attorney fees, costs, and expenses incurred by the Company in connection with defending such claim or legal action and obtaining reimbursement from the Customer. The confiscation or detention of the goods by any governmental authority shall not affect or diminish the liability of the Customer to the Company to pay all charges or other money due promptly on demand.
14. C.O.D. Shipments. Goods received with Customer's or other person's instructions to "Collect on Delivery" (C.O.D.) by drafts or otherwise, or to collect on any specified terms by time drafts or otherwise, are accepted by the Company 0nly upon the express understanding that it will exercise reasonable care regarding such instructions, and the Company will not be responsible for any refusal

by a bank or consignee to pay for a shipment, or for any act, omission, default, suspension, insolvency or want of care, negligence, or fault of any bank, correspondent, carrier or agent, nor for any delay in remittance lost in exchange, or loss during transmission, or while in the course of collection.

15. General Lien on any Property. The Company shall have a general and continuing lien on any and all property (and documents relating thereto) of the Customer, either in its actual or constructive possession, custody or control or en route, for all claims for monies owed to Company, including without limitation charges, expenses or advances incurred by the Company, in connection with any shipments of the Customer, including prior shipments. Company shall provide written notice to Customer of its intent to exercise such lien, the exact amount of monies due and owing, as well as any ongoing storage or other charges; Customer shall notify all parties having an interest in its shipment of Company's rights and/or the exercise of such lien. Unless, within thirty (30) days after receiving the notice of lien, Customer posts cash or a letter of credit at sight, or, if the amount due is in dispute, an acceptable bond equal to 110 percent of the value of the total amount due, in favor of the Company, guaranteeing payment of the monies owed, plus all storage charges accrued or to be accrued, the Company may sell at public or private sale, in accordance with governing law the goods, wares and/or merchandise, or so much thereof as may be necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the monies owed to the Company. Any surplus from such sale shall be transmitted to the Customer, and the Customer shall be liable for any deficiency in the sale.

16. Compensation of Company. The compensation of the Company for its services shall be included with and is in addition to the rates and charges of all carriers and other agencies selected by the Company to transport and deal with the goods and such compensation shall be exclusive of any brokerage, commissions, dividends or other revenue received by the Company from carriers, insurers and others in connection with the shipment. Except as otherwise agreed in writing between the Company and Customer, the fuel surcharge on air transportation services will be charged by Company in accordance with the Company's Surcharge Index. In any referral for collection or action against the Customer for monies due to the Company, including but not limited to any action for the enforcement of any provision of the Master Customs Power of Attorney between the Customer and the Company, upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney's fees, costs and expenses.

17. No Responsibility for Governmental Requirements. It is the responsibility of the Customer to know and comply with the requirements, laws and regulations of any Federal, State and/or local agencies pertaining in any way to the merchandise, including, but not limited to, regulations, laws, and requirements pertaining to marking, classification, licensing, transporting hazardous materials, export controls, and any other transporting, importing, or exporting requirements. The Company shall not be responsible for action taken or fines or penalties assessed by any governmental agency against the shipment because of the failure of the Customer to comply with the law or the requirements or regulations of any governmental agency or with a notification issued to the Customer by any such agency.

18. Indemnity against Liability Arising from the Importation of Merchandise. The Customer agrees to indemnify and hold the Company harmless from any claims and/or liability arising from the importation of merchandise and/or any conduct of the Customer which violates any Federal, state and/or other laws or regulations and further agrees to indemnify and hold the Company harmless against any and all liability, loss, damages, costs, claims and/or expenses, including but not limited to reasonable attorney's fees, costs and expenses which the Company may hereafter incur, suffer or be required to pay by reason of such claims and/or liability. In the event that any such action, suit or proceeding is brought against the Company, the Company shall give notice in writing to the Customer by mail at its address on file with the Company. Upon receipt of such notice, the Customer at its own expense, and, at the Company's discretion, in cooperation with the Company's designated counsel, shall defend against such action and take all steps as may be necessary or proper to prevent the obtaining of a judgment and/or order against the  Company.

19. No Duty To Maintain Records For Customer. Customer acknowledges that pursuant to Sections 508 and 509 of the Tariff Act, as amended, (19 U.S.C. sections 1508 and 1509) it has the duty and is solely liable for maintaining all records required under the Customs and/or other Laws and Regulations of the United States; unless otherwise agreed to in writing, the Company shall only keep such records that it is required to maintain by Statute and/or Regulations, but not as a "recordkeeper" or "record-keeping agent" for Customer.

20. Obtaining Binding Rulings, Filing Protests, etc. Unless requested by Customer in writing and agreed to by Company in writing, Company shall be under no
obligation to undertake any pre- or post-Customs release action, including, but not limited to, obtaining binding rulings, advising of liquidations, filing of petitions and/or protests, etc.
21. Preparation and Issuance of Bills of Lading. Where Company prepares and/or issues a bill of lading, Company shall be under no obligation to specify thereupon the number of pieces, packages and/or cartons, etc.; unless specifically requested to do so in writing by Customer or its agent and Customer agrees to pay for same, Company shall be entitled to rely upon and use the cargo weight supplied by Customer. 22. Shipment Screening. All shipments may, at
Company's option or as required by government regulation, be screened and/or opened and inspected without liability to Company. The Customer consents to such screening and understands that this document containing its consent shall be maintained by Company and may be made available to the government regulators upon request.
23. Carmack Amendment Waiver. If the Carmack Amendment ("Carmack") to the Interstate Commerce Act is compulsorily applicable to any stage of the transportation, then the Customer expressly agrees to a waiver of the Carmack provisions to the extent legally permissible. In the event Carmack applies, the Customer must file a written notice of claim for loss, damage or delay no later than nine months after the cargo is delivered and the Customer
must file a lawsuit no later than two years from the date the Company denies the claim.
24. No Modification or Amendment Unless Written. These terms and conditions of service may only be modified, altered or amended in writing signed by both Customer and Company; any attempt to unilaterally modify, alter or amend same shall be null and void.
25. Severability. In the event that any Paragraph and/or portion hereof is found to be invalid and/or unenforceable, then in such event the remainder hereof shall remain in full force and effect. 26. Construction of Terms and Venue. These terms and conditions of service shall be construed according to the laws of the Commonwealth of NEW YORK , without giving consideration to principles of conflict of law. The Company and the Customer (a) agree that any legal proceeding relating to the services performed by the Company shall be brought only in a court of competent jurisdiction in the Commonwealth of NEW YORK , and (b) irrevocably consent to the jurisdiction of any such court in the Commonwealth of NEW YORK .