UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

SPACE EXPLORATION TECHNOLOGIES CORP.        :

                                                                              :        1:12-cv 07510 (PAE)(KNF)

              Plaintiff and Counter-defendant,          :

                                                                              :        **D.T. GRUELLE'S**
              -v-                                                        :        **MEMORANDUM IN**
                                                                              :        **SUPPORT OF MOTION**
D.T. GRUELLE COMPANY GROUP, L.L.C.,              :        **TO DISMISS FIRST**
                                                                              :        **AMENDED COMPLAINT**
              Defendant and Counterclaimant.          :
                                                                              :
-----------------------------------------------------------------------X

Daniel P. Jaffe
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone:  (212) 485-9805
Facsimile:   (314) 480-1505
Dan.Jaffe@huschblackwell.com

Carlos Rodriguez (*pro hac vice* forthcoming)
HUSCH BLACKWELL LLP
750 17th Street N.W.
Suite 900
Washington, D.C. 20006
Telephone: (202) 378-2300
Fax: (202) 378-2319
Carlos.Rodriguez@huschblackwell.com

*Attorneys for Defendant D.T. Gruelle Company Group, L.L.C.*

May 2, 2013

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT AND FACTUAL BACKGROUND ........................................ 1

ARGUMENT ........................................................................................................................ 6

I.     Standard for Deciding Rule 12(b)(6) Motion to Dismiss; Pleading Fraud, Rule
       9(b). ........................................................................................................................6

II.    SpaceX's FAC Must be Dismissed With Prejudice Because It Does Not and in
       Fact Cannot Meet the Plausibility Standard – Its Allegations Contradict the
       Contracts Integral to Its Claims. ........................................................................9

III.   SpaceX's Claims Must be Dismissed Under the Federal Arbitration Act
       ("FAA"), 9 U.S.C. § 1, *et seq.*, Because They are Based on the SpaceX
       Purchase Order Which has a Mandatory Arbitration Provision. ...................11

IV.    SpaceX Has Not, and Cannot, Plausibly Allege That DTG Agreed to a Fixed
       Price to Transport the Tanks.  Therefore, All of Its Claims Must Fail. .........12

V.     DTG Repeatedly Informed SpaceX from July 18, 2012 to August 15, 2012, that
       the Costs for Transporting the Tanks Had Significantly Increased Over its Non-
       Binding Quote of February 2012 Before It Took Possession of the Tanks, but
       SpaceX Told DTG to Proceed Anyway with the Tank Transport. ................13

VI.    DTG's Refusal to Release the Tanks to SpaceX Until SpaceX Paid the Shipping
       Costs it Owed to DTG  was Fully Within DTG's Rights Under the DTG
       Contract; Such Withholding of the Tanks Was Especially Necessary Because
       SpaceX Threatened Not to Pay DTG the Amount It Was Owed...................14

VII.   Count II (Civil Extortion (California Penal Code § 523)) and Count III
       (Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code
       § 17200 *et seq.*)) Must be Dismissed Because they Violate the Choice of New
       York Law Provision in the DTG Contract...................................................16

VIII.  Count IV (Breach of Fiduciary Duty) Should be Dismissed Because the
       Relationship Between DTG and SpaceX Was As an Independent Contractor,
       Not a Fiduciary. ...............................................................................................17

IX.    Count V (Unjust Enrichment) Must be Dismissed Because a Valid Contract
       Exists Regarding the Same Subject Matter...................................................17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

Page

## Cases

*A. Montilli Plumbing & Heating Corp. v. Valentino*,
   935 N.Y.S.2d 647 (App. Div. 2d Dep't 2011) .......................................................................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................6, 9, 10, 16

*Barnum v. Millbrook Care Ltd. Partnership*,
   850 F.Supp. 1227 (S.D.N.Y. 1994) .........................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................6, 9, 10

*Chambers v. Time Warner, Inc.*
   282 F.3d 147 (2d Cir. 2002) ..............................................................................................7, 8

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
   516 N.E.2d 190 (N.Y. 1987) ..................................................................................................17

*Cornhusker Farms, Inc. v. Hunts Point Coop. Market, Inc.*,
   769 N.Y.S.2d 228 (App. Div. 1st Dep't 2003) ....................................................................17

*Cosmas v. Hassett*,
   886 F.2d 8 (2d Cir. 1989) ..............................................................................................9, 16

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
   822 F.2d 1242 (2d Cir. 1987) .................................................................................................9

*Fisk v. Letterman*,
   401 F.Supp.2d 362 (S.D.N.Y. 2005) .....................................................................................8

*Frankel v. Citicorp Insurance Services, Inc.*,
   80 A.D.3d 280, 913 N.Y.S.2d 254 (2d Dep't. 2010) .............................................................16

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995) .......................................................................................................7

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F.Supp.2d 549 (S.D.N.Y. 2004) ..........................................................................7, 11, 13

ii

*Koch v. Christie's International PLC,*
   785 F.Supp.2d 105 (S.D.N.Y. 2011)........................................................................8

*Kramer v. Time Warner Inc.,*
   937 F.2d 767 (2d Cir. 1991)..................................................................................8

*Logistics Mgmt., Inc. v. One (1) Pyramid Tent Arena,*
   86 F.3d 908 (9th Cir. 1996) ................................................................................15

