# EXHIBIT B

SPACEX

# PURCHASE ORDER
## APPROVED

**Bill To:**

Space Exploration Technologies
1 Rocket Road
Hawthorne, CA 90250
Phone: (310)363-6000 Fax: (310)363-6001

**PO Number:** 145090
**Rev No:** 1
**Order Date:** 2/24/2012

**Issued To:**

D.T. Gruelle Company
301 Moon Clinton Road
Moon Township, PA 15108 US

Phone: 412.262.2755 Fax: 412.262.1391
Contact: Terese Duncan
Email:

**Ship To:**

SpaceX
731 Kelp Rd SLC-4E
Vandenberg AFB, CA 93437
UNITED STATES

Contact: Laura Gonzalez
Email: Laura.Gonzalez@spacex.com
Phone: 310.363.6105

| Terms | Supplier ID | Tax Terms | F.O.B. | Shipping Method | Due Date | Promise Date | Status |
|---|---|---|---|---|---|---|---|
| Due on Receipt | DTGRUE | Taxable | Origin | Bestway | 4/30/2012 | 4/30/2012 | Released |

| Line | Qty | UM | Part ID / *Mfg Part ID* | Supplier Part ID | Service ID | Description | Unit Price | Total |
|---|---|---|---|---|---|---|---|---|
| 1 | 2.00 | EA | | | | GasCon LOX tanks OT-A and B shipment | 182,000.0000 | $364,000.00 |

**ORDER TOTAL: $364,000.00**

## Order Specifications

**Vandenberg - Shipping of OT-A and B for Vandenberg LOX farm. Pablo Ucar negotiated down $14,000 for final shipping dimensions of 83.2' L x 13.9' D x 14.7' H – 97,004 lbs"**

***Please include PO number on all shipping information and invoices.***

**Terms and Conditions.** Commencing with this order signifies supplier's acceptance of this P.O. and its agreement with all SpaceX Terms and Conditions, any applicable SpaceX Quality Clauses, and any applicable Federal Acquisition Regulations (FAR). The SpaceX Terms and Conditions, applicable Quality Clauses and applicable FAR and FAR Supplement clauses are incorporated by reference. The SpaceX Terms and Conditions, applicable Quality Clauses, and applicable FAR and FAR Supplement clauses may be viewed at the following link: http://www.spacex.com/legal/



SPACE EXPLORATION TECHNOLOGIES CORP.

## STANDARD TERMS AND CONDITIONS

**1. ACCEPTANCE OF CONTRACT/TERMS AND CONDITIONS**
(a) This Contract integrates, merges, and supersedes all prior offers, negotiations, and agreements concerning the subject matter hereof and constitutes the entire agreement between the parties.
(b) SELLER's acknowledgment, acceptance of payment, or commencement of performance, shall constitute SELLER's unqualified acceptance of this Contract.
(c) Unless expressly accepted in writing by a SPACEX Authorized Representative, additional or differing terms or conditions proposed by SELLER or provided by SELLER are rejected by SPACEX and have no effect.

**2. APPLICABLE LAWS**
(a) (1)This Contract shall be governed by and construed in accordance with the laws of California, without regard to its conflicts of laws provisions, except that:
(2) any provision in this Contract that is (i) incorporated in full text or by reference from the FAR; or (ii) incorporated in full text or by reference from any agency regulation that implements or supplements the FAR or; (iii) substantially based on any such agency regulation or FAR provision, shall be construed and interpreted according to the federal common law of government contracts as enunciated and applied by federal judicial bodies, boards of contracts appeals, and quasi-judicial agencies of the federal Government; and
(3) any provision in this Contract specifically involving an activity (i) licensed by the Secretary of Transportation or designee pursuant to the Commercial Space Launch Act of 1988, as amended, 49 U.S.C. 70101-70121 and the regulations issued pursuant thereto; (ii) occurring on the high seas or navigable waters of the United States or held to be subject to the application of federal maritime law principles; or (iii) that is among the "Protected Space Operations" defined by the National Aeronautics and Space Administration (NASA) pursuant to 14 C.F.R. 1266.102(b)(6) or 14 C.F.R. 1266.104(b)(6); shall be governed by and construed in accordance with United States federal law.
(b) (1) SELLER, in the performance of this Contract, agrees to comply with all applicable local, state, and federal laws, orders, rules, regulations, and ordinances. SELLER shall procure all licenses/permits, and pay all fees, and other required charges, and shall comply with all applicable guidelines and directives of any local, state, and/or federal governmental authority.
(2) If, as a result of any violation of applicable laws, orders, rules, regulations, or ordinances by SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier: (i) SPACEX's contract price or fee is reduced; (ii) SPACEX's costs are determined to be unallowable; (iii) any fines, penalties, or interest are assessed on SPACEX; or (iv) SPACEX incurs any other costs or damages; SPACEX may make a reduction of corresponding amounts (in whole or in part) owed under this Contract or any other contract with SELLER, and/or may demand payment (in whole or in part) of the corresponding amounts. SELLER shall promptly pay amounts so demanded.
(c) SELLER shall provide to SPACEX with each delivery any Material Safety Data Sheet applicable to the Work in conformance with and containing such information as required by the Occupational Safety and Health Act of 1970 and regulations promulgated thereunder or its State approved counterpart.

