UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                      :

SPACE EXPLORATION TECHNOLOGIES    :
CORP.,                                     :
                                        :

                     Plaintiff,     :

v.                                   :     No.: 1:12-cv-07510-PAE (KNF)
                                   :

D.T. GRUELLE COMPANY GROUP,     :
L.L.C.,                                   :
                                        :

                     Defendant.   :
------------------------------------------x

## SPACEX'S OPPOSITION TO
## D.T. GRUELLE'S MOTION
## TO DISMISS FIRST AMENDED COMPLAINT


Dated:  May 17, 2013

Respectfully submitted,

COOLEY LLP


/s/ Douglas P. Lobel
Douglas P. Lobel (DL-3894)
11951 Freedom Drive
Reston, Virginia 20190
Telephone:  (703) 456-8000
Facsimile:  (703) 456-8100

and

Jason Koral (JK-1044)
1114 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 479-6000
Facsimile:  (212) 479-6275

*Counsel for Space Exploration Technologies Corp.*

## <u>TABLE OF CONTENTS</u>

**Page**

ALLEGED FACTS ........................................................................................................... 2

STANDARD OF REVIEW ............................................................................................ 5

ARGUMENT ................................................................................................................. 5

I.   SPACEX HAS STATED PRIMA FACIE CLAIMS ......................................... 5

    A.   SpaceX Validly Stated A Claim For Breach Of Contract And Economic
Duress (Count I) ................................................................................................ 5

    B.   SpaceX States Valid Claims Under California Law (Counts II And III) .............. 7

    C.   Breach of Fiduciary Duty (Count IV) ................................................................ 8

    D.   Unjust Enrichment (Count V) ........................................................................... 9

II.  THE COURT SHOULD REJECT DTG'S EFFORT TO REWRITE THE FACTS
OF THIS CASE ........................................................................................... 10

    A.   DTG Cannot Rely On Facts Not Mentioned In The Complaint ........................ 10

    B.   The Power Of Attorney Contract Is Not A Delivery Contract ............................ 11

    C.   The Court Can Disregard DTG's Other Arguments Based On The "Power
Of Attorney" Contract ..................................................................................... 13

III. AN ARBITRATION CLAUSE DOES NOT DIVEST THIS COURT OF
JURISDICTION ........................................................................................... 14

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Grape Growers v. Bronco Wine Co.*,
    203 Cal. App. 3d 432 (Cal. Ct. App. 1988) ...................................................................7

*Alton v. Alton*,
    83 A.D.3d 972 (N.Y. App. Div. 2011) ...................................................................12

*AM Cosmetics, Inc. v. Solomon*,
    67 F. Supp. 2d 312 (S.D.N.Y. 1999)...................................................................9

*Apple & Eve, LLC v. Yantai North Andre Juice Co.*,
    610 F.Supp.2d 226 (E.D.N.Y. 2009) ...................................................................14

*B. Lewis Prods., Inc. v. Maya Angelou, Hallmark Cards, Inc.*,
    2005 WL 1138474 (S.D.N.Y. May 12, 2005) ...................................................................13

*Bernson v. Browning-Ferris Indus.*,
    7 Cal. 4th 926 (Cal. 1994)...................................................................9

*Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006)...................................................................9

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993)...................................................................3

*Brookhaven Hous. Coal. v. Solomon*,
    583 F.2d 584 (2d Cir.1978)...................................................................11

*CenturyLink, Inc. v. DISH Network, LLC*,
    2012 WL 6186462 (S.D.N.Y. Dec. 12, 2012) ...................................................................12

*Charles W. v. Maul*,
    214 F.3d 350 (2d Cir. 2000)...................................................................2, 5

*Cohen v. UBS Financial Servs., Inc.*,
    2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) ...................................................................15

*CreditSights Inc. v. Ciasullo*,
    2007 WL 943352 (S.D.N.Y. 2007)...................................................................13

*Dreyfuss v. eTelecare Global Solutions-US, Inc.*,
    2008 WL 4974864 (S.D.N.Y. Nov. 19, 2008)...................................................................11

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Eastern Transp. Co. v. Blue Ridge Coal Corp.*,
 159 F.2d 642 (2d Cir. 1947)..................................................................................12

*In re European Rail Pass Antitrust Litig.*,
 166 F.Supp.2d 836 (S.D.N.Y. 2001).........................................................................5

*First Monroe, Inc. v. Regency Manor Assocs., LP.*,
 221 A.D.2d 1023 (N.Y. App. Div. 1995) ................................................................12

*Harsco Corp. v. Segui*,
 91 F.3d 337 (2d Cir. 1996).........................................................................................5

*Irving Trust Co. v. Nationwide Leisure Corp.*,
 562 F. Supp. 960 (S.D.N.Y. 1982)...........................................................................12