*Marmet Health Care Center, Inc. v. Brown, et al.,*
   132 S.Ct. 1201 (2012)..........................................................................................11

*Matusovsky v. Merrill Lynch,*
   186 F.Supp.2d 397 (S.D.N.Y. 2002)......................................................................7

*Metro. Switch Bd. Mfg. Co., Inc. v. B & G Elec. Contractors, Div. of B & G Indus., Inc.,*
   946 N.Y.S.2d 178 (App. Div. 2d Dep't 2012).......................................................17

*Mills v. Polar Molecular Corp.,*
   12 F.3d 1170 (2d Cir. 1993)..................................................................................9

*Munno v. The Town of Orangetown,*
   391 F.Supp.2d 263 (S.D.N.Y. 2005)......................................................................8

*Rapoport v. Asia Elecs. Holding Co.,*
   88 F.Supp.2d 179 (S.D.N.Y. 2000) ...........................................................7, 11, 13

*Roth v. Jennings,*
   489 F.3d 499 (2d Cir. 2007)..................................................................................7

*Universal/MMEC, Ltd. v. Dormitory Auth. of New York,*
   856 N.Y.S.2d 560 (App. Div. 1st Dep't 2008) ....................................................17

*U.S. Bank Nat. Ass'n. v. Bank of America, N.A.,*
   No. 12 Civ. 4873, 2012 WL 6136017 (S.D.N.Y. Dec. 11, 2012)..........................8

## **Statutes**

Federal Arbitration Act
   9 U.S.C. §§ 1-14 ...............................................................................................11

Federal Rules of Civil Procedure ................................................................... *passim*

Shipping Act
   46 U.S.C. §§40101, *et seq*..................................................................................15

D. T. Gruelle Company Group, L.L.C. (hereinafter "DTG", "Defendant" or "Counterclaimant") respectfully submits this memorandum of law in support of its Rule 12(b)(6) Fed. R. Civ. P. ("Rule 12(b)(6)") motion to dismiss Space Exploration Technologies Corp.'s ("SpaceX's") First Amended Complaint ("FAC") (Document #28; Document #32-1).

## PRELIMINARY STATEMENT AND FACTUAL BACKGROUND

SpaceX's FAC alleges that it entered into a contract with DTG to transport two liquid oxygen storage tanks ("the Tanks") for a fixed contract price, and that knowing SpaceX faced a key milestone with a third party, DTG threatened to withhold delivery of the Tanks unless SpaceX paid DTG "hundreds of thousands of dollars more than the contract price."  SpaceX FAC, Second Un-numbered Paragraph, Page 1.  SpaceX further alleges that it had "no choice but to pay the unjustified amount DTG demanded. . . [and] now sues for return of its money." SpaceX FAC, Third Un-numbered Paragraph, Page 1.

SpaceX admits that it that it entered into a contract with DTG on November 22, 2011 pertinent to the transport of the Tanks entitled "**CUSTOMS POWER OF ATTORNEY/DESIGNATION OF EXPORT FORWARDING AGENT And Acknowledgement of Terms and Conditions**" ("the DTG Contract"), a copy of which is attached as Exhibit A, and which is incorporated by reference into this motion to dismiss in its entirety.  SpaceX FAC, ¶¶ 5, 6; Amended Counterclaim, ¶¶ 9, 17 (Document #17); Answer to Amended Counterclaim, ¶¶ 9, 17 (Document #20); DTG Answer with Affirmative Defenses, ¶ 1a.

SpaceX alleges that in February 2012, it placed an order with DTG for the transportation of the Tanks from South Africa to Vandenberg AFB in California.  SpaceX FAC, ¶ 11.  SpaceX contends that "DTG agreed to undertake transportation of the tanks at a quoted price []and SpaceX and DTG agreed on the price and the payment arrangements."  SpaceX FAC, ¶ 12. SpaceX further alleges that it then issued a Purchase Order which restated the quoted price for

the complete transportation of the Tanks.  <u>SpaceX FAC</u>, ¶ 13.  A copy of SpaceX Purchase Order

Number 145090 dated February 24, 2012 issued to DTG with its Terms and Conditions is

attached hereto as Exhibit B, and is incorporated herein by reference.  <u>Amended Counterclaim</u>, ¶

14g (Document #17); <u>Answer to Amended Counterclaim</u>, ¶ 14g (Document #20) ("SpaceX

Purchase Order").

By signing the DTG Contract, SpaceX acknowledges that the Terms and Conditions of

service in the DTG Contract govern "all transactions" between SpaceX and DTG.  <u>DTG</u>

<u>Contract</u>, Exhibit A, page 2.  DTG's communication of cost estimates to SpaceX were non-

binding quotations pursuant to ¶5 of the DTG Contract Terms and Conditions which provides:

> **Quotations Not Binding.**  Quotations as to fees , rates of duty, freight charges,
> insurance premiums or other charges given by the Company [DTG] to the
> Customer [SpaceX] are for informational purposes only and are subject to change
> without notice; no quotations shall be binding upon the Company [DTG] unless
> the Company [DTG] in writing agrees to undertake the handling or transportation
> of the shipment at a specific rate or amount set forth in the quotation and payment
> arrangements are agreed to between the Company [DTG] and the Customer
> [SpaceX].