**3. ASSIGNMENT**
Any assignment of SELLER's Contract rights or delegation of SELLER's duties shall be void, unless prior written consent is given by SPACEX Authorized Representative. Nevertheless, SELLER may assign rights to be paid amounts due, or to become due, to a financing institution if SPACEX is promptly furnished a signed copy of such assignment reasonably in advance of the due date for payment of any such amounts. Amounts assigned shall be subject to setoff or recoupment for any present or future claims of SPACEX against SELLER. SPACEX shall have the right to make settlements and/or adjustments in price without notice to any assignee financing institution. Notwithstanding the above, either party may assign, delegate or otherwise transfer this Contract, or any rights or obligations under





this Contract, to any successor by way of merger, acquisition or sale of all or substantially all of the assets relating to the performance of this Contract.

**4. CHANGES**

(a) A SPACEX Authorized Representative may at any time, by written notice, and without notice to sureties or assignees, make changes within the general scope of this Contract in any one or more of the following: (i) drawings, designs, or specifications; (ii) method of shipping or packing; (iii) place of inspection, acceptance, or point of delivery; and (iv) delivery schedule.
(b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of this Contract, SPACEX shall make an equitable adjustment in the Contract price and/or delivery schedule, and modify this Contract accordingly. Changes to the delivery schedule will be subject to a price adjustment only.
(c) SELLER must assert its right to an equitable adjustment under this clause within fifteen (15) days from the date of receipt of the written change order from SPACEX.
(d) Failure to agree to any adjustment shall be resolved in accordance with the "Disputes" clause of this Contract. However, nothing contained in this "Changes" clause shall excuse SELLER from proceeding without delay in the performance of this Contract as changed.

**5. COMMUNICATION WITH SPACEX CUSTOMER**

SPACEX shall be solely responsible for all liaison and coordination with the SPACEX customer, including the U. S. Government, as it affects the applicable prime contract, this Contract, and any related contract, unless a SPACEX Authorized Representative expressly authorizes SELLER to communicate with the SPACEX customer.

**6. CONTRACT DIRECTION**

(a) Only a SPACEX Authorized Representative has authority on behalf of SPACEX to make changes to this Contract. All amendments must be identified as such in writing and executed by the parties.
(b) SPACEX engineering and technical personnel may from time to time render assistance or give technical advice or discuss or affect an exchange of information with SELLER's personnel concerning the Work hereunder. No such action shall be deemed to be a change under the "Changes" clause of this Contract and shall not be the basis for equitable adjustment.
(c) Except as otherwise provided herein, all notices to be furnished by the SELLER shall be in writing and sent to a SPACEX Authorized Representative.

**7. DEFAULT**

(a) SPACEX, by written notice, may terminate this Contract for default, in whole or in part, if SELLER (i) fails to comply with any of the terms of this Contract; (ii) fails to make progress so as to endanger performance of this Contract; (iii) fails to provide adequate assurance of future performance; (iv) files or has filed against it a petition in bankruptcy; or (v) becomes insolvent or suffers a material adverse change in financial condition. SELLER shall have ten (10) days (or such longer period as SPACEX may authorize in writing) to cure any such failure after receipt of notice from SPACEX. Default involving delivery schedule delays, bankruptcy or adverse change in financial condition shall not be subject to the cure provision.
(b) Following a termination for default of this Contract, SELLER shall be compensated only for Work actually delivered and accepted. SPACEX may require SELLER to deliver to SPACEX any supplies and materials, manufacturing materials, and manufacturing drawings that SELLER has produced or acquired for this Contract. SPACEX and SELLER shall agree on the amount of payment for these other deliverables, unless they have previously been paid for by SPACEX.
(c) Upon the occurrence and during the continuation of a default, SPACEX may exercise any and all rights and remedies available to it under applicable law and equity, including without limitation, cancellation of this Contract. If after termination for default under this Contract, it is determined that SELLER was not in default, such termination shall be deemed a termination for convenience.
(d) SELLER shall continue all Work not terminated or cancelled.