*J&J Sports Prods., Inc. v. S&S Lounge, Inc.*,
 2011 WL 477681 (E.D.N.Y. Feb. 3, 2011)...............................................................5

*Johnson Products Co., Inc. v. M/V La Molinera*,
 628 F. Supp. 1240 (S.D.N.Y. 1986).........................................................................8

*JS Barkats, PLLC v. BE, Inc.*,
 2013 WL 444919 (S.D.N.Y. Feb. 6, 2013)..............................................................14

*Kashmiri v. Regents of Univ. of Cal.*,
 156 Cal. App. 4th 809 (Cal. Ct. App. 2008) .............................................................5

*Kreiss v. McCown De Leeuw & Co.*,
 37 F. Supp. 2d 294 (S.D.N.Y. 1999)........................................................................13

*Krock v. Lipsay*,
 97 F.3d 640 (2d Cir. 1996).........................................................................................8

*L-3 Commc'ns. Corp. v. OSI Sys., Inc.*,
 2004 WL 42276 (S.D.N.Y. Jan. 8, 2004) ..................................................................8

*Mazzola v. Roomster Corp.*,
 849 F.Supp.2d 395 (S.D.N.Y. 2012).........................................................................8

*Monex Deposit Co. v. Gilliam*,
 666 F. Supp. 2d 1135 (C.D. Cal. 2009) .....................................................................7

*O'Brien v. West*,
 199 A.D.2d 369 (N.Y. App. Div. 1993) ...................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*On Line Power Techs., Inc. v. Square D Co.*,
   No. 03 Civ. 4860, 2004 WL 1171405 (S.D.N.Y. Apr. 20, 2004) ............................................ 14

*Ortiz v. McBride*,
   380 F.3d 649 (2d Cir. 2004) ................................................................................................... 5

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
   157 Cal. App. 3d 1154 (Cal. Ct. App. 1984) ......................................................................... 6

*S.E.C. v. Rorech*,
   720 F. Supp. 2d 367 (S.D.N.Y. 2010) .................................................................................. 11

*Seiden Assocs. v. ANC Holdings, Inc.*,
   754 F. Supp. 37 (S.D.N.Y. 1991) ........................................................................................... 9

*Stevens v. Publicis*,
   50 A.D. 3d 253 (N.Y. App. Div. 1st Dept. 2008) ............................................................... 14

*United States v. Ventura*,
   724 F.2d 305 (2d Cir. 1983) ................................................................................................... 8

*Uniwill L.P. v. City of L.A*,
   124 Cal. App. 4th 537 (Cal. Ct. App. 2004) .......................................................................... 6

*Vevelstad v. Flynn*,
   230 F.2d 695 (9th Cir. 1956) ................................................................................................ 11

**STATUTES**

California Business & Professions Code § 17200 ......................................................................... 7

California Penal Code § 523 ......................................................................................................... 7

New York Gen. Oblig. Law § 5-701 ........................................................................................... 14

**OTHER AUTHORITIES**

FED. R. CIV. P.
   Rule 8 ............................................................................................................................... 9, 11

The Court should deny Defendant's Motion to Dismiss because the allegations in the Amended Complaint – as opposed to Defendant's alternate universe of allegations in its Answer and Affirmative Defenses – state valid, well recognized causes of action.

As alleged in the Amended Complaint, Defendant D.T. Gruelle Company Group, L.L.C. ("DTG") is a shipping company that contracted with Plaintiff Space Exploration Technologies Corp. ("SpaceX") to transport SpaceX's liquid oxygen tanks from South Africa to California for a negotiated, fixed price. Notwithstanding this agreement, and knowing that SpaceX faced a huge financial penalty for non-delivery, DTG refused to deliver the tanks until SpaceX paid a ransom above the expressly-stated, fixed price.

The Court assumes the following facts to be true: SpaceX issued to DTG, and DTG began performing, a Purchase Order that contained the essential terms for the delivery. The Purchase Order contained a fixed price and set forth the nature and specifications for the delivery. The Purchase Order even reflects the parties' negotiations of this price – stating that the price was "negotiated down $14,000." DTG knew that SpaceX had another contract with a very strict deadline for delivery, and that any delay would cost SpaceX millions in penalties. Once it placed SpaceX's tanks on a ship on the ocean, DTG refused to deliver the tanks until SpaceX paid a significantly higher price than the contract provided. SpaceX had no rational choice but to pay the ransom to get the tanks delivered on time.

These factual allegations form the bases for five causes of action. DTG breached the parties' Purchase Order, or, alternatively, DTG's attempt to amend the purchase price in the Purchase Order is void due to economic duress. SpaceX, a California company, also has valid tort claims under California law for civil extortion and unfair business competition, as well as for breach of fiduciary duty that DTG owes to SpaceX as a "freight forwarder."