<u>DTG Contract</u>, Exhibit A, ¶ 5, page 4.  Paragraph 14 of the DTG Contract provides for DTG to

have a General Lien and right to sell Customer's [SpaceX's] property for monies owed:

> **General Lien and Right to Sell Customer's Property.**
> a.      Company [DTG] shall have a general and continuing lien on any and all
> property of Customer [SpaceX] coming into Company's [DTG's] actual or
> constructive possession or control for monies owed to Company [DTG] with
> regard to the shipment on which the lien is claimed, a prior shipment(s) and/or
> both;
> b.      Company [DTG] shall provide written notice to Customer of its intent to
> exercise such lien, the exact amount of monies due and owing , as well as any
> ongoing storage or other charges; Customer [SpaceX] shall notify all parties
> having an interest in its shipments(s) of Company's [DTG's] rights  and/or the
> exercise of such lien.
>                 *        *        *        *        *

<u>DTG Contract</u>, Exhibit A, ¶ 14, page 6.

The DTG Contract also provides that its "terms and conditions of service **may only be modified, altered or amended in writing signed by both Customer [SpaceX] and Company [DTG]**.; any attempt to unilaterally modify, alter or amend same shall be null and void." (emphasis added).  DTG Contract, Exhibit A, ¶ 18, Page 6.  There is no such writing signed by DTG and SpaceX which modifies or amends the DTG Contract.

Finally, the DTG Contract provides the following choice of law, venue and jurisdiction provisions:

> **21.  Governing Law; Consent to Jurisdiction and avenue (sic)**.  These terms and conditions of service and the relationship of the parties shall be construed according to the laws of the State of NEW YORK without giving consideration to principals (sic) of conflict of law.  Customer [SpaceX] and Company [DTG]
> a.  Irrevocably consent to the jurisdiction of the United States District court and the State courts of NEW YORK;
> b.  Agree that any action relating to the services performed by Company, shall only be brought in said courts;
> c.  Consent to the exercise of in personam jurisdiction by said courts over it.

DTG Contract, Exhibit A, ¶ 21, page 6.  The SpaceX FAC acknowledges that jurisdiction and venue in this Court, are governed by ¶ 21 of the DTG Contract.  SpaceX FAC, ¶¶ 4, 5, and 6.

The SpaceX Purchase Order provides in relevant part that 1) the "Shipping Method" for the two Tanks is "Bestway"; 2) the "Due Date" and "Promise Date" is "4/30/2012; 3) the amount for shipping the two Tanks is $364,000; 4) the Tanks are to be shipped to the SpaceX facility at Vandenberg AFB in California; and 5) Commencing with this order signifies acceptance of SpaceX Terms and Conditions [] which may be viewed at http://www.spacex.com/legal.  SpaceX Purchase Order, Exhibit B, page 1.

SpaceX's filing of this action in violation of the SpaceX Purchase Order mandatory arbitration provision, its explicit reliance on certain Terms & Conditions of the DTG Contract, its assertions that there was an agreed price between SpaceX and DTG, and its position on the

application of New York law regarding some issues are inconsistent with, if not an outright

repudiation of, SpaceX's Purchase Order Terms and Conditions.  In relevant part SpaceX's

Purchase Order Terms and Conditions provide as follows:

**1.  ACCEPTANCE OF CONTRACT/TERMS AND CONDITIONS**
(a)This Contract integrates, merges, and supersedes all prior offers, negotiations, and
agreements concerning the subject matter hereof and constitutes the entire agreement
between the parties.
(b) SELLER's [DTG's] acknowledgment, acceptance of payment or commencement of
performance , shall constitute SELLER's [DTG's] unqualified acceptance of this
Contract.
(c) Unless expressly accepted in writing by a SPACEX Authorized Representative,
additional or differing terms or conditions proposed by SELLER [DTG] or provided by
SELLER [DTG] are rejected by SPACEX and have no effect.

**2.  APPLICABLE LAWS**
(a)  (1) This contract shall be governed by and construed in accordance with the laws of
        California, without regard to its conflicts of laws provisions. . . .
                    *          *          *          *          *
**4.  CHANGES**
(a) A SPACEX Authorized Representative may at any time, by written notice, and
without notice to sureties or assignees, make changes within the general scope of this
Contract in any one or more of the following: (i) drawings, designs, or specifications; (ii)
method of shipping or packing; (iii)place of inspection, acceptance, or point of delivery;
and (iv) delivery schedule.
(b) If any such change causes an increase or decrease in the cost of, or in the time
required for, performance of any part of this Contract, SPACEX **shall make** an equitable
adjustment in the Contract price and/or delivery schedule and modify this Contract
accordingly.  Changes to the delivery schedule will be subject to a price adjustment only.
(emphasis added)
(c) SELLER [DTG] must assert its right to an equitable adjustment under this clause
within fifteen (15) days from the date of receipt of the written change order from
SPACEX.
(d) Failure to agree to any adjustment shall be resolved in accordance with the "disputes"
clause of this Contract.  However, nothing contained in this "changes" clause shall
excuse SELLER [DTG] from proceeding without delay in the performance of this
Contract as changed.
                    *          *          *          *          *
**9.  DISPUTES**
(A) All disputes and controversies arising out of this Contract including the existence,
construction, validity, interpretation , performance, nonperformance, enforcement or
breach of any provision , **shall be settled by mediation and, if necessary, arbitration**
in accordance with the commercial Arbitration Rules of the American Arbitration
Association ("AAA").  The parties agree to submit any dispute or controversy to non-

binding mediation in the Los Angeles metropolitan area, before one (1) mediator selected by AAA with costs to be borne equally by the parties.  In the event the mediator is unable to facilitate a mutually agreeable settlement within ninety (90) days after petition for mediation , the parties shall petition the AAA to select three (3) impartial arbitrators . . . Any arbitration hearings shall take place in the Los Angeles metropolitan area. **The findings of the arbitrators shall be final and binding upon the parties**.. . . . (emphasis added).