SPACE EXPLORATION TECHNOLOGIES CORP.

**8. DEFINITIONS**

The following terms shall have the meanings set forth below:
(a) "Contract" means the instrument of contracting, such as "Purchase Order", "PO", "Subcontract", or other such type designation, including these Standard Terms and Conditions, all referenced documents, exhibits and attachments.
(b) "FAR" means the Federal Acquisition Regulation, issued as Chapter 1 of Title 48, Code of Federal Regulations.
(c) "SPACEX" means SPACE EXPLORATION TECHNOLOGIES CORP., acting through its companies or business units as identified on the face of this Contract. If a subsidiary or affiliate of SPACEX is identified on the face of this Contract, then "SPACEX" means that subsidiary or affiliate.
(d) "SPACEX Authorized Representative" means a person specifically authorized by SPACEX to administer and/or execute this Contract or an individual holding one of the following positions at SPACEX: CEO, President, Vice President, Director of Finance, or Contracts Officer.
(e) "SELLER" means the party identified on the face of this Contract with whom SPACEX is contracting.
(f) "Work" means all required labor, articles, materials, supplies, goods, and services constituting the subject matter of this Contract.

**9. DISPUTES**

(a) All disputes and controversies arising out of this Contract including the existence, construction, validity, interpretation, performance, nonperformance, enforcement or breach of any provision, shall be settled by mediation and, if necessary, arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The parties agree to submit any dispute or controversy to non-binding mediation, in the Los Angeles metropolitan area, before one (1) mediator selected by AAA with costs to be borne equally by the parties. In the event the mediator is unable to facilitate a mutually agreeable settlement within ninety (90) days after petition for mediation, the parties shall petition the AAA to select three (3) impartial arbitrators. The federal rules of civil procedure shall apply, to include depositions, with respect to the arbitration. Any arbitration hearings shall take place in the Los Angeles metropolitan area. The findings of the arbitrators shall be final and binding upon the parties. Any award of arbitration may include attorneys' fees and costs, including but not limited to expert witness fees, payable to the prevailing Party in the arbitration, as determined by the arbitrators.
(b) Until final resolution of any dispute hereunder, SELLER shall diligently proceed with the performance of this Contract as directed by SPACEX.

**10. ELECTRONIC CONTRACTING**

The parties agree that if this Contract is transmitted electronically neither party shall contest the validity of this Contract, or any acknowledgement thereof, on the basis that this Contract or acknowledgement contains an electronic signature.

**11. EXPORT/IMPORT CONTROL**

(a) SELLER agrees to comply with all applicable U.S. export and import control laws and regulations, specifically including, but not limited to, the requirements of the Arms Export Control Act, 22 U.S.C.2751-2794, including the International Traffic in Arms Regulation (ITAR), 22 C.F.R.120-130, and the regulations for the Importation of Arms, Ammunition and Implements of War, 27 C.F.R. Part 447; and the Export Administration Regulations, 15 C.F.R. 730-774, in effect under the International Emergency Economic Powers Act, 50 U.S.C. 1701-1707, pursuant to Executive Order 13222 of August 17, 2001; including the requirement for obtaining any export or import license or other written authorization, if applicable. Without limiting the foregoing, SELLER agrees that it will not transfer any export-controlled item, data, or services, to include transfer or disclosure (including oral or visual disclosure) to any foreign person employed by or associated with, or under contract to SELLER or SELLER's lower-tier suppliers (whether in the United States or abroad), without the authority of an export license, agreement, or applicable exemption or exception.
(b) SELLER agrees to notify SPACEX if any deliverable under this Contract is restricted by export control laws or regulations.



SPACE EXPLORATION TECHNOLOGIES CORP.