DTG's Motion to Dismiss wholly misconceives Rule 12(b)(6) by essentially ***ignoring*** the factual allegations in the Amended Complaint and instead relying on a litany of alternative allegations contained in DTG's own Answer, Affirmative Defenses and the Counterclaim.

Most significantly, DTG claims that a "Power of Attorney" contract – not the Purchase Order – governs the material terms of the tank delivery.  The Power of Attorney contract, however, is exactly what is says; it appointed DTG to act as SpaceX's delivery agent.  It is not, under basic principles of Contract Law 101, a binding contract for delivery of the tanks because it lacks all essential terms:

- ***No delivery:*** It does not require SpaceX to use DTG for any delivery;

- ***No Price:*** It does not set out any price for any delivery;

- ***No Specs:*** It does not specify what is to be delivered (the tanks);

- ***No Location:*** It does not specify where the tanks are to be delivered (California);

- ***No Time:*** It does not specify the time of delivery.

Because the Power of Attorney is devoid of terms essential to a delivery contract, it would be illusory and unenforceable if it were to be read as a delivery contract.

Reading only the allegations in the Amended Complaint, and construing the plain meaning of the parties' agreements, DTG's Motion is easily denied.

## **ALLEGED FACTS**

Only the facts alleged in the Amended Complaint ("AC") govern the resolution of DTG's Motion.  *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir. 2000).

SpaceX is a rocket company that is developing a launch facility at Vandenberg AFB, California.  This facility requires "large, permanent tanks to store liquid oxygen" for rocket fuel.  The tanks, a "critical" and "indispensible" requirement of the new facility, were manufactured for SpaceX in South Africa.  AC ¶¶ 7-10, 16.

SpaceX had a defined schedule to transport the tanks from South Africa to Vandenberg. A significant launch contract with a third party – worth over $50 million – required SpaceX to complete the Vandenberg facility, and delivery of the tanks to Vandenberg constituted a "key milestone" tied to a $10 million progress payment.  AC ¶ 16.

Delivery of the tanks was to be undertaken in three stages:  (1) overland from inland South Africa to Cape Town Port, SA; (2) by sea from Cape Town Port to Houston, Texas, via ship; and (3) finally overland from Houston to Vandenberg.  AC ¶ 11.

In February 2012, SpaceX submitted a "Purchase Order" to DTG which included the price contained in DTG's quote, identified the cargo, and identified the three phases of the transport.  AC ¶ 11-13.  The Purchase Order stated that DTG's commencing delivery would signify its acceptance of the terms of the Purchase Order.  AC ¶ 14.  DTG commenced delivery of the tanks, and thereby accepted the Purchase Order.  AC ¶¶ 15, 19, 20.  The Purchase Order (attached as Exhibit 2 to DTG's motion) supports these allegations:[1]

- It provides a specific price ($364,000) for delivery of a specific cargo (identified as "GasCon LOX tanks OT-A and B");

- It set out the specifications for the cargo ("83.2′ L x 13.9′ D x 14.7′ H – 97,004 lbs");

- It specifies the ultimate delivery location (a specific address at Vandenberg);

- It states on the first page, "Commencing with this order signifies supplier's acceptance of this P.O. and its agreement with all SpaceX Terms and Conditions." Similarly, ¶ 1(b) of the Standard Terms and Conditions attached to the Purchase Order states, "SELLER's [DTG's] acknowledgement, acceptance of payment or commencement of performance, shall constitute [its] unqualified acceptance of this Contract."; and

---

[1]    Because the Purchase Order is expressly referenced in the Amended Complaint, the terms of the Purchase Order can be reviewed on a Rule 12(b)(6) motion under the incorporation by reference doctrine.  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

- It attaches several pages of "Standard Terms and Conditions" applicable to the delivery of the tanks, which designates California law as controlling (T&C ¶ 2(a)(1)), and integrates all prior agreements between the parties (*id.* ¶ 1(a)).

The Purchase Order, in fact, reflects that the parties ***expressly negotiated*** the price.  On the first page of the Purchase Order, it states:  "Pablo Ucar [a SpaceX employee] negotiated down $14,000 for final shipping dimensions of 83.2′ L x 13.9′ D x 14.7′ H – 97,004 lbs."

SpaceX alleges that after DTG took control of the tanks in South Africa, DTG extorted a higher price from SpaceX by holding the tanks hostage until SpaceX paid significantly more than the agreed price contained in the Purchase Order.  DTG refused to deliver the tanks by the delivery date unless SpaceX paid the additional amount.  AC ¶ 15.