*       *       *       *       *

SpaceX Purchase order Terms and Conditions, Exhibit B.

SpaceX admits DTG's responses and averments contained in DTG's ANSWER WITH AFFIRMATIVE DEFENSES (Document Number 7).  Specifically, in ¶ 17 of the Amended Counterclaim (Document #17), pursuant to Rule 10(c) of the Fed. R. Civ. P.[1] "DTG repeats, states, re-alleges and incorporates by reference in their entirety, as if fully set forth below, its responses and averments contained in DTG's ANSWER WITH AFFIRMATIVE DEFENSES (Document Number 7)."  In its response to ¶ 17 of the Amended Counterclaim, SpaceX asserts "[t]he allegations in Paragraph 17 state conclusions of law as to which no response is required." SpaceX's Answer to Defendant's Amended Counterclaim, ¶ 17 (Document #20).  SpaceX's non-response to ¶ 17 of the Amended Counterclaim, and in particular its failure to deny (either outright or conditionally) the responses and averments incorporated into ¶ 17, results in SpaceX admitting all such responses and averments.  Contrary to SpaceX's assertion that ¶ 17 states "conclusions of law" in its response to ¶ 17 of the Amended Counterclaim, "DTG's ANSWER WITH AFFIRMATIVE DEFENSES (Document Number 7)" contains many specific factual allegations, including quotations from key email communications between SpaceX and DTG. Rule 8(b)(6) Fed. R. Civ. P. states in relevant part "[a]n allegation [] is admitted if a responsive pleading is required and the allegation is not denied."  As indicated in the case law cited below courts consider admissions in pleadings when reviewing Rule 12(b)(6) motions to dismiss.  In

---

[1] Rule 10(c) states in relevant part "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."

the below Argument portion of this memorandum citations are made to certain of the fact allegations which SpaceX has admitted by its non-response to ¶ 17 of the Amended Counterclaim.

SpaceX claims DTG:  1) breached its contract by demanding a higher price for transporting the Tanks than was agreed (Count I); 2) committed Civil Extortion under California law (Count II) by withholding delivery of the Tanks until SpaceX paid the higher amount; 3) committed Acts of Unfair Competition under California law including "fraudulent" business acts(Count III); 4) breached its fiduciary duty to SpaceX arising from the freight forwarder-shipper relationship (Count IV); and 5) unjustly enriched itself at SpaceX's expense (Count V). For reasons stated herein, all of SpaceX's claims must be dismissed with prejudice.

## ARGUMENT

### I.      Standard for Deciding Rule 12(b)(6) Motion to Dismiss; Pleading Fraud, Rule 9(b).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.' ".  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678 ("not bound to accept as true a legal conclusion couched as a factual allegation").  "Where a complaint pleads facts that are 'merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief.' "  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' "  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In addition to the factual allegations in the complaint, the court may also consider " 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference,' " as well as any document not attached or incorporated by reference if "the complaint 'relies heavily upon its terms and effect,' [rendering] the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)(internal citations omitted) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). *See also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

The court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F.Supp.2d 549, 555 (S.D.N.Y. 2004); *see also Rapoport v. Asia Elecs. Holding Co.*, 88 F.Supp.2d 179, 184 (S.D.N.Y. 2000) ("If these documents contradict the allegations of the amended complaint, the documents control."); *Matusovsky v. Merrill Lynch*, 186 F.Supp.2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by [a document attached to the complaint as an exhibit], those allegations are insufficient to defeat a [Rule 12(b)(6)] motion to dismiss.").

When a party chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may take that document into consideration without converting the motion to dismiss into one for summary judgment. *Int'l Audiotext Network, Inc.,* 62 F.3d at 72. Where plaintiff alleged a breach of contract , the court held that a copy of the contract which was attached to the defendant's motion to dismiss under Rule 12(b)(6) could be considered without converting the motion to one for summary judgment because the claim was based on the contract. *Barnum v. Millbrook Care Ltd. Partnership*, 850 F.Supp. 1227, 1232-1233 (S.D.N.Y. 1994), *affd without op* 43 F.3d 1458 (2d Cir. 1994). In this situation, the court stated that it was proper to consider the contract which

was supplied by the defendant even though it was not attached to the complaint or incorporated into the complaint by reference under Rule 10(c) Fed. R. Civ. P.