(c) SELLER shall immediately notify a SPACEX Authorized Representative if SELLER is, or becomes, listed in any Denied Parties List or if SELLER's export privileges are otherwise restricted, suspended or revoked in whole or in part by any U.S. Government entity or agency.
(d) If SELLER is engaged in the business of either exporting or manufacturing (whether exporting or not) defense articles or furnishing defense services, SELLER represents that it is registered with the Office of Defense Trade Controls, as required by the ITAR, and it maintains an effective export/import compliance program in accordance with the ITAR.
(e) Where SELLER is a signatory under a SPACEX export license or export agreement (e.g., TAA, MLA), SELLER shall provide prompt notification to a SPACEX Authorized Representative in the event of changed circumstances including, but not limited to, ineligibility, a violation or potential violation of the ITAR, and the initiation or existence of a U.S. Government investigation, that could affect the SELLER's performance under this Contract.
(f) SELLER shall be responsible for all losses, costs, claims, causes of action, damages, liabilities and expense, including attorneys' fees, all expense of litigation and/or settlement, and court costs, arising from any act or omission of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this clause.

**12. FEDERALLY-REQUIRED CROSS-WAIVERS**
(a) Federal regulations may require SELLER to execute and flowdown to its suppliers and/or subcontractors one or more of the following cross-waivers:
(1) for commercial space launch or reentry activities licensed by the Federal Aviation Administration (FAA), (i) a reciprocal waiver of claims as mandated by 14 C.F.R. 440.17(b), and (ii) a three-party reciprocal waiver of claims agreement as mandated by 14 C.F.R. 440.17(c);
(2) for activities related to the International Space Station, a cross-waiver of liability as mandated by 14 C.F.R. 1266.102; and
(3) for National Aeronautics and Space Administration (NASA) science or space exploration activities unrelated to the International Space Station but involving launch, a cross-waiver of liability as mandated by 14 C.F.R. 1266.104.
(b) SELLER agrees to defend, indemnify, and hold harmless SPACEX and its customers from and against any claims, damages, losses, costs, and expenses, including reasonable attorneys' fees, arising out of out of the SELLER's failure to properly execute or flowdown any federally required reciprocal cross-waivers.

**13. FURNISHED PROPERTY**
(a) SPACEX may provide to SELLER property owned by either SPACEX or its customer ("Furnished Property"). Furnished Property shall be used by SELLER only for the performance of this Contract.
(b) Title to Furnished Property shall remain in SPACEX or its customer. SELLER shall clearly mark (if not so marked) all Furnished Property to show its ownership.
(c) Except for reasonable wear and tear, SELLER shall be responsible for, and shall promptly notify SPACEX of, any loss or damage. Without additional charge, SELLER shall manage, maintain, and preserve Furnished Property in accordance with good commercial practice.
(d) At SPACEX's request, and/or upon completion of this Contract, SELLER shall submit, in an acceptable form, inventory lists of Furnished Property and shall deliver or make such other disposal as may be directed by SPACEX.

**14. GRATUITIES/KICKBACKS**
SELLER shall not offer or give a kickback or gratuity (in the form of entertainment, gifts, or otherwise) for the purpose of obtaining or rewarding favorable treatment as a SPACEX supplier.

**15. INDEPENDENT CONTRACTOR RELATIONSHIP**
SELLER is an independent contractor in all its operations and activities hereunder. The employees and agents used by SELLER to perform Work under this Contract shall be SELLER's employees and agents exclusively without any relation whatsoever to SPACEX.



**SPACE EXPLORATION TECHNOLOGIES CORP.**

**16. SELLER'S RESPONSIBILITY**
SELLER shall be responsible for and hold harmless SPACEX and its customers from and against all losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys' fees, all expenses of litigation and/or settlement, and court costs, arising from any act or omission of SELLER, its officers, employees, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this Contract.

**17. INFORMATION OF SPACEX**
Information provided by SPACEX to SELLER remains the property of SPACEX. SELLER agrees to comply with the terms of any Nondisclosure Agreement with SPACEX and to comply with all proprietary information markings and restrictive legends applied by SPACEX to anything provided by SPACEX or its agents to SELLER. SELLER agrees not to use any SPACEX provided information for any purpose except to perform this Contract and agrees not to disclose such information to third parties without the prior written consent of SPACEX. SELLER shall maintain data protection processes and systems sufficient to adequately protect SPACEX information.