In holding SpaceX's tanks hostage, DTG knew full well that SpaceX had ***no choice*** but to pay because, if it refused, SpaceX would miss its $10 million milestone deadline in the third party contract.  SpaceX had no time to obtain replacement tanks from another supplier and no way to retrieve its tanks from DTG.  DTG left SpaceX no option.  AC ¶¶ 16, 17.  SpaceX wrote to DTG:

> At this point and because SpaceX has to meet a critical milestone with the delivery of these tanks in order to receive a payment of $10 million, I have no choice but to pay you an extraordinary amount of money that you never justified.

AC ¶ 18.

The Amended Complaint further alleges that DTG delivered the tanks only after SpaceX paid the ransom DTG demanded.  At that point, SpaceX terminated the Purchase Order due to DTG's breach – something that DTG ***never*** contested – and hired a different company to transport the tanks from Houston to Vandenberg, at significantly higher cost to SpaceX.  AC ¶¶ 20-21.

## STANDARD OF REVIEW

On a Rule 12 motion to dismiss a complaint, DTG cannot challenge any factual allegation in the Complaint, all of which must be accepted as true. *Charles W.*, 214 F.3d at 356. All inferences must be drawn in SpaceX's favor. *Ortiz v. McBride*, 380 F.3d 649, 653 (2d Cir. 2004). The Court does ***not*** accept as true factual allegations of DTG's Answer, Affirmative Defenses, or Amended Counterclaim. *J&J Sports Prods., Inc. v. S&S Lounge, Inc.*, No. 10-5627, 2011 WL 477681, at *2 (E.D.N.Y. Feb. 3, 2011) ("[T]his Court will accept all of the factual allegations in plaintiff's complaint as true and cannot consider any evidence or factual allegations that are not found within plaintiff's complaint."); *In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 843 (S.D.N.Y. 2001) ("[I]t is well settled that on a motion to dismiss, we are precluded from relying on factual allegations outside the Amended Complaint."). The Court must deny DTG's motion unless "it appears beyond doubt that there are no set of facts in support of plaintiff's claim which would entitle plaintiff to relief." *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir. 1996).

## ARGUMENT

## I. SPACEX HAS STATED PRIMA FACIE CLAIMS

There is no question that SpaceX's factual allegations support five valid causes of action.

### A. SpaceX Validly Stated A Claim For Breach Of Contract And Economic Duress (Count I)

SpaceX's first cause of action (Count I) is for breach of contract, also styled as a voidable amendment under the economic duress doctrine. DTG breached the Purchase Order by demanding payment in excess of the stated, negotiated price. AC ¶ 26. DTG's refusal to perform the contract at the agreed-upon price constitutes a material breach of the contract. *Cf. Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 821 (Cal. Ct. App. 2008) (university

breached contract with students when it raised the professional educational fees after students received bills charging them a set fee, "without providing new consideration").

Alternatively, if DTG were to argue that the parties agreed to modify the price of the contract, then that purported modification is void because SpaceX paid the higher price not for any consideration but instead under threat of calamitous results from a delayed delivery.  AC ¶ 29.  A contract or its amendment may be voided if it was procured by "a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure."  *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158 (Cal. Ct. App. 1984) (bad-faith breach of contract may serve as wrongful conduct sufficient to give rise to economic duress); *accord Uniwill L.P. v. City of L.A*, 124 Cal. App. 4th 537, 545 (Cal. Ct. App. 2004) (economic duress vitiated coerced party's consent to an agreement, rendering the contract void).  SpaceX has stated a valid claim to void the higher price and recover this improper, higher payment.

DTG argues that its demand for a price increase could be said to be a "request for an equitable adjustment," under ¶ 4 of the Purchase Order (the "Changes" clause).  Def. Mem. at 12-13.  But the Amended Complaint contains no factual allegations that would support the conclusion that a "change" in price was appropriate.  The Changes clause expressly requires that a change is permitted only when there is a "change" in the work – such as, a change in schedule or a change in shipping method – and the Amended Complaint does not allege any such changes. Furthermore, the Changes clause (at ¶ 4(c)) requires SpaceX to give a written notice of change, and then the other party (here, DTG) has 15 days to submit a request for equitable adjustment to the contract price to reflect the change.  DTG nowhere argues – and most certainly the Amended

Complaint does not allege – that SpaceX provided any change notice to DTG.  Thus, the Changes clause provides no basis to dismiss this lawsuit.[2]

### B.    SpaceX States Valid Claims Under California Law (Counts II And III)

SpaceX also validly states two causes of action under California law:  for "civil extortion" under California Penal Code § 523, and under California's well-known Unfair Competition Law, under California Business & Professions Code § 17200 (commonly known as the "UCL").