Matters of which judicial notice may be taken can also be considered.  *Chambers*, 282 F.3d at 153.  "Additionally, courts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint."  *Koch v. Christie's International PLC*, 785 F.Supp.2d 105, 112 (S.D.N.Y. 2011).  "The court may take judicial notice of public records and of 'admissions in pleadings []filed by a party that contradict the party's factual assertions []'"  *Munno v. The Town of Orangetown*, 391 F.Supp.2d 263, 268 (S.D.N.Y. 2005).  Permitting courts to consider such documents on a Rule 12(b)(6) motion is both practical and consistent with Fed.R.Evid. 201(b)(1) and (2) which permits judicial notice of facts known within the trial court's territorial jurisdiction and which facts can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *Kramer v. Time Warner Inc.*, 937 F.2d 767,774 (2d Cir. 1991) (foreclosing resort to such documents, might lead to complaints filed solely to extract nuisance settlements where they omitted or quoted only selected and misleading portions of such documents and could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure).

Furthermore, the court is not obliged to reconcile plaintiffs own pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference by [the] plaintiff in drafting the complaint."  *Fisk v. Letterman*, 401 F.Supp.2d 362, 368 (S.D.N.Y. 2005). *See also U.S. Bank Nat. Ass'n. v. Bank of America, N.A.*, No. 12 Civ. 4873, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) ("Where a plaintiff's own pleadings are internally inconsistent , a

court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.").

Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity."  A complaint alleging fraud must specify the false or misleading statement, explain how plaintiff contends the statement was fraudulent, state when and where the statement was made, and identify the speaker.  *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989).  It must link the allegedly fraudulent statement to an individual speaker, attribution to a corporate entity or its representative is insufficient.  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).  Fraud allegations must specify "the time, place, speaker and content of the alleged misrepresentations."  *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

II.     **SpaceX's FAC Must be Dismissed With Prejudice Because It Does Not and in Fact Cannot Meet the Plausibility Standard – Its Allegations Contradict the Contracts Integral to Its Claims.**

SpaceX fails to plead enough facts to state a claim to relief that is plausible on its face, i.e., there is insufficient factual content that allows the Court to draw the reasonable inference that DTG is liable for the misconduct alleged.  Rather SpaceX's FAC pleads facts that are merely consistent with DTG's purported liability which falls short of the plausibility of entitlement to relief requirement.  *Iqbal*, 556 U.S. at 677-680; *Twombly*, 550 U.S. at 555-56, 570.  Examples of this inadequate pleading are Plaintiffs conclusory allegations of fact where it alleges:  (1) "DTG agreed to undertake transportation of the tanks at a quoted price, and SpaceX and DTG agreed on the price and the payment arrangements" without specifying the contrary DTG Contract, ¶ 5 language and email communications that would establish that DTG gave only a non-binding quotation (SpaceX FAC,¶ 12) [Note:  DTG's quote was based on SpaceX's communications having material omissions, for an "abnormal load" as opposed to the actual transport for a

delayed "super abnormal load" requiring much more expensive specialty handling and equipment, and causing added delay in sailing due to late permits]; and (2) "DTG demanded that SpaceX agree to an unjustified price increase, and threatened to prevent SpaceX from taking possession of the tanks until SpaceX paid the unjustified price increase" (SpaceX FAC, ¶ 15), without specifying the DTG Contract language and particular facts which establish that there was no price increase since the parties had no agreement on price, DTG's charges for transporting a "super abnormal load" were for the value of services performed and, therefore, justified since special equipment, trailers and permits were required over and above what would have been required, if the Tanks had actually been as SpaceX originally portrayed them to DTG prior to July 18, 2012.  Moreover, SpaceX, again failed to reference the DTG Contract, ¶ 14 language which authorized it to withhold delivering the Tanks to SpaceX until the monies SpaceX owed it were paid.

Plaintiff relies essentially on labels, conclusions, and a formulaic recitation of the elements of its asserted causes of action, and therefore fails to meet its obligation to provide the grounds of its entitlement to relief.  *Twombly*, 550 U.S. at 555.  A pleading which is no more than conclusions is not entitled to the assumption of truth when considering a motion to dismiss under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 681.  Examples of Plaintiff's conclusory allegations are presented above.  Examples of SpaceX's use of labels conclusions and a formulaic recitation of the elements of causes of actions are its allegations in Counts I through V of the Complaint (SpaceX FAC, ¶¶ 23-53).

SpaceX's FAC fails to meet the requirements of Rule 8(a)(2) Fed. R. Civ. P. since it contains no more than an "unadorned, the-defendant –unlawfully-harmed-me accusation".  *Iqbal*, 556 U.S. at 677-678.  Examples, of this short-coming are given above.

SpaceX cannot meet the plausibility standard not only because its allegations are conclusory, but also because its allegations contradict the contract provisions that are integral to its claims, and where such contradictions arise, the contracts control. *Rapoport*, 88 F.Supp.2d at 184; *In re Bristol-Myers*, 312 F.Supp.2d at 555.

**III.    SpaceX's Claims Must be Dismissed Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, Because They are Based on the SpaceX Purchase Order Which has a Mandatory Arbitration Provision.**

SpaceX bases its claims on the SpaceX Purchase Order.  <u>SpaceX FAC</u>, ¶¶ 13 and 14. Paragraph 9(A) of the SpaceX Purchase Order  provides that "[a]ll disputes and controversies arising out of this Contract including the existence , construction, validity, interpretation, performance, nonperformance, enforcement  or breach of any provision, **shall be settled by mediation and, if necessary, arbitration** []. SpaceX Purchase Order, ¶ 9(A), <u>Exhibit B</u>, Page 3 (emphasis added).