**18. INFORMATION OF SELLER**
SELLER shall not provide any proprietary information to SPACEX without prior execution of a proprietary information agreement by the parties.

**19. INSPECTION AND ACCEPTANCE**
(a) SPACEX and its customer may inspect all Work at reasonable times and places, including, when practicable, during manufacture and before shipment. SELLER shall provide all information, facilities, and assistance necessary for safe and convenient inspection without additional charge.
(b) No such inspection shall relieve SELLER of its obligations to furnish and warrant all Work in accordance with the requirements of this Contract. SPACEX's final inspection and acceptance shall be at destination.
(c) If SELLER delivers non-conforming Work, SPACEX may, in addition to any other remedies available at law or at equity: (i) accept all or part of such Work at an equitable price reduction; or (ii) reject such Work; or (iii) require SELLER, at SELLER's cost, to make all repairs, modifications, or replacements at the direction of SPACEX necessary to enable such Work to comply in all respects with Contract requirements.
(d) SELLER shall not re-tender rejected Work without disclosing the corrective action taken.

**20. INSURANCE/ENTRY ON SPACEX FACILITIES**
(a) SELLER and its subcontractors shall maintain for the performance of this Contract workers compensation, commercial general liability ("CGL") and automobile liability ("AL") (third party bodily injury and property damage liability) insurance with a minimum of $1,000,000 per occurrence limit and such other insurance as SPACEX may require. SELLER shall provide SPACEX thirty (30) days advance written notice prior to the effective date of any cancellation or change in the term or coverage of any of SELLER's required insurance, provided however such notice shall not relieve SELLER of its obligations to maintain the required insurance. SELLER shall name SPACEX as an additional insured to the CGL and AL policies for the duration of this Contract. If requested, SELLER shall provide SPACEX with a Certificate of Insurance evidencing SELLER's compliance with these requirements. Insurance maintained pursuant to this clause shall be considered primary as respects the interest of SPACEX and is not contributory with any insurance which SPACEX may carry. "Subcontractor" as used in this clause shall include SELLER's subcontractors at any tier. SELLER's obligations for maintaining insurance coverages herein are freestanding and are not affected by any other language in this Contract.
(b) SELLER'S personnel, including SELLER's subcontractors, shall comply with all SPACEX security, safety, rules of conduct, badging and personal identity, and related requirements while on SPACEX premises. In addition, prior to entry on SPACEX premises, SELLER shall coordinate with SPACEX to gain access to facilities. SELLER shall provide information reasonably required by SPACEX to ensure proper identification of personnel, including but not limited to verification of citizenship, lawful permanent resident status, protected individual or other status. SPACEX may, at its sole discretion, have SELLER

remove any specified employee of SELLER from SPACEX's premises and request that such employee not be reassigned to any SPACEX premises under this Contract.

**21. INTELLECTUAL PROPERTY**

(a) SELLER warrants that the Work performed or delivered under this Contract will not infringe or otherwise violate the intellectual property rights of any third party. SELLER agrees to defend, indemnify, and hold harmless SPACEX and its customers from and against any claims, damages, losses, costs, and expenses, including reasonable attorneys fees, arising out of any action by a third party that is based upon a claim that the Work performed or delivered under this Contract infringes or otherwise violates the intellectual property rights of any person or entity.

(b) All data, copyrights, reports, and works of authorship developed in performance of this Contract shall be the sole property of SPACEX and shall be used by SELLER solely in work for SPACEX. To the extent that any of the deliverable items may not, by operation of law, be works made for hire, SELLER hereby assigns to SPACEX the ownership of copyright in the deliverable items and SPACEX shall have the right to obtain and hold in its own name copyrights, registrations, and similar protection which may be available in the deliverable items. SELLER agrees to give SPACEX or its designees all assistance reasonably required to perfect such rights.

(c) To the extent that any pre-existing inventions, technology, designs, works of authorship, mask works, technical information, computer software, and other information or materials are used, included, or contained in the Work or deliverable items and not owned by SPACEX, SELLER grants to SPACEX an irrevocable, world-wide, royalty-free license to: (i) make, have made, sell, offer for sale, use, execute, reproduce, display, perform, distribute (internally or externally) copies of, and prepare derivative works based upon, such pre-existing inventions, technology, designs, works of authorship, mask works, technical information, computer software, and other information or materials and derivative works thereof; and (ii) authorize others to do any, some or all of the foregoing.