Both causes of action are validly pled.  Under California Penal Code § 523, DTG is civilly liable to SpaceX for amounts it extorted from SpaceX by threatening not to deliver the tanks, putting SpaceX in severe jeopardy with the schedule of its multi-million dollar contract with a third party, and also for punitive damages.  *Cf. Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135 (C.D. Cal. 2009) (holding valid claim stated for civil liability under § 523). Similarly, SpaceX states a valid claim under the UCL, seeking disgorgement of the revenues DTG wrongly obtained from SpaceX in breach of contract, and in violation of California public policies against economic duress and extortion.  *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d 432, 450-52 (Cal. Ct. App. 1988) (§ 17200 broadly prohibits any type of unfair conduct in complex commercial transactions).

DTG ignores the merits of these claims, instead arguing that California law does not apply to the parties.  Def. Mem. at 16.  DTG's argument is based solely on the choice of law in a completely different contract, the Power of Attorney contract, which as described below does not

---

[2]    The explanation for DTG's conduct is simple – DTG made a bad business decision by agreeing to a price that it later regretted.  This does not make the parties' agreed-upon price unenforceable or justify DTG's extortionate behavior.

govern.  Thus, its choice of law provision is not controlling, and DTG's argument fails.[3]  SpaceX

has validly pled its causes of action under California law.[4]

    **C.**    <u>**Breach of Fiduciary Duty (Count IV)**</u>

       Count IV alleges that DTG owed a fiduciary duty to SpaceX as a "freight forwarder."

AC ¶ 46.  The law recognizes a freight forwarder has a fiduciary duty.  *United States v. Ventura*,

724 F.2d 305, 311-12 (2d Cir. 1983).  DTG argues that it is not a freight forwarder, but its

argument fails because it rests on "facts" – e.g., that it owns no vessels – that are not alleged in

the Amended Complaint.

       Even if the Court could consider these alternative facts, DTG's argument would fail.  In

*Johnson Products Co., Inc. v. M/V La Molinera*, 628 F. Supp. 1240, 1242 (S.D.N.Y. 1986), this

Court held that a similar shipper – which did not own any vessels, but contracted with a third

party to ship the goods – could be deemed a "freight forwarder."  Furthermore, the "Power of

Attorney" contract on which DTG relies expressly "appointed" DTG as a "forwarding agent"

and lists among DTG's licensures:  (1) "International Air Freight Forwarders"; (2) "Ocean

---

[3]     California law unquestionably applies here.  First, the Purchase Order expressly states
that California law governs the parties' relationship; second, SpaceX is headquartered in
Hawthorne, California.  Under New York choice-of-law rules, the Court will conduct an
"interests analysis" and apply the law of the state with the "greatest interest" in the claim.  *E.g.,
Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996).  In tort claims, New York courts apply the law
of the state where the wrong occurred, which is usually where the plaintiff was harmed.  *E.g., L-
3 Commc'ns. Corp. v. OSI Sys., Inc.*, No. 02 civ 9144, 2004 WL 42276, at *3 (S.D.N.Y. Jan. 8,
2004).  California has a significant interest in protecting its residents from extortion, and the
Court should apply California law to SpaceX's tort claims, including the UCL claim.  *Id.* at *3.
New York courts have not hesitated to grant judgment under California's UCL.  *E.g., Mazzola v.
Roomster Corp.*, 849 F.Supp.2d 395, 408 (S.D.N.Y. 2012).

[4]     DTG also wrongly argues that one of SpaceX's alternative grounds for its UCL claim, for
fraudulent conduct, is not pled with particularity.  Def. Mem. at 16.  Not so; the Amended
Complaint expressly alleges that DTG demanded the higher price from SpaceX, after having
induced SpaceX to enter the shipping agreement.  It is difficult to discern how the allegations
could be more specific.

Freight Forwarders"; and (3) "FMSCA Freight Forwarders."  At the very least, this presents a factual dispute that the Court should not resolve on a Rule 12 motion.

**D.**    **Unjust Enrichment (Count V)**

Count V states a valid claim for unjust enrichment – that DTG was "enriched" by the payment of the unjustified price increase.  AC ¶¶ 51-52.  Under either New York or California law, the unjust enrichment claim is valid because SpaceX conferred a benefit to DTG – the payment in excess of the contract price – that equity and good conscience require to be repaid to SpaceX.  *Cf. Beth Israel Med. Ctr. V. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (stating elements of claim); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 935 (Cal. 1994) ("[F]actors of fairness and unjust enrichment come into play, which courts are bound to consider in equity and good conscience.").  Under the facts as pled, DTG received an unjust payment from SpaceX by holding the tanks hostage until SpaceX paid a ransom.