"State and federal courts must enforce the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.* with respect to all arbitration agreements covered by that statute." *Marmet Health Care Center, Inc. v. Brown, et. al.*, 132 S.Ct. 1201, 1202 (2012).  The FAA provides that a:

> Written provision in … a contract evidencing  a transaction involving commerce to settle by arbitration a controversy  thereafter arising out of  such contract or transaction  … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. § 2.

*Id.*, 132 S.Ct. at 1203.

Given the broad scope of the FAA, SpaceX's claims must be dismissed as a matter of law since it bases its claims against DTG on a purported contract which has a mandatory arbitration provision.

**IV.     SpaceX Has Not, and Cannot, Plausibly Allege That DTG Agreed to a Fixed Price to Transport the Tanks.  Therefore, All of Its Claims Must Fail.**

The predicate allegation to all of SpaceX's claims is that "DTG agreed to undertake transportation of the tanks at a quoted price [] and SpaceX and DTG agreed on the price and the payment arrangements."  SpaceX FAC, ¶ 12.  As discussed above, this conclusory allegation contradicts the plain language of ¶5 of the DTG Contract which provides that all quotes are not binding and are subject to change without notice.  DTG Contract, Exhibit A, ¶ 5, page 4.  The DTG Contract expressly provides that it pertains to all transactions between SpaceX and DTG.  DTG Contract, Exhibit A, page 2.

SpaceX's allegations that its issuance of the SpaceX Purchase Order supersedes or amends the DTG Contract, and that the SpaceX Purchase Order Terms and Conditions control are not valid.  First, the DTG Contract provides that it cannot be modified or amended, except in a writing that is signed by both DTG and SpaceX, and there is no such writing.  DTG Contract, Exhibit A, ¶ 18, page 6.  Second, all claims based on the SpaceX Purchase Order must be dismissed under the FAA, since such claims violate its mandatory arbitration provision.  SpaceX Purchase Order, ¶ 9(A), Exhibit B, Page 3.

Even assuming the SpaceX Purchase Order Terms and Conditions applied, a matter DTG does not concede, the applicable provision, ¶ 4, **requires** that SpaceX "make an equitable adjustment in the contract price" where SpaceX, as it did here, modified the method of shipping and delivery schedule.  SpaceX Purchase Order, ¶ 4(a) and (b).  Specifically, as admitted by SpaceX, the delivery schedule was modified from a "4/30/2012" promise date to a date in early August 2012 when the Tanks first became available for delivery, and the method of shipment was modified because of the requirement that the Tanks could only be shipped on their own saddles (or supports) as opposed to being able to use the saddles on the truck's trailer.  Amended

<u>Counterclaim</u>, ¶ 17 (Document #17) <u>Answer to Amended Counterclaim</u>, ¶ 17 (Document #20);

<u>Answer</u>, ¶ 12, <u>Affirmative Defense</u>, ¶ 6a-e. (Document #7).

     In sum, SpaceX's allegations that DTG agreed to a fixed price to ship the Tanks are

contrary to the provisions of the contracts integral to SpaceX's FAC, and therefore need not be

assumed true for purposes of a Rule 12(b)(6) motion since the contrary language of the DTG

Contract and SpaceX Purchase order control. *Rapoport*, 88 F.Supp.2d at 184; *In re Bristol-*

*Myers*, 312 F.Supp.2d at 555.

**V.**     **DTG Repeatedly Informed SpaceX from July 18, 2012 to August 15, 2012,**
        **that the Costs for Transporting the Tanks Had Significantly Increased Over**
        **its Non-Binding Quote of February 2012 Before It Took Possession of the**
        **Tanks, but SpaceX Told DTG to Proceed Anyway with the Tank Transport.**

     The facts are contrary to SpaceX's conclusory allegation, devoid of factual content, that

"[a]fter the tanks were in DTG's possession, DTG demanded that SpaceX agree to an unjustified

price increase of a specified amount, and threatened to prevent SpaceX from taking possession of

the tanks until SpaceX paid the unjustified price increase." <u>SpaceX FAC</u>, ¶ 15. Specifically,

DTG repeatedly informed SpaceX that the costs of transporting the Tanks would be significantly

greater than its February 2012 non-binding quote. As admitted by SpaceX, the following facts

specify DTG's first notification to SpaceX on July 18, 2012 of increased costs over its non-

binding quote:

        a.     Nearly five months after DTG gave SpaceX a non-binding quote, SpaceX
for the first time informs DTG that "…the manufacturer of the tanks has confirmed that
the tanks are not able to be supported in any way other than on their saddles….[t]he outer
tank is a very thin-walled tank….[t]he load of the inner vessel is transmitted to the
saddles by strategically placed supports. Placing the tank on its side, makes these
supports ineffective." [email re GasCon South Africa –Vandenberg Schedule + Timeline
from Vincent Werner of SpaceX to Alessandra Gruelle of DTG, Richard Henwood, Pablo
Ucar, *et al* dated July 18, 2012]

        b.     DTG immediately responded to SpaceX that these details about the Tanks
and the need to use only their saddles make a "substantial difference, since the hope was
to lower the problematic overheight!" [email re GasCon South Africa –Vandenberg

Schedule + Timeline from Alessandra Gruelle to Vincent Werner, Richard Henwood,
Pablo Ucar, *et al* dated July 18, 2012]

Answer, Affirmative Defense 6, Sub-paragraphs a and b, Page 16 (Document #7); Amended

Counterclaim, ¶ 17 (Document #17); Answer to Amended Counterclaim, ¶ 17. (Document #20).