(d) All reports, memoranda or other materials in written form, including machine readable form, prepared by SELLER pursuant to this Contract and furnished to SPACEX by SELLER hereunder shall become the sole property of SPACEX.

**22. PROHIBITED SOFTWARE**

(a) This clause only applies to Work that includes the delivery of software.

(b) As used herein, "Prohibited License" means the General Public License ("GPL") or Lesser/Library GPL, the Artistic License (e.g., PERL), the Mozilla Public License, the Netscape Public License, the Sun Community Source License, the Sun Industry Standards License, or variations thereof, including without limitation licenses referred to as "GPL Compatible, Free Software License."

(c) As used herein, "Prohibited Software" means software that incorporates or embeds software in, or uses software in connection with, as part of, bundled with, or alongside any (1) open source, publicly available, or "free" software, library or documentation, or (2) software that is licensed under a Prohibited License, or (3) software provided under a license that (a) subjects the delivered software to any Prohibited License, or (b) requires the delivered software to be licensed for the purpose of making derivative works or be redistributable at no charge, or (c) obligates SPACEX to sell, loan, distribute, disclose or otherwise make available or accessible to any third party (i) the delivered software, or any portion thereof, in object code and/or source code formats, or (ii) any products incorporating the delivered software, or any portion thereof, in object code and/or source code formats.

(d) Unless SELLER has obtained SPACEX's prior written consent, which SPACEX may withhold in its sole discretion, SELLER shall not use in connection with this Contract, or deliver to SPACEX, any Prohibited Software.

(e) SELLER agrees to defend, indemnify, and hold harmless SPACEX, its customers and suppliers from and against any claims, damages, losses, costs, and expenses, including reasonable attorneys' fees, relating to use in connection with this Contract or the delivery of Prohibited Software.

**23. NEW MATERIALS**

The Work to be delivered hereunder shall consist of new materials, as defined in FAR 52.211-5, not used, or reconditioned, remanufactured, or of such age as to impair its usefulness or safety.



SPACE EXPLORATION TECHNOLOGIES CORP.

**24. PACKING AND SHIPMENT**
(a) Unless otherwise specified, all Work is to be packed in accordance with good commercial practice.
(b) A complete packing list shall be enclosed with all shipments. SELLER shall mark containers or packages with necessary lifting, loading, and shipping information, including the SPACEX Contract number, item number, dates of shipment, and the names and addresses of consignor and consignee. Bills of lading shall include this Contract number.
(c) When goods provided under this Contract originate outside of the United States, prior to their first shipment of goods to SPACEX, SELLER shall provide SPACEX a Certificate of Origin specifying the Country of Origin, SELLER's name, SPACEX Contract number, and any other documentation required for compliance with U.S. Customs laws and regulations.
(d) Unless otherwise specified, delivery shall be FOB destination.

**25. PAYMENTS, TAXES, AND DUTIES**
(a) Unless otherwise provided, terms of payment shall be net sixty (60) days from the latest of the following: (1) SPACEX's receipt of the SELLER's proper invoice; (2) scheduled delivery date of the Work; or (3) actual delivery of the Work.
(b) Each payment made shall be subject to reduction to the extent of amounts which are found by SPACEX or SELLER not to have been properly payable, and shall also be subject to reduction for overpayments. SELLER shall promptly notify SPACEX of any such overpayments and remit the amount of the overpayment except as otherwise directed by SPACEX.
(c) SPACEX shall have a right to recoup or setoff, as the case may be, against payments due or at issue under this Contract or any other contract between the parties.
(d) Unless otherwise specified, prices include all applicable federal, state and local taxes, duties, tariffs, and similar fees imposed by any government, all of which shall be listed separately on the invoice.

**26. PRECEDENCE**
Any inconsistencies in this Contract shall be resolved in accordance with the following descending order of precedence: (1) Face of the Contract; (2) any FAR or FAR supplement clauses incorporated by reference; (3) these Standard Terms and Conditions; and (4) the Statement of Work.

**27. QUALITY CONTROL SYSTEM**
(a) SELLER shall provide and maintain a quality control system to an industry recognized quality standard and in compliance with any other specific quality requirements identified in this Contract.
(b) Records of all quality control inspection work by SELLER shall be kept complete and available to SPACEX and its customers.