DTG argues that no unjust enrichment claim can exist where the parties have a written contract.  Def. Mem. at 17-18.  But while SpaceX cannot recover a judgment for both breach of contract and unjust enrichment, it can assert these claims in the alternative.  *E.g.*, *AM Cosmetics, Inc. v. Solomon*, 67 F. Supp. 2d 312, 322 (S.D.N.Y. 1999) (allowing unjust enrichment claim to proceed because plaintiff alternatively can assert claims for breach of contract and unjust enrichment regarding the same subject matter); *Seiden Assocs. v. ANC Holdings, Inc.*, 754 F. Supp. 37, 40 (S.D.N.Y. 1991) (denying motion to dismiss unjust enrichment claim, because dismissal "would violate the liberal policy of [Rule 8(d)(2)] which allows plaintiffs wide latitude in framing their right to recover").

**II.     THE COURT SHOULD REJECT DTG'S
         EFFORT TO REWRITE THE FACTS OF THIS CASE**

The Court should disregard DTG's alternate factual allegations and contract theory,

which disregard Rule 12(b)(6) and basic rules of contract law.

### A.     <u>DTG Cannot Rely On Facts Not Mentioned In The Complaint</u>

As an initial matter, DTG's motion completely ignores the fundamental premise of a Rule

12(b)(6) motion.  Here, instead of accepting that SpaceX's Amended Complaint clearly states

claims upon which relief can be granted, DTG inartfully attempts to change the rules of civil

procedure by ignoring the Amended Complaint and relying instead on its own alternative version

of the facts.  For instance, DTG bases arguments on alleged communications between the parties

(Def. Mem. at 9-10, 13-14), references to "super abnormal loads" (*id.* at 10), alleged changes in

delivery instructions (*id.* at 12-13), and "increased costs" (*id.* at 14-15).  DTG does not cite to the

Amended Complaint for support for these alleged facts, because they are not present.  Instead, it

cites to its own Answer and its Amended Counterclaims which are of course outside the

permissible scope of review for a Rule 12(b)(6) motion.  *See* Standard of Review, *supra*.

DTG argues the allegations in these pleadings are fair game because SpaceX somehow

admitted all of the facts in DTG's Answer and Affirmative Defenses. Def. Mem. at 5-6.

Specifically, ¶ 17 of DTG's Amended Counterclaim stated, "DTG repeats, states, re-alleges and

incorporates by reference in their entirety, as if fully set forth below, its responses and averments

contained in DTG's Answer with Affirmative Defenses" (its initial pleading), and DTG now

asserts that SpaceX's response – that ¶ 17 called for a legal conclusion – worked an admission of

all of the facts in DTG's initial pleading.  This is, of course, nonsense.  The incorporation of facts

is not in and of itself a factual allegation, but a legal machination, and SpaceX's response was

therefore perfectly appropriate; it certainly was not required to separately deny the incorporated

facts to avoid admitting them. *Vevelstad v. Flynn*, 230 F.2d 695, 703 (9th Cir. 1956)

(incorporation of allegations by reference in a defense or counterclaim does not compel plaintiff

to rebut those allegations, and hence plaintiff did not "admit" those facts by failing to rebut the

referenced allegations).  Moreover, SpaceX was not obliged to respond to the Answer or the

Affirmative Defenses, and the factual allegations therein are deemed "denied" as a matter of law.

Fed. R. Civ. P. 8(b)(6).  DTG's incorporation of those allegations by reference into a later

document does not magically unwork SpaceX's de jure denial of those allegations.

> **B.**     **The Power Of Attorney Contract Is Not A Delivery Contract**

DTG's primary argument is that its demand for a price increase – and its decision to hold

the tanks hostage until SpaceX paid the ransom – were justified by a different contract, entitled

the "Customer Power of Attorney / Designation of Export Forwarding Agent and

Acknowledgement of Terms and Conditions" (for short, the "Power of Attorney" contract).

DTG is misleading the Court.  This Power of Attorney contract is not the contract

governing the material terms of the delivery.  Indeed, it contains no clauses, anywhere, pertinent

to many of the material terms of delivery: no mention of the cargo, no place of delivery, and

most important, not even a price.  *S.E.C. v. Rorech*, 720 F. Supp. 2d 367, 408 (S.D.N.Y. 2010)

("Examples of material terms include subject matter, price, payment terms, quantity, timing,

compensation, and duration."); *Cf. Brookhaven Hous. Coal. v. Solomon*, 583 F.2d 584, 593 (2d

Cir.1978) (where the "essential terms of an agreement are omitted or are phrased in too indefinite

a manner, no legally enforceable contract will result"); *Dreyfuss v. eTelecare Global Solutions-*

*US, Inc.*, No. 08 Civ. 1115, 2008 WL 4974864, at *4 (S.D.N.Y. Nov. 19, 2008) (under doctrine

of "definiteness," "a court cannot enforce a contract unless it is able to determine what in fact the

parties have agreed to.... [I]f an agreement is not reasonably certain in its material terms, there

can be no legally enforceable contract."); *O'Brien v. West*, 199 A.D.2d 369, 371 (N.Y. App. Div.