DTG's July 18, 2012 notification to SpaceX of increased costs over its February 2012

non-binding quote preceded DTG's taking possession of the Tanks by 28 days.  Answer to

Amended Counterclaim, ¶ 14r (Document #20) ("SpaceX admits that on August 15, 2012 DTG's

South African agent GAC Laser, and ALE commenced the transport of the Tanks []").

**VI.    DTG's Refusal to Release the Tanks to SpaceX Until SpaceX Paid the
        Shipping Costs it Owed to DTG  was Fully Within DTG's Rights Under the
        DTG Contract; Such Withholding of the Tanks Was Especially Necessary
        Because SpaceX Threatened Not to Pay DTG the Amount It Was Owed.**

SpaceX bases its claims of Breach of Contract (Count I), Civil Extortion (Count II),

Unfair Competition (Count III), Breach of Fiduciary duty (Count IV) and Unjust Enrichment

(Count V) largely on its allegation that DTG ". . . threatened to prevent SpaceX from taking

possession  of the tanks until SpaceX paid the unjustified price increase,"  SpaceX FAC, ¶ 15.

Contrary to this conclusory self-serving allegation, the DTG Contract provisions and the facts to

which SpaceX has admitted, establishes that DTG acted within its rights under the DTG

Contract, and properly under the facts and circumstances:

4.  DTG's written demand to SpaceX for payment of all amounts due and owing to it on
    the shipment of the Tanks and for other prior shipments ($468,988.96) before it would
    release the Tanks is consistent with, and authorized by:

    a.    ¶10 of the Contract terms and conditions which requires that "[a]ll charges
          must be paid by Customer [SpaceX] in advance…"; and

    b.    ¶14a and b of the Contract terms and conditions which provides
          "Company [DTG] shall have a general and continuing lien on any and all property
          of the Customer [SpaceX] coming into Company's [DTG's] actual or constructive
          possession or control for monies owed to Company [DTG] with regard to the
          shipment on which the lien is claimed, a prior shipment(s) and/or both; Company

> [DTG] shall provide written notice to customer of its intent to exercise such lien, the exact amount of monies due and owing…"

> DTG's demand for payment and assertion of its general lien rights was justified, necessary and appropriate since SpaceX through Pablo Ucar in an email to Tim Gruelle dated August 28, 2012 stated that it couldn't accept the greater cost over the [February 22, 2012] quote, and otherwise gave every indication that SpaceX would not pay the actual costs for transporting the Tanks, even though it was a "super abnormal load."

Answer, Affirmative Defense 4, Sub-paragraphs a and b, Page 14 (Document #7); Amended

Counter Claim, ¶ 17 (Document #17); Answer to Amended Counterclaim, ¶ 17. (Document #20).

The DTG Contract clearly provides that DTG had a general and continuing lien on

SpaceX's property either in its actual or constructive possession, including documents relating

thereto. DTG Contract, ¶ 14. DTG's withholding of the original bill of lading for the Tanks was

within its lien rights. This is especially true when SpaceX explicitly told DTG on

August 28, 2012, after the Tanks were in transit, that it would not pay the increased costs.

DTG's withholding of the bill of lading was to protect its lien, not to coerce SpaceX because of

its asserted deadline.

DTG is a Non-Vessel Operating Common Carrier (hereinafter "NVOCC") under the

Shipping Act (46 U.S.C. §§ 40101, *et seq.*). As such, DTG had a clear contractual right to assert

its lien against the Tanks and demand payment of the amounts owed by SpaceX before releasing

its lien and possessory right to the Tanks. *See Logistics Mgmt., Inc., v. One (1) Pyramid Tent*

*Arena*, 86 F.3d 908, 914-15 (9th Cir. 1996) (citations omitted) (recognizing that an NVOCC's

contractual right to assert a lien on cargo is enforceable).

**VII.    Count II (Civil Extortion (California Penal Code § 523)) and Count III (Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.)) Must be Dismissed Because they Violate the Choice of New York Law Provision in the DTG Contract.**

The DTG Contract provides that the terms and conditions of service of the DTG Contract and the relationship of the parties "shall be construed according to the laws of the State of NEW YORK without giving consideration to principals (sic) of conflict of law."  DTG Contract, ¶ 21, Exhibit A, page 6.  As discussed above, there was no modification or amendment to the DTG Contract.  The SpaceX Purchase order contains a California choice of law provision, but is of no force and effect since its provisions and the claims based upon it must be dismissed under the FAA.  *See* III, *supra*; SpaceX Purchase Order, ¶ 2(a).