**28. RELEASE OF INFORMATION**
Except as required by law, no public release of any information, or confirmation or denial of same, with respect to this Contract or the subject matter hereof, will be made by SELLER or its subcontractors without the prior written approval of SPACEX.

**29. SEVERABILITY**
Each clause, paragraph and subparagraph of this Contract is severable, and if one or more of them are declared invalid, the remaining provisions of this Contract will remain in full force and effect.

**30. STOP WORK**
(a) SELLER shall stop Work for up to ninety (90) days in accordance with any written notice received from SPACEX, or for such longer period of time as the parties may agree and shall take all reasonable steps to minimize the incurrence of costs allocable to the Work during the period of Work stoppage.
(b) Within such period, SPACEX shall either terminate in accordance with the provisions of this Contract or continue the Work by written notice to SELLER. In the event of a continuation, an equitable adjustment in accordance with the principles of the "Changes" clause shall be made to the price, delivery schedule,



SPACE EXPLORATION TECHNOLOGIES CORP.

or other provision(s) affected by the Work stoppage, if applicable, provided that the claim for equitable adjustment is made within thirty (30) days after date of notice to continue.

**31. SURVIVABILITY**
(a) If this Contract expires, is completed, or is terminated, SELLER shall not be relieved of those obligations contained in the following clauses:
Applicable Laws
Disputes
Electronic Contracting
Export Control
Independent Contractor Relationship
SELLER's Responsibility
Information of SPACEX
Insurance/Entry on SPACEX Property
Intellectual Property
Release of Information
Warranty
(b) Those applicable U. S. Government flowdown provisions that by their nature should survive.

**32. TERMINATION FOR CONVENIENCE**
(a) SPACEX reserves the right to terminate this Contract, or any part hereof, for its convenience. SPACEX shall terminate by delivering to SELLER a Notice of Termination specifying the extent of termination and the effective date. In the event of such termination, SELLER shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this Contract, SELLER shall be paid a percentage of the Contract price reflecting the percentage of the Work performed prior to the notice of termination, plus reasonable charges SELLER can demonstrate to the satisfaction of SPACEX using its standard record keeping system have resulted from the termination. SELLER shall not be paid for any Work performed or costs incurred following such termination that reasonably could have been avoided.
(b) In no event shall SPACEX be liable for lost or anticipated profits, or unabsorbed indirect costs or overhead, or for any sum in excess of the total Contract price. SELLER's termination claim shall be submitted within forty-five (45) days from the effective date of the termination.
(c) SELLER shall continue all Work not terminated.

**33. TIMELY PERFORMANCE**
(a) SELLER's timely performance is a critical element of this Contract.
(b) If SELLER becomes aware of difficulty in performing the Work, SELLER shall timely notify SPACEX, in writing, giving pertinent details. This notification shall not change any delivery schedule.
(c) In the event of a termination for convenience or change, no claim will be allowed for any manufacture or procurement in advance of SELLER's normal flow time unless there has been prior written consent by SPACEX.

**34. WAIVERS, APPROVALS, AND REMEDIES**
(a) Failure by either party to enforce any of the provisions of this Contract or applicable law shall not constitute a waiver of the requirements of such provisions or law, or as a waiver of the right of a party thereafter to enforce such provision or law.
(b) SPACEX's approval of documents shall not relieve SELLER of its obligation to comply with the requirements of this Contract.
(c) The rights and remedies of either party in this Contract are cumulative and in addition to any other rights and remedies provided by law or in equity.

**35. WARRANTY**
SELLER warrants that all Work furnished pursuant to this Contract shall strictly conform to applicable specifications, drawings, samples, descriptions, and other requirements of this Contract and be free from

defects in design, material, and workmanship. This warranty shall begin upon final acceptance and extend for a period of one (1) year. If any nonconforming Work is identified within the warranty period, SELLER, at SPACEX's option, shall promptly repair, replace, or reperform the Work. Transportation of replacement Work, return of nonconforming Work, and reperformance of Work shall be at SELLER's expense. If repair, or replacement, or reperformance of Work is not timely, SPACEX may elect to return, reperform, repair, replace, or reprocure the non-conforming Work at SELLER's expense. All warranties shall run to SPACEX and its customers.