11

1993) ("the omission of so many material terms from the instant agreement underscores the conclusion that it was not intended to be a complete contract containing all essential terms."). The Power of Attorney contract does not even obligate SpaceX to use Gruelle for any delivery, so on its face the Power of Attorney contract lacks mutuality.[5]

Most problematic, the Power of Attorney fails to set a price, or even to provide general pricing information from which a price might be derived. *Cf. Alton v. Alton,* 83 A.D.3d 972, 974 (N.Y. App. Div. 2011) (finding "the parties never reached an agreement on the essential and material term regarding the purchase price," thus purported agreement was not enforceable). DTG's own interpretation illustrates precisely why its position cannot stand: instead of accepting that the absence of a price shows the Power of Attorney was never intended to be a shipping contract, DTG argues that the absence of a price actually gave it the right to unilaterally set the price, at any time in the course of performance and apparently without any limitations whatsoever.  This is the definition of illusory.  *E.g., CenturyLink, Inc. v. DISH Network, LLC,* No. 11-5528, 2012 WL 6186462 (S.D.N.Y. Dec. 12, 2012) (rejecting party's attempt to unilaterally change payment terms); *First Monroe, Inc. v. Regency Manor Assocs., LP.,* 221 A.D.2d 1023 (N.Y. App. Div. 1995) ("Defendant's attempted unilateral change of the payment provision failed as a binding modification or novation because there was no acceptance, meeting of the minds and, most importantly, no consideration.").

---

[5]       A contract must contain mutuality of obligations; SpaceX must be committed to order something from DTG, or else the contract would arguably not be enforceable against either party.  *Eastern Transp. Co. v. Blue Ridge Coal Corp.*, 159 F.2d 642, 643 (2d Cir. 1947) ("[A] promise whose performance depends upon the mere will or inclination of the promisor imposes no obligation upon him and is insufficient consideration to support the promise of the other party to the supposed contract."); *Irving Trust Co. v. Nationwide Leisure Corp.*, 562 F. Supp. 960, 968 (S.D.N.Y. 1982) ("Obviously, if Nationwide had no obligation to perform under the contracts they would not be contracts at all, but illusory agreements unenforceable for lack of consideration.").

The Power of Attorney was clearly never intended to govern the material terms for DTG's delivery of the LOX tanks, including the price. Rather, the Purchase Order governs the terms, including the price. Of course, the Power of Attorney is not totally irrelevant; it gave DTG the rights required to effectuate the transport of SpaceX's property, such as submitting documentation to national authorities. The two contracts work together: the Power of Attorney granted certain authorities to DTG to act as SpaceX's agent in future deliveries for SpaceX and the Purchase Order governed the specific delivery of the LOX tanks.[6]

### C.   The Court Can Disregard DTG's Other Arguments Based On The "Power Of Attorney" Contract

DTG's other arguments relying on the Power of Attorney fail as well.

For instance, DTG insists that the Power of Attorney contract trumps the Purchase Order because it was executed prior to the Purchase Order, and the Power of Attorney bars any amendment not in writing and executed by the parties. Def. Mem. at 12. The fallacy with that argument is that the Power of Attorney has no provisions that appear to address this particular delivery; and thus there is no basis to argue that the Purchase Order "modified" the Power of Attorney in any way relevant to this particular delivery. Instead, the Purchase Order on its face governed the specific delivery, and both its integration clause and its later-executed date supersede any prior understandings that might have been applicable to the terms of that delivery (including the price). *CreditSights Inc. v. Ciasullo*, No. 05 CV 9345, 2007 WL 943352, at *6 (S.D.N.Y. 2007) (citing *Kreiss v. McCown De Leeuw & Co.*, 37 F. Supp. 2d 294, 301 (S.D.N.Y.

---

[6]   If the Court finds the two contracts are irreconcilable under the factual allegations of the Amended Complaint, the Court would ***still*** deny DTG's motion and allow the parties to present extrinsic evidence as to the intended meanings of the two contracts. "When a court encounters indefinite terms, but finds that the parties did intend to form a contract, ... the court then must attempt to attach a sufficiently definite meaning to [the] bargain." *B. Lewis Prods., Inc. v. Maya Angelou, Hallmark Cards, Inc.,* No. 01 Civ. 0530, 2005 WL 1138474, at *6 (S.D.N.Y. May 12, 2005).