SpaceX concedes that SpaceX and DTG "(a) {i}revocably consent to the jurisdiction of the United States District Court and the State courts of New York" pursuant to ¶ 21 of the DTG Contract.  SpaceX FAC, ¶ 6.  New York courts will generally enforce a clear and unambiguous choice-of-law clause contained in an agreement so as to give effect to the parties' intent.  *Frankel v. Citicorp Insurance Services, Inc.*, 80 A.D.3d 280, 285, 913 N.Y.S.2d 254, 259 (2d Dep't. 2010) (citations omitted).  The DTG Contract has such a clear and unambiguous choice-of-law clause, and giving effect to the parties' intent requires that Counts II and III of the SpaceX FAC be dismissed with prejudice.

In addition, the fraud allegation in Count III is not asserted with sufficient particularity since the alleged fraudulent statements are not identified, the person making such statement is not identified, and the date, time and place of where/when such statements were made are not specified.  Rule 9(b), Fed.R.Civ.P.; *Cosmas*, 886 F.2d at 11.  Finally, both Counts II and III both fail to meet the plausibility standard, and lack the factual content to be entitled to an assumption of truth.  *Iqbal*, 556 U.S. at 681.

**VIII.    Count IV (Breach of Fiduciary Duty) Should be Dismissed Because the Relationship Between DTG and SpaceX Was As an Independent Contractor, Not a Fiduciary.**

The DTG Contract provides that DTG acts as an independent contractor regarding all services that are the subject of this lawsuit.  DTG Contract, ¶ 2.  DTG acts as an agent for SpaceX with regard to dealings with government agencies.  DTG Contract, ¶ 2.  DTG acted as an NVOCC to SpaceX since it issued Bills of lading for the transport of the Tanks.  SpaceX FAC, ¶ 19.  DTG did not act as a freight forwarder to SpaceX.  There is no basis for a breach of fiduciary duty claim since there was no fiduciary relationship between SpaceX and DTG.

**IX.    Count V (Unjust Enrichment) Must be Dismissed Because a Valid Contract Exists Regarding the Same Subject Matter.**

By Count V, SpaceX alleges entitlement to quasi contract recovery based on unjust enrichment.  SpaceX FAC, ¶¶ 50 - 53.  Under New York law, unjust enrichment claims cannot be pursued when there is a valid contract on the same subject matter.  *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Universal/MMEC, Ltd. v. Dormitory Auth. of New York*, 856 N.Y.S.2d 560, 562 (App. Div. 1st Dep't 2008) (unjust enrichment claim dismissed); *Cornhusker Farms, Inc. v. Hunts Point Coop. Market, Inc.*, 769 N.Y.S.2d 228, 232 (App. Div. 1st Dep't 2003) (same); *see also Metro. Switch Bd. Mfg. Co., Inc. v. B & G Elec. Contractors, Div. of B & G Indus., Inc.*, 946 N.Y.S.2d 178, 179 (App. Div. 2d Dep't 2012) (quantum meruit claim dismissed).

Unjust enrichment depends on an "implied" or "quasi-contract," and a " 'quasi contract' only applies in the absence of an express agreement."  *Clark-Fitzpatrick*, 516 N.E.2d at 193.  It is undisputed that a valid contract governs the relationship and Tank transport transaction between SpaceX and DTG.  SpaceX FAC, ¶¶ 5, 6; Amended Counterclaim, ¶¶ 9, 17 (Document #17); Answer to Amended Counterclaim, ¶¶ 9, 17 (Document #20); DTG Answer with Affirmative

Defenses, ¶ 1a (Document #7).  Indeed, the claim for unjust enrichment seeks precisely the same amount of damages as are claimed for breach of contract.  SpaceX FAC, ¶¶ 27, 53.  Thus, there is no reason to allow this claim to proceed as an alternative because it is "simply an alternative theory of liability to recover the same damages allegedly sustained as a result of the breach of contract."  *A. Montilli Plumbing & Heating Corp. v. Valentino*, 935 N.Y.S.2d 647, 649 (App. Div. 2d Dep't 2011).  As such, Count V should be dismissed.

## **CONCLUSION**

For the reasons stated above, the Court should dismiss with prejudice the First Amended Complaint.

Dated:  May 2, 2013
      New York, New York

Respectfully submitted,

HUSCH BLACKWELL LLP

By:   /s/ Daniel P. Jaffe
     Daniel P. Jaffe
     60 East 42nd Street, Suite 4600
     New York, NY  10165
     Telephone:  (212) 485-9805
     Facsimile:   (314) 480-1505
     Dan.Jaffe@huschblackwell.com

     Carlos Rodriguez (*pro hac vice* forthcoming)
     HUSCH BLACKWELL LLP
     750 17th Street N.W.
     Suite 900
     Washington, D.C. 20006
     Telephone: (202) 378-2300
     Fax: (202) 378-2319
     Carlos.Rodriguez@huschblackwell.com

     *Attorneys for Defendant D.T. Gruelle Company Group, L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2013, I electronically mailed through the Court's ECF system a true and correct copy of the foregoing D.T. Gruelle's Memorandum in Support of Motion to Dismiss First Amended Complaint to Douglas P. Lobel and Marybeth Shreiner, Cooley LLP, 11951 Freedom Drive, Reston, Virginia 20190, and Jason Koral, 1114 Avenue of the Americas, New York, New York 10036, attorneys for Plaintiff and Counter-defendant.

/s/ Daniel P. Jaffe