1999) ("By its terms, and under New York law, the Stockholders Agreement only supersedes prior agreements concerning the same subject matter."))[7]

DTG further claims the Power of Attorney gave it a lien on the tanks, so DTG was permitted to threaten non-delivery of the tanks until SpaceX paid the full delivery price.  Def. Mem. at 14-15.  The obvious fallacy with this argument is that the lien only extends to "moneys owed to [DTG]" (*see* Power of Attorney, "D.T. Gruelle" terms and conditions, at ¶ 14.a).  Because DTG was not owed the illusory price increase, DTG had no lien on that additional premium, and had no right to withhold delivery pending payment of this ransom.

## III.   AN ARBITRATION CLAUSE DOES NOT DIVEST THIS COURT OF JURISDICTION

Finally, DTG contends that the Purchase Order contains a mandatory arbitration clause, and thus this Court cannot hear the case.  Def. Mem. at 11.  Not so.  An arbitration clause does not divest this Court of jurisdiction, because the parties are free to waive such a clause.  *JS Barkats, PLLC v. BE, Inc.,* No. 12 Civ. 6779, 2013 WL 444919, at *3 (S.D.N.Y. Feb. 6, 2013) ("The right to arbitrate may be waived just as any other contractual right.") ; *accord Apple & Eve, LLC v. Yantai North Andre Juice Co.,* 610 F. Supp. 2d 226, 229 (E.D.N.Y. 2009).  Courts therefore deny Rule 12 motions claims where the contract contains an arbitration clause.  *E.g.,* *On Line Power Techs., Inc. v. Square D Co.,* No. 03 Civ. 4860, 2004 WL 1171405 (S.D.N.Y.

---

[7]     Furthermore, even if the Power of Attorney contract applied, the Purchase Order would satisfy New York's requirements for a written agreement.  *E.g., Stevens v. Publicis*, 50 A.D. 3d 253 (N.Y. App. Div. 1st Dept. 2008) (under NY law, requirement for written contract can be satisfied by evidence of an email exchange); *see also* New York Gen. Oblig. Law § 5-701(3)(a) & (4) (N.Y. version of the Statute of Frauds provides that writing and authentication requirements can be satisfied by electronic communications "sufficient to indicate . . . a contract was made"). SpaceX has therefore sufficiently alleged an enforceable agreement embodied in the Purchase Order, whether or not it is deemed an amendment of the Power of Attorney.

Apr. 20, 2004) (denying Rule 12 motion to dismiss where contract included mandatory arbitration provision, because defendant did not move to compel arbitration).

At most, DTG can invoke the arbitration clause and request that this Court stay (not dismiss) this proceeding and compel arbitration. *E.g.*, *Cohen v. UBS Financial Servs., Inc.*, No. 12-2147, 2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) (granting motion to compel arbitration and staying lawsuit). DTG, however, has no interest in arbitration. Its motion does not ask the Court to compel arbitration, and DTG's counsel told SpaceX's counsel (on May 7, 2013, after filing its motion), that DTG was not interested in arbitrating the claims.

DTG's refusal to agree to arbitration puts the lie to DTG's argument: DTG is not seeking arbitration, but rather trying to use the arbitration clause to dismiss the case. This Court properly has jurisdiction of SpaceX's claim.

## **CONCLUSION**

For these reasons, SpaceX respectfully requests that the Court deny DTG's motion to dismiss.

15

Dated:  May 17, 2013                    Respectfully submitted,

                                        COOLEY LLP


                                        /s/ Douglas P. Lobel
                                        Douglas P. Lobel (DL-3894)
                                        11951 Freedom Drive
                                        Reston, Virginia 20190
                                        Telephone:  (703) 456-8000
                                        Facsimile:  (703) 456-8100

                                        and

                                        Jason Koral (JK-1044)
                                        1114 Avenue of the Americas
                                        New York, New York 10036
                                        Telephone:  (212) 479-6000
                                        Facsimile:  (212) 479-6275

                                        *Counsel for Space Exploration Technologies Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of May, 2013, **SpaceX's Opposition to D.T. Gruelle's Motion to Dismiss First Amended Complaint** was filed through the ECF system and will be sent electronically, via the ECF system to the following registered participants, as also identified on the Note of Electronic Filing (NEF).  There are no non-registered participants in this case to my knowledge and belief.

> Daniel P. Jaffe
> Husch Blackwell Sanders, LLP
> 190 Carondelet Plaza, Suite 600
> St. Louis, MO 63105-3441
> (314) 480-4500
> Fax: (314) 480-1505
> Email:  dan.jaffe@huschblackwell.com
>
> *Counsel for Defendant D.T. Gruelle*
> *Company Group, L.L.C.*
>
>           /s/ Douglas P. Lobel\_\_\_\_\_

557492 /RE

17